CHRISTOPHER CHORBA, SBN 216692
    CChorba@gibsondunn.com
PERLETTE MICHÈLE JURA, SBN 242332
    PJura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
    TLoose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7746
Facsimile:    213.229.6746

*Counsel for Defendant Nestlé Healthcare
Nutrition, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| BRUCE HORTI, SANDRA GEORGE, and JEANETTE CRAIG, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC.,<br><br>              Defendant. | Case No. 4:21-cv-09812-PJH<br><br>**DEFENDANT NESTLÉ HEALTHCARE NUTRITION, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>*[Declaration of Timothy Loose and Exhibits A & B; Request for Judicial Notice; Proposed Order filed concurrently herewith]*<br><br>Date:        June 2, 2022<br>Time:       1:30 p.m.<br>Location:   Courtroom 3 – 3rd Floor<br>Judge:     Hon. Phyllis J. Hamilton<br><br>Date Action Filed: February 4, 2022 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 2, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the U.S. District Court for the Northern District of California, Oakland Courthouse, Courtroom 3, 3rd Floor, at 1301 Clay St., Oakland, CA 94612, Defendant Nestlé Healthcare Nutrition, Inc. will move under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) for an order dismissing Plaintiffs' second amended complaint (ECF No. 11) on several grounds:

*First*, and most fundamentally, Plaintiffs do not allege any facts supporting the proposition that a "reasonable consumer" would understand BOOST Glucose Control to be a cure for diabetes. That failing alone gives sufficient reason to dismiss Plaintiffs' claims, all of which require proof of deception.

*Second*, Plaintiffs lack standing under Article III, and under the narrower standing requirements imposed by California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act, because they have not alleged any concrete and particularized injury. Plaintiffs claim they were harmed because (1) the labeling of BOOST Glucose Control nutritional drinks violates federal labeling regulations and (2) they paid an unidentified "premium" price because they supposedly thought the drinks would treat diabetes. Neither theory raises a concrete harm sufficient to confer standing. An alleged violation of federal labeling regulations without any corresponding impact on Plaintiffs is not an injury in fact. And Plaintiffs' "price premium" theory fails because they have not identified the "premium" they paid and have not plausibly pleaded any injury from their purchases of a nutritional drink.

*Third*, Plaintiffs' claims are preempted by federal law. Nestlé's labeling complies with federal labeling requirements, and federal law expressly prohibits states from imposing additional requirements. Because Plaintiffs are, in effect, claiming that California imposes food labeling requirements that the federal government does not, their claims are preempted.

*Fourth*, the complaint does not satisfy Rules 8 and 9(b). Plaintiffs say almost nothing about why, when, and for how much they bought BOOST Glucose Control drinks, and what little they do say

Gibson, Dunn &
Crutcher LLP

1    is copied and pasted.  They never identify which particular statements they relied on in buying the

2    drinks or what specific health benefits, if any, they expected the drinks to provide.

3          *Finally*, Plaintiffs' claims for express warranty and injunctive relief should be dismissed for

4    other reasons, too.  In support of their express warranty claim, Plaintiffs have not sufficiently pleaded

5    that they reasonably relied on BOOST Glucose Control's labeling in claiming that they believed the

6    drinks would treat diabetes.  And Plaintiffs have not stated a claim for injunctive relief because they

7    have not alleged that they lack an adequate remedy at law.

8          This motion is based on this notice of motion and motion; the accompanying memorandum of

9    points and authorities, declaration of Timothy Loose, and request for judicial notice; all other

10   documents on file in this action; and any oral argument of counsel.

11

12                                            DATED:  April 6, 2022

13                                            By:  */s/ Timothy Loose*
                                              CHRISTOPHER CHORBA, SBN 216692
14                                            PERLETTE MICHÈLE JURA, SBN 242332
                                              TIMOTHY W. LOOSE, SBN 220842
15                                            GIBSON, DUNN & CRUTCHER LLP
                                              333 South Grand Avenue
16                                            Los Angeles, CA 90071-3197
                                              Telephone:    213.229.7746
17                                            Facsimile:     213.229.6746
                                              CChorba@gibsondunn.com
18                                            PJura@gibsondunn.com
                                              TLoose@gibsondunn.com
19
20                                            *Counsel for Defendant Nestlé Healthcare*
                                              *Nutrition, Inc.*
21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2  MEMORANDUM OF POINTS AND AUTHORITIES.................................................................1

3      I.   INTRODUCTION.........................................................................................................1

4      II.  STATEMENT OF ISSUES TO BE DECIDED............................................................2

5      III. SUMMARY OF FACTUAL ALLEGATIONS ..............................................................3

6      IV. LEGAL STANDARD..................................................................................................4

7      V.  ARGUMENT ...............................................................................................................4

8          A.  No Reasonable Consumer Would Interpret the Labels as Plaintiffs Propose. ..................4

9          B.  Plaintiffs Lack Standing to Sue Because They Have Not Alleged a Cognizable

10             Injury.........................................................................................................................7

11             1.  Plaintiffs Have Not Alleged a Concrete Injury. .......................................................8

12             2.  Plaintiffs Lack Standing to Assert Claims Regarding BOOST Glucose Control
                  Max 30g Protein Because They Never Bought It.....................................................10

13         C.  Federal Law Preempts Plaintiffs' Claims. ...................................................................11

14         D.  The Complaint Does Not Satisfy the Pleading Standards of Rules 8 and 9(b). ...............14

15         E.  Plaintiffs Have Not Established Breach of an Express Warranty. .................................15

16         F.  Plaintiffs Cannot Plead the Prerequisites for Seeking Equitable Relief. ........................15

17     VI. CONCLUSION .........................................................................................................17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ................................................................5

*In re Arris Cable Modem Consumer Litig.*,
  2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ................................................................14

*Arroyo v. TP-Link USA Corp.*,
  2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................4, 14

*Brazil v. Dole Food Co., Inc.*,
  2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ................................................................11

*Brown v. Madison Reed, Inc.*,
  2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ................................................................15

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................................4

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) ................................................................7

*City of New York v. Smokes-Spirits.Com, Inc.*,
  911 N.E.2d 834 (N.Y. 2009) ................................................................7

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................................................9, 11

*Edenborough v. ADT, LLC*,
  2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ................................................................14

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ................................................................7

*Gonzalez v. Planned Parenthood of Los Angeles*,
  759 F.3d 1112 (9th Cir. 2014) ................................................................6

*Greenberg v. Target Corp.*,
  985 F.3d 650 (9th Cir. 2021) ................................................................12, 13

*Gustavson v. Wrigley Sales Co.*,
  961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................................13

MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 4:21-cv-09812-PJH

1

**TABLE OF AUTHORITIES**

2

Page(s)

3   *Hadley v. Kellogg Sales Co.*,
4       273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................. 13, 15

5   *Haskins v. Symantec Corp.*,
6       654 F. App'x 338 (9th Cir. 2016) ............................................................................. 14

7   *Hawkins v. Kroger Co.*,
8       906 F.3d 763 (9th Cir. 2018) ............................................................................. 11, 13

9   *Hodges v. King's Hawaiian Bakery W., Inc.*,
10       2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ................................................. 4, 5, 14, 15

11   *IntegrityMessageBoards.com v. Facebook, Inc.*,
12       2021 WL 3771785 (N.D. Cal. Aug. 24, 2021) ......................................................... 16

13   *Ivie v. Kraft Foods Glob., Inc.*,
14       2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ........................................................... 13

15   *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
16       2021 WL 148063 (S.D. Cal. Jan. 15, 2021) ........................................................... 14

17   *Kearns v. Ford Motor Co.*,
18       567 F.3d 1120 (9th Cir. 2009) ......................................................................... 4, 14

19   *Kommer v. Ford Motor Co.*,
20       2017 WL 3251598 (N.D.N.Y. July 28, 2017) ......................................................... 10

21   *Kwikset Corp. v. Super. Ct.*,
22       51 Cal. 4th 310 (2011) ................................................................................. 9, 14

23   *In re MacBook Keyboard Litig.*,
24       2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ......................................................... 16

25   *Meyer v. Sprint Spectrum L.P.*,
26       45 Cal. 4th 634 (2009) ..................................................................................... 8

27   *Moore v. Trader Joe's Co.*,
28       4 F.4th 874 (9th Cir. 2021) ............................................................................. 5, 6

   *Moreno v. Vi-Jon, LLC.*,
       2021 WL 5771229 (S.D. Cal. Dec. 6, 2021) ........................................................... 4, 7

   *Moss v. U.S. Secret Serv.*,
       572 F.3d 962 (9th Cir. 2009) ............................................................................... 4

Gibson, Dunn &
Crutcher LLP

1

2

# TABLE OF AUTHORITIES

Page(s)

3

4
*Mullins v. Premier Nutrition Corp.*,
   2018 WL 510139 (N.D. Cal. Jan. 23, 2018)..................................................... 16

5
*Nacarino v. Chobani, LLC*,
   2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ................................................... 16

6

7
*Pardini v. Unilever United States, Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ........................................................ 8, 9

8

9
*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ............................................................... 11, 13

10
*Savoy v. Collectors Universe, Inc.*,
   2020 WL 4938464 (C.D. Cal. July 21, 2020).................................................. 10

11

12
*Schwartz v. Provident Life & Accident Ins. Co.*,
   216 Cal. App. 4th 607 (2013)........................................................................... 7

13

14
*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)..................................................................... 15, 16

15
*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................................... 8

16

17
*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................................. 7

18

19
*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)..................................................................................... 14

20
*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................7, 8, 10

21

22
*Troyk v. Farmers Grp., Inc.*,
   171 Cal. App. 4th 1305 (2009)......................................................................... 7

23
*Weiss v. Trader Joe's*,
   838 F. App'x 302 (9th Cir. 2021)..................................................................... 6

24

25
## Statutes

26
21 U.S.C. § 321(f).................................................................................................. 11

27
21 U.S.C. § 321(g).................................................................................................. 11

28
21 U.S.C. § 343 ...................................................................................................... 11

Gibson, Dunn &
Crutcher LLP

1

2

**TABLE OF AUTHORITIES**

<u>Page(s)</u>

3    21 U.S.C. § 343-1(a) ........................................................................................................ 11

4    21 U.S.C. § 343(f) ........................................................................................................... 12

5    21 U.S.C. § 343(ff) .......................................................................................................... 12

6
                                         **Rules**
7
     Fed. R. Civ. P. 9(b) ........................................................................................................ 14
8
                                    **Other Authorities**
9
     FDA, *Guidance for Industry: A Food Labeling Guide* (Jan. 2013),
10       https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf ................... 13

11   FDA, *Guidance For Industry Structure/function Claims Small Entity Compliance
         Guide*, 2002 WL 32811489 ........................................................................................ 12
12
                                      **Regulations**
13
14   21 C.F.R. § 101.14 .......................................................................................................... 13

15   21 C.F.R. § 101.14(a)(1) ................................................................................................ 13

16   21 C.F.R. § 101.93(b) ..................................................................................................... 12

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Nestlé Healthcare Nutrition, Inc. offers more than a dozen varieties of its BOOST nutritional drinks to suit different consumers' preferences. For example, those looking for an every-day, balanced nutritional drink may choose BOOST Original. Those looking to gain or maintain weight may choose BOOST Plus, which has more calories than BOOST Original. And for those customers who want a lower-calorie and lower-carb alternative, there is BOOST Glucose Control, which has fewer carbohydrates and less sugar than other BOOST varieties.

Plaintiffs challenge Nestlé's labels on three specific products in the BOOST line: BOOST Glucose Control, BOOST Glucose Control High Protein, and BOOST Glucose Control Max 30g Protein. Plaintiffs argue that consumers are misled to believe that these three drinks "treat diabetes." But no reasonable consumer would conclude that a nutritional drink is a panacea, and Plaintiffs cannot point to anything Nestlé said that touted BOOST Glucose Control as a cure for diabetes. The most the complaint can do is point to statements that the drinks "help manage blood sugar" and were "designed for people with diabetes." (*E.g.*, SAC ¶¶ 3, 33–40, 42–44.) These are true statements that speak directly to the nutritional composition of the entire line of BOOST Glucose Control products, and Plaintiffs do not dispute that the BOOST Glucose Control varieties have significantly less sugar compared to BOOST Original and other nutritional beverages.

BOOST Glucose Control drinks are exactly what the packaging says they are: nutritional drinks containing protein, essential vitamins, and minerals, with less sugar than standard nutritional drinks. Because these drinks contain fewer carbohydrates, they are better choices for people who, like those with diabetes, are monitoring their blood glucose levels. As Plaintiffs acknowledge, it is a well-known fact that this kind of "healthy eating" is a necessary complement to—not a replacement for—insulin and other diabetes medication. (*See* SAC ¶ 21.) Nestlé never positioned BOOST Glucose Control as a "cure" for diabetes, or as a substitute for insulin. Because this fundamentally implausible theory is the basis for each statutory and equitable claim Plaintiffs assert, the entire complaint should be dismissed.

There are multiple legal bases to dismiss this action in addition to this central failing:

Gibson, Dunn &
Crutcher LLP

*First*, Plaintiffs cannot succeed on any of their claims because they cannot demonstrate that a reasonable consumer would believe BOOST Glucose Control can treat or cure diabetes—the key element for each of their deception-based claims.

*Second*, Plaintiffs do not allege that they suffered any concrete injury from their alleged purchases of BOOST. For example, notwithstanding the driving theory of the complaint, Plaintiffs never actually allege that **they** purchased BOOST because **they** believed that it would cure diabetes— indeed, Plaintiffs do not allege that they have diabetes or are pre-diabetic, nor do they allege anything at all about what alleged impact BOOST Glucose Control had on their blood sugar levels, or about how the products fell short of their expectations. Plaintiffs do not even say what benefits they expected the products to provide, much less identify any statements of Nestlé that created those expectations. All the complaint alleges is a few copied-and-pasted paragraphs that amount to nothing more than an assertion that Plaintiffs purchased the BOOST drinks, which is not enough to state an injury.

*Third*, federal law preempts each of Plaintiffs' claims. Their theory is that California law imposes labeling requirements on top of the FDA's labeling regulations, but state laws cannot be read in a manner that imposes labeling obligations beyond those set forth by federal law.

*Fourth*, the vague and conclusory allegations in the complaint cannot satisfy either the ordinary pleading standards of Rule 8 or the heightened pleading standards of Rule 9(b).

*Fifth*, Plaintiffs have not established breach of an express warranty because they have not adequately alleged that they relied on Nestlé's purported misrepresentations.

*Finally*, Plaintiffs have no basis to seek injunctive or equitable relief because money would be an adequate remedy for any alleged misrepresentations made by Nestlé, and each of the Plaintiffs already have been offered a full refund under Nestlé's money-back guarantee.

The complaint should be dismissed in its entirety.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.      Whether a "reasonable consumer" would believe that BOOST Glucose Control drinks can be used to cure diabetes.

2.      Whether Plaintiffs have standing to sue Nestlé under Article III and the narrower standing requirements under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200

1  (UCL); False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL); Consumers Legal Remedies

2  Act, Cal. Civ. Code § 1750 *et seq*. (CLRA); and New York General Business Law §§ 349 and 350.

3       3.     Whether Plaintiffs' claims are preempted under the federal Food, Drug, and Cosmetic

4  Act (FDCA) and the National Labeling and Education Act (NLEA).

5       4.     Whether the complaint contains specific, nonconclusory factual allegations plausibly

6  showing that Plaintiffs relied on Nestlé's supposed misrepresentations of the BOOST drinks.

7       5.     Whether Plaintiffs have sufficiently alleged a claim for breach of express warranty.

8       6.     Whether Plaintiffs have adequately alleged, in support of their claims for equitable

9  relief, that they lack an adequate legal remedy.

10       **III.**     **SUMMARY OF FACTUAL ALLEGATIONS**

11       Much of Plaintiffs' complaint is dedicated to a general discussion of diabetes and other

12  background information. (SAC ¶¶ 15–59.) As part of this discussion, Plaintiffs concede that there is

13  no known cure for diabetes, and that it is a condition that is managed both through "healthy eating"

14  and taking "insulin or other medicines." (*Id*. ¶ 21 (citing Request for Judicial Notice ("RJN") Ex. B.)

15       Plaintiffs devote only three paragraphs to their own purchases of BOOST Glucose Control

16  drinks. (SAC ¶¶ 60–62.) And those three paragraphs contain the very same, cut-and-pasted,

17  conclusory allegations for each of the three Plaintiffs, California residents Bruce Horti and Sandra

18  George and New York resident Jeanette Craig. (*Id*.) Plaintiffs allege they bought BOOST Glucose

19  Control drinks in retail stores. (*Id*.) Each Plaintiff allegedly paid an unidentified "premium price" for

20  the drink that was "more expensive than other [unidentified] choices." (*Id*.) And each Plaintiff

21  allegedly chose to purchase the drinks "based upon the Products' [unspecified] diabetes-related

22  representations." (*Id*.) But Plaintiffs never refer to any specific representations, much less describe

23  what those representations meant to them and how they relied on those representations when deciding

24  which nutritional drink to purchase. They don't allege they are diabetic or bought the drinks to cure

25  diabetes. In fact, Plaintiffs don't even allege they drank anything they bought, or identify any way in

26  which they were injured by purchasing a high-quality nutritional drink from a leading brand.

27       Based on these sparse allegations, Plaintiffs filed a putative class action against Nestlé on behalf

28  of separate California and New York subclasses of "[a]ll persons" in those states "who purchased the

1   [drinks] for personal use and not for resale." (SAC ¶¶ 63–64.)  Plaintiffs assert several claims against

2   Nestlé for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL)

3   (Count I); California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL) (Count II);

4   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (CLRA) (Count III); New

5   York General Business Law §§ 349 and 350 (together, GBL) (Counts IV and V); breach of express

6   warranty (Count VI); and unjust enrichment (Count VII). (*Id.* ¶¶ 74–165.)

## IV.   LEGAL STANDARD

8           Rule 8 requires Plaintiffs to "plead[] factual content that allows the court to draw the reasonable

9   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

10  (2009).  Plaintiffs must state a "plausible claim for relief"; "the mere possibility of misconduct" is not

11  enough. *Id.* at 679.  Moreover, while the Court generally "accept[s] as true all the factual allegations

12  in the complaint, legally conclusory statements, not supported by actual factual allegations, need not

13  be accepted." *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at *5 (N.D. Cal. Nov.

14  8, 2021) (citing *Iqbal*, 556 U.S. at 678–79); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

15  Cir. 2009) (Plaintiffs must plead "non-conclusory 'factual content'").

16          Because all of Plaintiffs' claims sound in fraud, they must also satisfy Rule 9(b)'s heightened

17  pleading standard. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

18  "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct

19  charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why

20  it is false.'" *Id.* "A party alleging fraud must 'set forth *more* than the neutral facts necessary to identify

21  the transaction.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## V.   ARGUMENT

### A.   No Reasonable Consumer Would Interpret the Labels as Plaintiffs Propose.

24          All of Plaintiffs' claims should be dismissed because they do not demonstrate that a "reasonable

25  consumer" would believe BOOST Glucose Control can treat or cure diabetes.  Courts regularly dismiss

26  claims at the pleadings stage for exactly this reason. *See Moreno v. Vi-Jon, LLC.*, 2021 WL 5771229,

27  at *6 (S.D. Cal. Dec. 6, 2021) (collecting cases within the Ninth Circuit in which courts have dismissed

28

Gibson, Dunn &
Crutcher LLP

claims at the pleading stage for failure to satisfy the reasonable-consumer test); *Hodges*, 2021 WL 5178826, at *6–7 (determining that no reasonable consumer would be deceived at the pleadings stage).

"Under the consumer protection laws of California [and] New York, . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see also In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2018 WL 11354864, at *8 (C.D. Cal. Jan. 24, 2018) (claims for breach of express warranty and other common law claims "based on on-label representations" must "rise and fall" with the same "reasonable consumer" standard). The "reasonable consumer" standard "is not a negligible burden," and Plaintiffs "must demonstrate 'more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Moore*, 4 F.4th at, 881. To satisfy the reasonable-consumer standard, a plaintiff must plead facts demonstrating that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* A reasonable consumer must "take into account all the information available to consumers and the context in which that information is provided," *id.*, and cannot be "selectively blind" when viewing product labels, *Hodges*, 2021 WL 5178826, at *7.

A reasonable consumer (and particularly a reasonable consumer with diabetes) would understand that *any* food or drink with some level of carbohydrates will naturally and inevitably impact glucose levels—the only question is the magnitude of the effect it will have. (*See* RJN Ex. B at 1 ("Most of the food you eat is broken down into sugar (also called glucose) and released into your bloodstream.") (cited at SAC ¶¶ 16 n.1, 18 n.2).) The labels on BOOST Glucose Control nutritional drinks clearly disclose the number of carbohydrates and grams of sugar each drink contains (*see* SAC ¶¶ 34–39), and "[a] reasonable consumer is not free to ignore the ingredient list on a food package," *Hodges*, 2021 WL 5178826, at *7. In light of these clear product labels, a reasonable consumer would understand that BOOST Glucose Control is not promising to cure diabetes, but instead is informing the consumer that the product has fewer carbohydrates and less sugar and therefore will have a comparatively lower effect on blood sugar levels than other comparable drinks containing more carbohydrates. Put otherwise, "[a] reasonable consumer would not understand [Nestlé]'s label here as

1    promising something that is impossible to find"—a nutritional drink that can treat or cure diabetes.

2    *Moore*, 4 F.4th at 883.

3         The Ninth Circuit recently affirmed dismissal of analogous claims in *Weiss v. Trader Joe's*,

4    838 F. App'x 302 (9th Cir. 2021).  There, the plaintiff claimed that water-bottle packaging that included

5    the phrase "ionized to achieve the perfect balance" misled her "into believing that the water balances

6    her internal bodily pH."  *Id.* at 303.  The court rejected that theory because, "[w]hen considered within

7    the context of the water bottle packaging as a whole," the phrase "clearly refers to the water itself being

8    balanced.  No reasonable consumer would interpret that statement to mean that the water itself will

9    balance the consumer's own pH levels."  *Id.*  The same logic applies here: in light of BOOST Glucose

10   Control's clear labeling and marketing as a "nutritional drink" that is "[n]ot a substitute for

11   medication," no reasonable consumer would believe the drink will affirmatively "control" their blood

12   glucose levels or act as a substitute for insulin or other medication.  (SAC ¶ 48.)  Instead, consumers

13   would understand that the drinks will have a more controlled effect on their glucose levels when

14   compared to other similar nutritional drinks that contain comparatively higher levels of sugar.

15        Moreover, the sources cited in Plaintiffs' complaint contradict the theory that BOOST Glucose

16   Control's labeling would mislead reasonable consumers.  Plaintiffs claim the labeling of the drinks is

17   misleading because the drinks allegedly "cause[] glucose levels to rise" rather than "keep . . . blood

18   glucose levels in control."  (*See* SAC ¶ 54.)  But a CDC document cited by Plaintiffs themselves makes

19   clear that managing diabetes involves *monitoring* one's blood sugar levels within a healthy range, not

20   keeping blood glucose levels at some arbitrary, static value.  (RJN Ex. B at 1 (cited at SAC ¶¶ 16 n.1,

21   18 n.2) (explaining that diabetes can be managed in part through "healthy eating" to ensure that blood

22   sugar levels are neither too high nor too low).)  And BOOST Glucose Control helps with just that—

23   the nutritional drinks provide lower-sugar options and therefore necessarily introduce less glucose

24   when compared to other nutritional drinks.  (*See* SAC ¶ 48 (noting that BOOST Glucose Control "is

25   clinically shown to produce a lower blood sugar response vs. a standard nutritional drink in people with

26   type 2 diabetes").)  The Court need not accept Plaintiffs' conclusory and implausible allegations about

27   diabetes as true, *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014),

28

1   particularly since the complaint itself points to authority showing that a moderate rise in blood sugar

2   levels does not negatively impact people with diabetes.

3        The context in which BOOST Glucose Control is sold, which courts consider as part of the

4   reasonable-consumer analysis, reinforces the fundamental implausibility of Plaintiffs' claims. *See*

5   *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (advertising claims must be "read reasonably

6   and in context"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *19 (E.D.N.Y.

7   Sept. 22, 2015) (considering whether claims would be deceptive in the context of "food product labels

8   presented to consumers like Plaintiffs in grocery store aisles"). Plaintiffs each purchased BOOST

9   Glucose control at one of four "mass retailers"—Costco, Walmart, CVS, and Sam's Club. (*See* SAC

10   ¶¶ 2, 60–62.) No reasonable consumer would expect to find diabetes medication in the grocery aisle

11   of such stores, and Plaintiffs have not alleged that any such over-the-counter diabetes treatment exists

12   in the form of a nutritional drink. *See, e.g.*, *Moreno*, 2021 WL 5771229, at *5 ("[T]he court is unaware

13   of the existence of an over-the-counter hand sanitizer that can protect Plaintiff against the various

14   pathogens, diseases and illnesses listed by him . . . nor does Plaintiff allege the existence of any such

15   hand sanitizer on the market."). Even if Plaintiffs had affirmatively claimed that they believed such a

16   nutritional drink exists, that belief would be unreasonable and could not give rise to a deceptive-

17   advertising claim. *See Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020)

18   (a consumer's unreasonable assumptions do not make a claim deceptive).

19   **B.      Plaintiffs Lack Standing to Sue Because They Have Not Alleged a Cognizable Injury.**

20        Even if Plaintiffs had a viable legal theory, they lack standing to pursue that theory. To establish

21   Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized,

22   and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Like Article III,

23   the GBL requires plaintiffs to "plead that they have suffered actual injury," and mere "allegations of

24   indirect or derivative injuries will not suffice." *City of New York v. Smokes-Spirits.Com, Inc.*, 911

25   N.E.2d 834, 839 (N.Y. 2009). The UCL and FAL impose even narrower requirements, "confin[ing]

26   standing to those actually injured by a defendant's business practices," *Schwartz v. Provident Life &*

27   *Accident Ins. Co.*, 216 Cal. App. 4th 607, 611 (2013), and requiring that a plaintiff's injury "specifically

28   involve 'lost money or property,'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31

(2009).   And under the CLRA, plaintiffs  must show they suffered some sort of damage, such as "pecuniary damages," "certain types of transaction costs, [or] opportunity costs." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009).  Plaintiffs have not satisfied these requirements for any of their claims, and certainly not for their claims involving  BOOST Glucose Control Max 30g Protein— which Plaintiffs  do not even allege they bought.

### 1.    Plaintiffs  Have Not Alleged a Concrete Injury.

Plaintiffs  appear to have two theories of harm:  (1) they bought a product that allegedly  does not comply with Food and Drug Administration  (FDA) labeling  regulations  regarding "disease claims" and "health claims" (*see* SAC ¶¶ 31, 42) and (2) they overpaid as a result (*see id.* ¶¶ 60–62).  The first theory is never sufficient to show a concrete injury.  The second does not work here because Plaintiffs have not adequately pleaded that they overpaid for BOOST drinks, and even if they had, Nestlé's refund policy provided an adequate remedy.

*First*, claiming  that a defendant violated an FDA labeling  regulation  is insufficient  to establish standing  because a plaintiff  cannot sue "merely seeking to ensure [the] defendant's 'compliance  with regulatory  law.'"  *TransUnion*, 141 S. Ct. at 2206.  In *TransUnion*, for example, the plaintiffs  sued a credit-reporting  agency for failing  to ensure the accuracy of their credit files in violation  of the Fair Credit Reporting  Act.  *Id.* at 2200.  But for about three-quarters  of the roughly 8,000-strong  class, that failure  did not lead to any concrete injury  because their credit reports were never sent to anyone.  *Id.* Those consumers had suffered an "injury  in law" insufficient  to confer standing  to sue under Article III.  *Id.*  Only the class members whose credit reports were actually sent to anyone suffered any "injury in fact."  *Id.*; *accord Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (holding  "a bare procedural violation,  divorced from any concrete harm," is insufficient  to "satisfy the injury-in-fact  requirement of Article III").

The story is much the same here.  The alleged mislabeling  of food gives rise, at most, to "an injury in law"—"not an injury in fact." *TransUnion*, 141 S. Ct. at 2205.  In *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048 (N.D. Cal. 2013), for example, the plaintiff  alleged that "0 Fat" and "0 Calorie" representations  on I Can't Believe It's Not Butter! violated the FDCA because it did not "adequately disclose the level of fat and calories per serving" and it made "'fat free' and 'zero calorie'

nutrient content claims." *Id.* at 1052.  The court dismissed the plaintiff's UCL, CLRA, and fraud claims because the plaintiff could not "state a claim merely by pleading a violation of the FDCA and its implementing regulations." *Id.* at 1060.  Here, too, Plaintiffs cannot have suffered any actionable injury merely because Plaintiffs allege Nestlé supposedly violated an FDA regulation (and, as discussed below, they have not identified any FDA violation in any event).

*Second*, Plaintiffs' theory that they paid a price premium for BOOST drinks does not satisfy either the injury requirement of Article III or the standing requirements of the GBL, UCL, FAL, and CLRA.  *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011).  Although "[p]ayment of a premium for a product based on inaccurate representations may be sufficient to allege injury" generally, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018), Plaintiffs' allegations are insufficient here because they do not identify the premium that they paid.  The concept of a "price premium" (SAC ¶¶ 60–62) necessarily requires the existence of a cheaper substitute.  But Plaintiffs never identity any, instead asserting only that they "pa[id] the premium price" for the BOOST drinks "based upon the Products' diabetes-related representations." (*Id.*)

In *Colella*, the plaintiff alleged that a nutritional company's food products were deceptive because they stated in part "that sugar alcohols 'minimally impact blood sugar,'" when in fact, they "are proven to 'have a significant impact on blood sugar levels.'"  348 F. Supp. at 121.  The plaintiff alleged that he paid a "premium"—i.e., "more than [he] normally would have for comparable products"—for the defendant's products based on the alleged misrepresentation.  *Id.* at 143.  But the court held that the plaintiff's "conclusory allegations [we]re insufficient to identify a cognizable injury" because merely "reciting the word 'premium' multiple times in the [c]omplaint does not make [p]laintiff's injury any more cognizable."  *Id.*  Here, as in *Colella*, Plaintiffs "provide no facts regarding what the premium was, what price [they] paid for the products, or the price of non-premium products."  348 F. Supp. 3d at 143.  At most, Plaintiffs have alleged a hypothetical injury, which is insufficient to establish standing under Article III or any of the state statutes.

Even if Plaintiffs were right that they paid a price premium, they would *still* lack standing to sue because Nestlé's refund policy would provide an adequate remedy.  Nestlé offers unsatisfied customers their money back, no questions asked. (*See* RJN, Ex. A.)  Courts have consistently held that

Gibson, Dunn &
Crutcher LLP

a refund right like that, whether exercised or not, means that the "plaintiff has suffered no injury and hence has no standing." *Savoy v. Collectors Universe, Inc.*, 2020 WL 4938464, at *5 (C.D. Cal. July 21, 2020). In *Savoy*, for instance, the plaintiff alleged that his collector's baseball card had been altered and thus devalued by the defendant, but the defendant offered "full refunds for purchases of professionally-graded cards that are later determined to have been altered prior to purchase." *Id.* at *2. Because the plaintiff did not take advantage of the defendant's satisfaction guarantee, he could not "clearly and sufficiently allege injury." *Id.* at *5. Similarly, in *Kommer v. Ford Motor Co.*, 2017 WL 3251598 (N.D.N.Y. July 28, 2017), where the plaintiff alleged that he overpaid for his Ford F-150 truck because it had defective door handles, the court held that he had "a perfectly adequate remedy available to him" because the door handles were covered under warranty. *Id.* at *5. Here, as in *Savoy* and *Kommer*, Plaintiffs do not allege that they took advantage of Nestlé's refund policy. They therefore lack standing to sue under their price-premium theory.

### 2. Plaintiffs Lack Standing to Assert Claims Regarding BOOST Glucose Control Max 30g Protein Because They Never Bought It.

Plaintiffs do not allege that they bought BOOST Glucose Control Max 30g Protein. (SAC ¶¶ 60–62.) And courts have consistently held that plaintiffs can't sue over products they never bought. *See TransUnion*, 141 S. Ct. at 2208; *see also, e.g.*, *Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *4 (N.D. Cal. Sept. 29, 2015) (courts in this District "generally consider non-purchased products unable to satisfy the standing requirements for claims under California statutes"). As a result, the Court should dismiss Plaintiffs' claims based on BOOST Glucose Control Max.

Plaintiffs may argue that they have standing to sue over Max drinks because they are substantially similar to the drinks Plaintiffs did buy. But they haven't alleged "*why* the [unpurchased] products are substantially similar to those actually purchased." *Arroyo*, 2015 WL 5698752, at *4 (emphasis added). In fact, Plaintiffs concede that Max drinks are different from the other drinks. Plaintiffs allege that Max drinks contain different labeling statements, namely, that they "help[] manage blood sugar," which differ from the "designed for people with Diabetes" statements Plaintiffs challenge on the other BOOST drinks. (*See* SAC ¶¶ 34–37 ("Products [except MAX] have represented that they

Gibson, Dunn &
Crutcher LLP

1  are 'designed for people with Diabetes.'" (brackets in original)).)   The Court should therefore dismiss

2  Plaintiffs' claims based on BOOST Glucose Control Max.

3  **C.      Federal Law Preempts Plaintiffs' Claims.**

4         Plaintiffs' objections to the clear product labels on BOOST Glucose Control are not only

5  nonsensical, they are preempted by federal law.   Under the FDCA and the National Labeling Education

6  Act, "no state may 'directly or indirectly establish any requirement for the labeling of food that is not

7  identical' to the federal requirements."   *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018)

8  (citing 21 U.S.C. § 343-1(a)).   In light of this express preemption provision and the comprehensive

9  federal regulatory regime regarding food labeling, courts "have routinely found express preemption in

10  the food-misbranding context when a plaintiff has attempted to sue over conduct that does not violate

11  the FDCA or its accompanying regulations."   *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *10

12  (N.D. Cal. Sept. 23, 2013); *see also Colella*, 348 F. Supp. 3d at 129 (concluding that "plaintiff's

13  NYGBL and breach of warranty claims regarding defendant's" food product labeling "are preempted"

14  by the FDCA); *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (noting that there is a "'narrow

15  gap' through which a state-law claim must fit to escape preemption by the FDCA").   Accordingly,

16  unless Plaintiffs can demonstrate that the labeling of BOOST Glucose Control violates the FDCA or

17  accompanying regulations, all of their state-law claims are preempted.

18         BOOST Glucose Control's labeling and marketing comply fully with the FDCA and all

19  associated regulations.   As Plaintiffs note, BOOST Glucose Control drinks are considered "food" under

20  the FDCA—a category distinct from "drugs."   (*See* SAC ¶ 29; 21 U.S.C. § 321(f), (g).) The drinks

21  therefore must meet labeling requirements applicable to all food, including a display of nutritional

22  information, an accurate description of the contents on the packaging, and a variety of other federally

23  mandated labeling requirements.   *See generally* 21 U.S.C. § 343.   In accordance with these rules, the

24  clear product labels on BOOST Glucose Control display all of the relevant nutrition and health

25  information, and Plaintiffs do not allege otherwise. (*See* SAC ¶¶ 34–39.)

26         Plaintiffs argue that BOOST Glucose Control is mislabeled because (1) the labels allegedly

27  make unsubstantiated "disease claims" and (2) the labels make "health claims" that needed to be

28

1    "preauthorized by the FDA." (*See* SAC ¶¶ 4, 29, 42, 45.)  Both of these arguments rest on a misreading

2    of the FDCA.

3         *First*, BOOST Glucose Control nutritional drinks do not make any "disease claims" in violation

4    of the FDCA.  Plaintiffs point to 21 C.F.R. § 101.93(g)(2) (*see* SAC ¶ 153), but that regulation deals

5    only with claims regarding "dietary supplements" (*see* 21 C.F.R. § 101.93(b)).  As Plaintiffs concede

6    (SAC ¶ 29), BOOST drinks are a "food" under the FDCA, a category defined as distinct from "dietary

7    supplements."  *Compare* 21 U.S.C. § 343(f) (defining "food") *with id.* § 343(ff) (defining "dietary

8    supplement" and clarifying that such products are "not represented for use as a conventional food").

9    Accordingly, because the BOOST drinks are not dietary supplements, the regulations regarding

10   "disease claims" in section 101.93(g)(2) do not apply.

11        Yet even if section 101.93(g)(2) did apply, the claims made on the BOOST labels do not

12   constitute "disease claims" under that regulation.   Section 101.93(g)(2) lays out detailed criteria

13   explaining when it "will find that a statement about a product claims to diagnose, mitigate, treat, cure,

14   or prevent disease."  As the Ninth Circuit has observed, the Section 101.93(g)(2) criteria are intended

15   to identify "a statement that the *product itself* can cure or treat a disease."  *Greenberg v. Target Corp.*,

16   985 F.3d 650, 654 (9th Cir. 2021) (emphasis added).  None of the claims to which Plaintiffs point state

17   that the BOOST product itself can cure or treat diabetes, confirming that no "disease claims" have been

18   made.  *Id.*; *cf.* FDA, *Guidance For Industry Structure/function Claims Small Entity Compliance Guide*,

19   2002 WL 32811489, at *7 (listing product classes that fall within the scope of "disease claims" under

20   101.93(g)(2), namely "analgesics, antibiotics, antidepressants, antimicrobials, antiseptics, antivirals, or

21   vaccines").  Far from claiming to be a diabetes cure, BOOST Glucose Control is plainly marketed as a

22   "balanced nutritional drink," which disclaims any curative effects and also clearly advises that it is

23   "[n]ot a substitute for medication."  (SAC ¶¶ 34–39, 48.)  This disclaimer underscores that no "disease

24   claims" have been made under Section 101.93(g)(2).   *Greenberg*, 985 F.3d at 657 (holding that no

25   "disease claim" was made under 101.93(g)(2) where product disclaimed that it was "not intended to

26   diagnose, treat, cure, or prevent any disease").

27        *Second*, Plaintiffs are incorrect to suggest that the BOOST Glucose Control nutritional drink

28   product labels needed to be "preauthorized by the FDA." (SAC ¶¶ 29, 45.)  Plaintiffs cite an FDA

regulation for that assertion (*id.* (citing 21 C.F.R. § 101.14)), but that regulation applies only to certain "health claims"—defined as claims that "a relationship exists between the presence or level of a *substance* in the food and a disease or health-related condition" (21 C.F.R. § 101.14(a)(1) (emphasis added)). Thus, to constitute a "health claim," a label must make representations related to "[b]oth elements of 1) a substance and 2) a disease." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1074 (N.D. Cal. 2017) (quoting FDA, *Guidance for Industry: A Food Labeling Guide*, at 81 (Jan. 2013), https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf). But BOOST Glucose Control identifies no particular "substance" tied to a claimed health effect, and thus makes no "health claims" for purposes of section 101.14(a)(1). FDA guidance sets out a typical example of a health claim: "Three grams of soluble fiber from oatmeal daily in a diet low in saturated fat and cholesterol may reduce the risk of heart disease." FDA, *Guidance for Industry: A Food Labeling Guide*, at 80 (Jan. 2013). That claim identifies both a substance (soluble fiber) and its effect on health (reducing the risk of heart disease). BOOST Glucose Control nutritional drinks, by contrast, do not identify a specific substance that affects any health condition, and thus fall outside the scope of these regulations.

Because Plaintiffs seek to impose requirements on Nestlé that are "not identical to" those imposed by federal law, *Hawkins*, 906 F.3d at 769, they "effectively seek[] to write in a new provision to the FDCA" regarding the accurate and permissible claims made on the BOOST Glucose Control labels, *Perez*, 711 F.3d at 1118. Courts faced with similar claims have dismissed them as preempted. For example, in *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1122 (N.D. Cal. 2013), Plaintiffs alleged that various calorie-related claims on candy wrappers were misleading under state law. The court dismissed those claims as preempted, however, because the "calorie-related claims appear[ed] to comply with all applicable federal regulations," and thus "any finding that these claims are unlawful and deceptive would impose requirements not identical to the FDA's regulations." *Id.* at 1123; *accord, e.g.*, *Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372, at *9 (N.D. Cal. Feb. 25, 2013) (dismissing as preempted claims regarding "natural lemon flavor" on Crystal Light product packaging). This court should similarly dismiss Plaintiffs' mislabeling claims as preempted by the FDCA.

**D.      The Complaint Does Not Satisfy the Pleading Standards of Rules 8 and 9(b).**

Plaintiffs' complaint does not state a "plausible claim for relief," *Iqbal*, 556 U.S. at 679—nor does it "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b).  As such, Plaintiffs have not satisfied the ordinary pleading standards of Rule 8 or the heightened pleading standards under Rule 9(b), which are applicable to all of Plaintiffs' fraud-based claims.  *Kearns*, 567 F.3d at 1124.

Specifically, Plaintiffs haven't alleged any facts establishing reliance, which is an element of their fraud-based claims.  *Kwikset*, 51 Cal. 4th at 326.  To show "actual reliance," a "plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct," meaning that "in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021) (adopting the majority rule "that a plaintiff must allege its own reliance and not the reliance of third parties").  In making this determination, the court need not accept Plaintiffs' allegations if they lack "facial plausibility."  *Hodges*, 2021 WL 5178826, at *5 (quoting *Iqbal*, 556 U.S. at 678).

Here, Plaintiffs state only the legal conclusion that they each "relied on [Nestlé's] diabetes-related factual representations on the Products' label" when they purchased BOOST Glucose Control drinks.  (SAC ¶¶ 60–62.)  Instead of specifying *which* statements they saw or relied on, they simply point to *all* representations "identified above" (in the prior 59 paragraphs of the complaint).  (*Id.*) These blanket allegations are not a substitute for pleading the specific statements that they saw, when they saw them, and what each Plaintiff understood the statements to mean when they decided to buy the drinks.  Courts routinely dismiss complaints where, as here, Plaintiffs identify "a range of statements" that are allegedly misleading but fail to specify "which statements any of them saw or relied on in deciding to buy" the drinks in question.  *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018); *see also Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal of UCL and CLRA claims because the plaintiff "did not allege that she read and relied on a *specific* misrepresentation" (emphasis added)); *Edenborough v. ADT, LLC*, 2016 WL

Gibson, Dunn &
Crutcher LLP

6160174, at *4 (N.D. Cal. Oct. 24, 2016); *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *10 (N.D. Cal. Aug. 30, 2021).

Moreover, Plaintiffs' theory that reasonable customers would believe the BOOST drinks can cure diabetes is "not plausible on its face" and therefore "need not be accepted" by this Court when reviewing the sufficiency of Plaintiffs' pleadings. *Hodges*, 2021 WL 5178826, at *5. Plaintiffs provide no facts to support that theory and instead state only a legal conclusion of deceptive conduct. That is not enough to satisfy pleading standards under Rule 8, and especially not under Rule 9(b).

**E.      Plaintiffs Have Not Established Breach of an Express Warranty.**

For the same reasons Plaintiffs cannot establish statutory violations, they also cannot establish the breach of an express warranty. "[T]o plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Hadley*, 273 F. Supp. 3d at 1092. But Plaintiffs haven't sufficiently alleged they relied on Nestlé's purported misrepresentations. Section V.D, *supra*. And even if Plaintiffs had sufficiently alleged that they understood the labeling to mean that BOOST nutritional drinks could be used to cure diabetes (SAC ¶ 4), that reliance was unreasonable. By reviewing Nestlé's packaging, a reasonable consumer would have understood the representations to reflect that BOOST Glucose Control drinks have a smaller effect on blood sugar levels than other standard nutritional drinks, not that they have *no* effect or a negative effect on blood sugar levels (particularly since the labels disclose the number of carbohydrates and grams of sugar that each drink contains). *See* Section V.A, *supra*.

**F.      Plaintiffs Cannot Plead the Prerequisites for Seeking Equitable Relief.**

The Court should dismiss Plaintiffs' equitable claims for restitution and injunctive relief for the independent reason that Plaintiffs have an adequate remedy at law. As for Plaintiffs' restitution claim (*see* SAC ¶¶ 88, 97, 112, 165), the Ninth Circuit recently held in a UCL case that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In other words, an equitable-restitution claim is unnecessary when Plaintiffs are

1    already suing for legal relief that would be adequate. *Mullins v. Premier Nutrition Corp.*, 2018 WL

2    510139, at *2 (N.D. Cal. Jan. 23, 2018).

3          Here, Plaintiffs seek monetary damages under the CLRA (a legal remedy) *and* restitution under

4    the UCL, FAL, and CLRA (an equitable remedy) for the same supposed harm. (*See* SAC ¶¶ 88, 97,

5    112.) But Plaintiffs cannot have it both ways. For example, in *Nacarino v. Chobani, LLC*, 2021 WL

6    3487117 (N.D. Cal. Aug. 9, 2021), where the plaintiff sued under the UCL and CLRA for allegedly

7    deceptive advertising of vanilla-flavored yogurt, the Court dismissed the plaintiff's equitable claims

8    for restitution because she also sought damages under the CLRA. *Id.* at *12–13. The Court held that

9    regardless of whether her CLRA claim had any merit, the plaintiff had "not demonstrated that there is

10   an inherent limitation of the legal remedy that renders [money damages] inadequate." *Id.* at *12. And

11   because the plaintiff's claims for restitution and monetary damages were "rooted in the same

12   allegations that" the yogurt's labeling was "misleading to consumers and a violation of the FDA

13   regulations," she "failed to 'establish that she lacks an adequate remedy at law' with respect to her

14   claim for restitution." *Id.* at *12–13 (quoting *Sonner*, 971 F.3d at 844). The same is true here:

15   Plaintiffs' claims under the UCL, FAL, and CLRA are all premised on the same theory that BOOST

16   Glucose Control's labeling falsely marketed that it could help consumers "treat diabetes." (SAC ¶ 4.)

17   Regardless of the merits of Plaintiffs' claims, Plaintiffs cannot seek money damages *and* restitution for

18   these claims because they have not alleged why money damages are inadequate. *Sonner*, 971 F.3d at

19   844.

20         As for Plaintiffs' claims for injunctive relief (*see* SAC ¶¶ 85, 87, 98), "[w]hile injunctive relief

21   was not at issue in *Sonner*, . . . numerous courts in this circuit have applied *Sonner* to injunctive relief

22   claims." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020)

23   (quotations and alterations omitted). And although courts have emphasized that retrospective "money

24   damages are an inadequate remedy for future harm," *Nacarino*, 2021 WL 3487117, at *12, here,

25   Plaintiffs have not adequately alleged that they have suffered *any* harm, let alone that they are at risk

26   of suffering future harm, *see* Section V.B, *supra*; *see also IntegrityMessageBoards.com v. Facebook,*

27   *Inc.*, 2021 WL 3771785, at *20–21 (N.D. Cal. Aug. 24, 2021) (holding plaintiff could seek "forward-

28   looking equitable relief" only because she specifically alleged she "w[ould] be unable to rely on the

product's advertising or labeling in the future, and so w[ould] not purchase the product although she would like to"). Because Plaintiffs never explain why monetary relief would be an inadequate remedy, the Court should dismiss Plaintiffs' equitable claims for restitution and injunctive relief.

## VI.    CONCLUSION

Nestlé respectfully requests that the Court dismiss the second amended complaint in its entirety.

DATED:  April 6, 2022


By:  */s/ Timothy Loose*
CHRISTOPHER CHORBA, SBN 216692
PERLETTE MICHÈLE JURA, SBN 242332
TIMOTHY W. LOOSE, SBN 241037
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:     213.229.7746
Facsimile:     213.229.6746
CChorba@gibsondunn.com
PJura@gibsondunn.com
TLoose@gibsondunn.com

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*