Alex R. Straus, SBN 321366
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212

*Plaintiffs' Attorney*
*Additional attorneys on signature page*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| BRUCE HORTI, SANDRA GEORGE, and JEANETTE CRAIG, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-09812-PJH |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | Date:         June 2, 2022<br>Time:         1:30 p.m.<br>Location:    Court 3 – 3rd Floor<br>Judge:        Hon. Phyllis J. Hamilton |
| NESTLÉ HEALTHCARE NUTRITION, INC., a Company, | |
| | Date Action Filed: February 4, 2022 |
| Defendant. | |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii, iii, iv

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF ISSUES TO BE DECIDED................................................... 3

III.   SUMMARY OF FACTUAL ALLEGATIONS ..................................................... 3

IV.    LEGAL STANDARD ........................................................................................... 4

V.     ARGUMENT ....................................................................................................... 5

    A.     A Reasonable Consumer Would Be Misled By the Prominent Representations on the Products Packaging ................................................................................... 5

    B.     Plaintiffs Have Article III and Statutory Standing........................................ 11

        1.     Plaintiffs Have Alleged a Concrete Injury and Damages .................... 11

        2.     Plaintiffs Have Standing With Regard To BOOST Glucose Control Max ......... 14

    C.     Plaintiffs' Health Claims And Drug Claims Are Not Preempted................................ 15

    D.     The Second Amended Complaint Satisfies the Pleading Standards of Rules 8 and 9(b) 18

    E.     Plaintiffs Have Established Breach of Express Warranty ............................................ 20

    F.     Plaintiffs Have Plead the Prerequisites for Seeking Equitable Relief ......................... 21

V.     CONCLUSION...................................................................................................... 22

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                            **Page(s)**

*Arora v. GNC Holdings, Inc.*, No. 19-CV-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) ................................................................................................................................................... 10, 12

*In re Arris Cable Modem Consumer Litig.*, No. 17 Civ. 01834 (LHK), 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ........................................................................................................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 4

*Becker v. Skype Inc., Case No. 5:12-cv-06477-EJD*, 2014 WL 556697 (N.D. Cal. Feb. 10, 2014) ................................................................................................................................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 4

*Bly-Magree v. California*, 236 F.3d 1014 (9th Cir. 2001) ............................................................. 4-5

*Brazil v. Dole Food Co.*, 935 F.Supp.2d 947 (N.D.Cal.2013) .......................................... 11, 15, 17

*Brown v. Madison Reed, Inc.*, No. 21 Civ. 01233 (WHO), 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ........................................................................................................................................ 20, 21

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ......................................................... 4

*Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111 (N.D. Cal. 2010) ...................................6, 17

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ....................................................................... 16

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ........................... 17

*Clay v. CytoSport*, 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015) .............................................. 15

*Colella v. Atkins Nutritionals*, Inc., 348 F. Supp. 3d 120 (E.D.N.Y. 2018) ............................... 12

*United States v. Locke*, 529 U.S. 89 (2000) ................................................................................. 16

*Corbett v. Pharmacare U.S., Inc.*, No. 21-cv-137 (GPC) (AGS), 2021 WL 4866124 (S.D. Cal. Oct. 19, 2021) ....................................................................................................................................... 4

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020) ......................................... 13

*Edenborough v. ADT, LLC, No. 16 Civ. 02233* (JST), 2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ................................................................................................................................................... 20

*Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744 (KPF), 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ...................................................................................................................................... 14

*Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ............... 18-19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167–81 (2000) .................. 5, 11

*Goldstein v. General Motors LLC, No. 19 Civ. 1778* (LL) (AHG), 2022 WL 484995 (S.D. Cal. Feb. 16, 2022) ............................................................................................................................... 22

*Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ........................... 5, 6, 17-18

*Harris v. PFI W. Stores, Inc., No. SACV192521JVSADSX*, 2020 WL 3965022 at *3 (C.D. Cal. Apr. 9, 2020) ................................................................................................................................ 14

*Haskins v. Symantec Corp.*, 654 F. App'x 338 (9th Cir. 2016) ................................................... 20

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) ................................................. 16

*Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011) ................................................................ 8

*Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) ................................. 16

*Hodges v. King's Hawaiian Bakery W., Inc.*, No. 21-CV-04541-PJH, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) .................................................................................................. 11, 19

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20 Civ. 1765 (GPC) (BGS), 2021 WL 148063 (S.D. Cal. Jan. 15, 2021) ............................................................. 19

*Johnson-Jack v. Health-Ade LLC*, No. 21-CV-07895-LB, 2022 WL 562827 (N.D. Cal. Feb. 24, 2022) ...................................................................................................... 5, 16

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889 (N.D.Cal.2012) .................................. 12-13

*Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017) ................................. 11

*Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) ............................. 5, 7

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) ................................................ 12

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) ........................................ 8

*Lepkowski v. CamelBak Prod., LLC*, No. 19-CV-04598-YGR, 2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) .................................................................................................. 14

*Luong v. Subaru of Am., Inc.*, No. 17 Civ. 03160-YGR, 2018 WL 2047646 (N.D. Cal May 2, 2018) .................................................................................................................... 21

*Manchouck v. Mondelez Int'l Inc.*, No. 13–2148, 2013 WL 5400285 (N.D.Cal. Sept. 26, 2013) 11-13

*McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) .................................................................................................. 5, 16

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ............................................................ 16

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ................................................ 9

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ...................................................................................................... 16

*Savoy v. Collectors Universe, Inc.*, No. SACV2000632DOCADS, 2020 WL 4938464 (C.D. Cal. July 21, 2020) .............................................................................................. 13

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ...................................................... 18

*Sims v. Campbell Soup Co.*, 2018 U.S. Dist. LEXIS 222535 (C.D. Cal. Sep. 24, 2018) ............. 15

*In re Stac Electronics Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ...................................... 5

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .................................................... 18

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ..................................................... 19-20

*Tosh-Surryhne v. Abbott Labs. Inc.*, No. CIV S-10-2603 KJM, 2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) .................................................................................................. 14

*United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010 (N.D. Cal. 2020) ................ 4

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3d Cir. 2000) ................................ 10

*Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021) .............................................. 8, 9

*Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008) ......................................... 5-6

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) ...................................................... 5

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

*In re 5-hour ENERGY Marketing and Sales Practices Litigation* (C.D. Cal. 2014) 2014 WL 5311272, 2014 ................................................................................................................ 10

**Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. ............................................................................ 1

Cal. Bus. & Prof. Code § 17205 ...................................................................................... 21

Cal. Bus. & Prof. Code § 17500 ........................................................................................ 1

Cal. Civ. Code § 1750 et seq. ............................................................................................ 1

Cal. Civ. Code § 1752 ...................................................................................................... 21

Cal. Health & Safety Code § 110100 .............................................................................. 17

Public Health Law §71.05(d) ........................................................................................... 17

**Other**

21 C.F.R. § 101.14 ..........................................................................6, 10, 15, 16, 17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Bruce Horti, Sandra George, and Jeanette Craig (collectively, "Plaintiffs"), respectfully submit this memorandum in opposition to Defendant Nestle USA, Inc.'s ("Defendant" or "Nestle") Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 15) (hereinafter "Motion").

Defendant prominently labels each of its BOOST Glucose Control products with the following representations:

- "BOOST GLUCOSE CONTROL BALANCED NUTRITIONAL DRINK;"
- "DESIGNED FOR PEOPLE WITH DIABETES;" and
- "HELPS MANAGE BLOOD SUGAR."

Plaintiffs' Second Amended Complaint (ECF No. 11) (hereinafter "SAC," at ¶ 3.) These are impermissible implicit or express health claims: they denote a relationship between the drinks' nutritional profile and diabetes, and reasonable consumers could only understand this to mean that these products prevent, treat, or mitigate the negative effects of diabetes. The FDA has stated that Health Claims "cannot be claims about the diagnosis, cure, mitigation, or treatment of a disease."[1] These representations misled Plaintiffs and consumers because they *imply* that the BOOST Glucose Control products help to control glucose (or blood sugar) levels in order to prevent, treat, or mitigate the negative effects of diabetes, when in fact they do not. In reality, Defendant's own testing shows that the Products cause glucose levels to rise. (SAC ¶¶ 54–55.)

Notwithstanding the danger these misrepresentations pose for consumers interested in managing or preventing diabetes, Defendant's false, deceptive, and misleading label statements violate U.S.C. § 343(a)(1) and statutes adopted by California and New York, deeming food misbranded when "its labeling is false or misleading in any particular." The SAC is brought on behalf of two classes of consumers, California Purchasers and New York Purchasers, and more than adequately pleads violations, respectively, of Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); Cal. Bus. & Prof. Code § 17500 ("FAL"); Cal. Civ. Code § 1750 *et seq.* ("CLRA"); New York General

---

[1] *See*  https://www.fda.gov/food/food-labeling-nutrition/questions-and-answers-health-claims-food-labeling (Last visited April 18, 2022.)

Business Law §§ 349 and 350; breach of express warranty (both classes); and unjust enrichment (both classes).

Defendant is aware that these federal and state laws squarely prohibit them from marketing its products to make such claims. Defendant continues to mislabel its products, however, because their diabetes marketing is precisely what allows them to continue profiting off Plaintiffs and consumers in the highly lucrative diabetic management market. (*See* SAC ¶ 19.) This is why Defendant's Motion grossly mischaracterizes Plaintiffs' claims, the injury to Plaintiffs and consumers, the reasonable consumer standard, and federal preemption law.  Instead of addressing the allegations as written, Defendant builds several strawman arguments.

For example, Defendant argues that Plaintiff alleges that "a 'reasonable consumer' would understand BOOST Glucose Control to be a *cure for diabetes*."  (Motion at 15:9-11 [emphasis added].)  But this is far from the point of Plaintiffs' operative SAC.  Plaintiffs actually allege that reasonable consumers would take the Products' name at face value: that the "BOOST Glucose *Control*" products somehow help '*control*' glucose and '*manage*' blood sugar levels by drinking it. (*See, e.g.,* SAC ¶ 5.) Such glucose/blood sugar claims are important because, as Defendant notes, diabetes has no cure.  Instead, as a chronic condition, millions of diabetics can only manage their disease by *controlling/managing* their glucose/blood sugar levels.  (SAC ¶¶ 20-22.)  Similarly, prediabetics can only avoid diabetes through similar action.  (SAC ¶ 42.)

Defendant attempts to capitalize on this by falsely marketing their BOOST Glucose Control products being able to *affirmatively control* their blood glucose/blood sugar levels and/or marketing their products to diabetics.  (SAC ¶¶ 34-38, 40.) Yet, the BOOST Glucose Control products provide no benefits to glucose/blood sugar levels that would not be provided by eating any other low sugar foods. (SAC ¶¶ 46-54.) As the SAC notes:

> [a]ccordingly, contrary to the representations on each of the Products, Nestle BOOST… does not control glucose in a way that such claim is reasonably understood, it simply provokes a less bad glucose response. [¶] Leaving aside whether the conclusion of this small (12 person), non double-blind study are scientifically valid, taking the conclusions at face value at most shows that BOOST Glucose Control leads to a smaller glucose spike than a single, unidentified nutritional drink. This is like a winery advertising prominently that its wine controls blood alcohol levels when all the winery can show is that its wine is less bad than tequila.

(SAC ¶¶ 52-53.) This is the reason why Defendant's labeling practices are both deceptive and injurious to consumers.

Defendant's Motion is filled with similar mischaracterization of fact and law. However, if the Court was to review Plaintiff's SAC on the merits of what is actually pled, and the law as it actually exists, it is clear that Plaintiffs have sufficiently stated their causes of action.

## II. STATEMENT OF ISSUES TO BE DECIDED

1.  Whether a "reasonable consumer" would believe that BOOST Glucose Control drinks can be used to control glucose levels to prevent, treat, or mitigate the negative effects of diabetes.

2.  Whether Plaintiffs have Article III and statutory standing to sue Nestle.

3.  Whether Plaintiffs' claims are preempted by any federal regulations.

4.  Whether Plaintiffs sufficiently allege that they were misled by Defendant's fraudulent representations of the BOOST Glucose Control drinks.

5.  Whether Plaintiffs sufficiently allege a claim for breach of express warranty.

6.  Whether Plaintiffs sufficiently allege their claims for equitable relief.

## III. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiffs bring this class action individually and on behalf of California and New York consumers who purchased the following products: (i) BOOST Glucose Control; (ii) BOOST Glucose Control High Protein; and (iii) BOOST Glucose Control Max (the "Products"). Through the names of these Products, and the statements made on the front of the Product's labels, it is clear that a reasonable consumer would believe that these Products make an implicit or express health claim regarding the control of glucose and blood sugar levels and, therefore, about the prevention, treatment, or mitigation of diabetes.

Defendant misleads consumers into believing its Products affirmatively control their blood glucose levels by prominently labelling the Products as being "[d]esigned for people with diabetes." (SAC ¶ 34). This is an implicit or express health claim: it denotes a relationship between the drink and diabetes, and reasonable consumers could only understand this to mean that the Products prevent, treat, or mitigate the negative effects of diabetes. (*Id.*)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

Defendant also intentionally chose to name the Products "BOOST Glucose Control," and to emblazon the words "Glucose Control" front-and-center on each of the Products so that consumers cannot miss it. (*Id.*) Defendant's motivations are transparent, it labelled the Products in this way consciously to impact consumer choices and gain market dominance; Defendant is aware that all consumers who purchased the Products were exposed to, and would be impacted by, the "Glucose Control" representations. Defendant further labels the Products with "[h]elps manage blood sugar," which is an implicit or express health claim because it purports to control a health-related condition, namely the inability to manage glucose, which describes diabetes. (*Id.*) When these claims are examined in their totality, a reasonable consumer could only understand this to mean that the Products prevent, treat, or mitigate the negative effects of diabetes.

## IV. LEGAL STANDARD

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). This is because it is the defendant's burden to demonstrate that the plaintiff has failed to state a claim. *Corbett v. Pharmacare U.S., Inc.*, No. 21-cv-137 (GPC) (AGS), 2021 WL 4866124, at *12 (S.D. Cal. Oct. 19, 2021). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955); *see also United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1057 (N.D. Cal. 2020).

The heightened pleading standards under Rule 9(b) require only that the circumstances constituting the alleged deception "be 'specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done

anything wrong.'" *Bly-Magree v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (*quoting Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). Consequently, Rule 9(b) only requires that defendants receive "adequate notice" to show that the complaint is not "a pretext for the discovery of unknown wrongs." *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

When a party files a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court must take the allegations in the plaintiff's complaint as true. *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

## V.    ARGUMENT

### A.    <u>A Reasonable Consumer Would Be Misled By the Prominent Representations on the Products Packaging.</u>

Granting a motion to dismiss is appropriate only in "the rare situation" where "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

Many courts have refused to dismiss consumer fraud claims at the motion to dismiss stage regarding violations of C.F.R. § 101.14(a)(1), which Plaintiffs are alleging in their Complaint. (*See* SAC ¶¶ 27-46) *Krommenhock v. Post Foods, LLC,* 255 F. Supp. 3d 938 (N.D. Cal. 2017) (finding a reasonable consumer could be misled regarding health claims made in violation of  C.F.R. § 101.14(a)(1)); *Johnson-Jack v. Health-Ade LLC*, No. 21-CV-07895-LB, 2022 WL 562827 (N.D. Cal. Feb. 24, 2022) (same); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) (same); *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) (same).

Questions regarding how a reasonable consumer would interpret the Products' labels and representations are questions of fact which require both sides to present evidence as to the nature and understanding of the average consumer.  *See Williams*, 552 F.3d at 938-39 (citing *Linear*

*Technology Corp. v. Applied Materials,* Inc., 152 Cal.App.4th 115, 134–35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."). Thus, the issue is rarely decided as a matter of law and should not be resolved at the pleading stage. *In re Ferrero Litig*., 794 F.Supp.2d 1107, 1115 (S.D. Cal. 2011). However, "[t]he issues of reliance and how [product packaging] statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1083 (N.D. Cal. 2017) (quoting *Bruton v. Gerber Prod. Co.*, 2014 WL 172111, at *4 (N.D. Cal. Jan. 15, 2014) (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1125-26 (N.D. Cal. 2010))); *Williams v. Gerber Prod. Co.,* 552 F.3d 934 (9th Cir. 2008) ("rejecting the argument that "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Here Plaintiffs have alleged the "[d]esigned for people with diabetes", "BOOST Glucose Control", and "[h]elps manage blood sugar" claims are misleading and false because the Products violate 21 C.F.R. § 101.14(a)(1). (SAC ¶¶ 27-46.) But this is no technical violation of food labeling regulations. Instead, to prevent modern-day snake oil salesmen, 21 C.F.R. § 101.14 regulates Health Claims (i.e. any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements, symbols, or vignettes, characterizes the relationship of any substance to a disease or health-related condition). 21 C.F.R. § 101.14(a)(1). Such claims can only be made if provided for in the regulations. 21 C.F.R. 101.14(c)(d). Here, Defendant makes the exact type of misleading health claims that 21 C.F.R. § 101.14 is designed to prevent. By expressly, or by implication, tying the Products to the control and management of glucose levels, a key treatment of diabetes and prediabetes, Defendant suggest that their Products will mitigate or treat diabetes. Indeed, Defendant, through its labels, affirmatively states that its Products will "*control*" glucose, "*manage*" blood sugar, and is "for diabetics." (*See* SAC ¶¶ 33-39.) This is a far cry from suggesting products are low sugar, thereby preventing large spikes in glucose levels associated with high sugar foods. Instead, it is reasonable to believe that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

consumers would understand the Products, through their labels, to affirmatively control glucose levels through some proven mechanism. (*See id.* ¶¶ 46-48.) This is simply not true. (*See id.* ¶¶ 51-55.)

Plaintiffs have further alleged they relied on those representations when purchasing the Products. (*See id.* ¶ 60-67 [noting that each Plaintiff "relied on Nestle's diabetes-related factual representations on the Products' label" and has been economically damaged by receiving something worth less than what was promised].) Nothing more is required of Plaintiffs at this stage.

Defendant contends "[a] reasonable consumer (and particularly a reasonable consumer with diabetes) would understand that any food or drink with some level of carbohydrates will naturally and inevitably impact glucose levels—the *only question is the magnitude of the effect it will have*…the labels…clearly disclose the number of carbohydrates and grams of sugar each drink contains" (Motion at 5.) Similarly, Defendant argues that consumers would understand that the challenged representations are all simply meant to reflect lower carbohydrate content which is disclosed on the back label. (*Id.* at 1.)  However, courts do not require consumers to scrutinize ingredients on the back of the products altogether, much less to match them with expressly advertised health benefits on the front. *See Williams*, 552 F.3d at 939 (a reasonable consumer is not expected to look beyond the false advertisement, to the back of the label, to dispel the misleading claim.)

Defendant's arguments are identical to the arguments rejected in *Krommenhock v. Post Foods*, LLC, 255 F. Supp. 3d 938 (N.D. Cal. 2017). In *Krommenhock*, the plaintiffs alleged the products made health claims despite containing excessive added sugar content. The defendant argued that the label was not misleading because the consumer is expected to look at the Nutrition Fact Panel to answer their questions and the sugar content was clearly disclosed. The court rejected that argument "[b]ecause the 'features' on the front of the package could deceive a reasonable consumer, that the actual ingredients were disclosed on the back in the Panel did not defeat the claim on a motion to dismiss." *Id.* at 964 (citing *Williams* 552 F.3d 934). Here, Plaintiffs alleged that all of the representations on the front of the Products' labels are misleading, both on their own, and read together: "designed for people with diabetes," "BOOST Glucose Control," "[h]elps manage blood sugar." (SAC ¶¶ 42-46.) However, not only is Defendant asking Plaintiffs to check the Nutritional

Label on the back of the Products, which they are not required to do, but Defendant is also asking Plaintiffs to interpret the Nutritional Label to determine whether "some level of carbohydrates will naturally and inevitably impact glucose levels." (Motion at 5.) This is not required of a reasonable consumer at the motion to dismiss stage. *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphasizing that "the standard is not a least sophisticated consumer," but a reasonable one); *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

Defendant's argument that a reasonable consumer would understand that the promised benefits merely reflect lower carbohydrate levels or would know that the Products would raise glucose levels is meritless. Defendant's Products do not advertise that they are lower in carbohydrates than similar drinks, but rather that the Products actually "control" glucose and "manage" blood sugar. The use of the terms "control" and "manage" suggest that the Products actually keep a person's glucose levels within normal limits. Plaintiffs' position is not unjustified. As noted in the SAC, diabetes medications make similar claims, to invoke a similar understanding from consumers. (*See* SAC ¶ 23-24.)  Thus, it would be eminently reasonable for consumers that do check the ingredients panels (though they do not need to do) to believe that the combination of ingredients delivers the advertised diabetes-related health benefits. This is compounded by the fact that Defendant specifically claims that the Products are specifically "designed" for people with diabetes.

Defendant contends that *Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021) warrants dismissal of Plaintiffs' claims under the reasonable consumer test. (Motion at 6.) In *Weiss*, the plaintiff alleged that "ionized to achieve the perfect balance misled her as a reasonable consumer into believing the water balance[d] her internal bodily pH." (*Id.* at 303.) Rejecting the plaintiff's argument, the court found "no reasonable consumer would interpret that statement to mean the water itself would balance the consumer's own pH levels." *Id. Weiss* is readily distinguishable.

In *Weiss* the Ninth Circuit examined "the context of the water bottle packaging as a whole" and concluded that "ionized" and other representations referred to the water, not internal bodily impact the water would have on one's body. Here, Defendant's Products *refer expressly to internal bodily impact* and a disease: "helps manage *blood sugar*" and "designed for people with diabetes."

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

(SAC ¶¶ 35-38.) Diabetes is a disease, and a representation that something is designed specifically for people with a disease can only be interpreted to mean that it either prevents the disease, or, if one already has it, mitigates the symptoms, or otherwise treats it.

Contrary to Defendant's contentions, Plaintiffs do not allege, and do not need to allege, that the Products are advertised to "cure" diabetes in order for the representations to be misleading. (Motion at 12, 15.) "Glucose control," in the context of either or both of these other representations, conveys to the reasonable consumer that the Products control blood glucose levels, an interpretation reinforced by the fact that glucose is a subset of sugar. (*See* SAC ¶ 17.) Even alone, "glucose control," reasonably describes internal bodily impact because the common understanding of "control" is "to exercise or direct influence over:" it makes no sense to tout that a product controls its own ingredients.[2] Unlike *Weiss*, these prominent front-of-the-packaging representations cannot -- especially taken together -- be interpreted to describe what is in the bottles, or in any way other than how Plaintiffs' have alleged to have understood them. The Products' packaging is designed to convey to reasonable consumers that if they are concerned about diabetes, they should buy the Products because they manage blood sugar/glucose levels, which means that the product prevents or treats diabetes because that's what diabetes is: a dysfunction of the body's ability to control blood sugar/glucose levels (SAC ¶¶ 47-48.) The plausibility of these allegations is bolstered by Defendant's overall marketing of the Products (outside of the packaging) as "nutrition for diabetics" and "drinks for diabetics/tailored nutrition." (*Id.* ¶41,) and by the prominence of the challenged statements which is apparent in the photos of the Products. (*Id.* ¶¶ 35-41.) Therefore, unlike in *Weiss*, Plaintiffs have not "checked their common sense at the door of the store[,]" and Defendant's arguments should be rejected.

Defendant's reliance on *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) is also misplaced. (Motion at 5.) There, the plaintiff alleged that defendant's marketing of "100% New Zealand Manuka Honey" and listing of Manuka honey as the sole ingredient was misleading because the honey contained pollen from other types of flowers. *See id.* at 879. The Court found that the "front label is accurate under the FDA's guidelines," and because "100% New Zealand Manuka

---

[2] See https://www.merriam-webster.com/dictionary/control (last visited April 15, 2022).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

Honey" was ambiguous because it could refer to its New Zealand origin (which was true), Manuka honey (which was consistent with FDA guidelines), or the interpretation plaintiff was pressing which was that it represented that it was 100% Manuka flower nectar, which the Court found implausible because reasonable consumers know bees cannot be guaranteed to visit only one type of flower. *Id.* at 881-883. No ambiguity exists in the challenged representations at issue here, and *Moore* turned on FDA guidelines and nuances of Manuka honey labelling, and the common knowledge that bees fly. By contrast, reasonable consumers do not know, and should not be charged with knowing as a matter of law, what impact more than a dozen ingredients acting together have on diabetes risks.

Defendants also argue that no consumer would believe that diabetes medicine would be sold in the "grocery aisles" in Costco, Walmart, CVS and Sam's Club, which is where Plaintiffs' purchased the Products. (Motion at 7.)  Under Defendant's logic that a reasonable consumer could not be misled by food packaging based on the place of sale, there would be no need for 21 C.F.R. § 101.14(a). This is plainly wrong. *See Arora v. GNC Holdings, Inc.,* No. 19-CV-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) (sustaining claims that over-the-counter supplements mentioning diseases in their title -- including diabetes -- were improperly marketed as drugs and were deceptive.). In *Arora* the diabetes-related representations closely mirror the statements at issue here: "The side panel makes the following claim: 'Why should I use it? It is scientifically designed for the special dietary needs of people with diabetes. Use it with the enclosed nutritionally balanced diet suitable for persons with diabetes to help maintain healthy blood sugar levels.'" *Id.* at 5.

Plaintiffs have alleged the Products' names are misleading on their own (SAC ¶ 51, 123, 138, 159,) and courts have found this to be true in other product mislabeling cases. *See, e.g.*, *In re 5-hour ENERGY Marketing and Sales Practices Litigation* (C.D. Cal. 2014) 2014 WL 5311272, 2014 U.S. Dist. 149732 (*5-Hour Energy* ) (the "5-hour ENERGY" name was misleading under California's false advertising law survived the pleading stage); *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 87-89 (3d Cir. 2000) ("BreathAsure" was held to be a misleading brand name by the Third Circuit because there was no "scientific foundation" for the idea that the BreathAsure capsules were "effective against bad breath"). Likewise, this Court should find Defendant's product name, "BOOST Glucose Control" misleading on its own.

**B.**    <u>Plaintiffs Have Article III and Statutory Standing.</u>

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision*." Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1174 (9th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

**1.**    *Plaintiffs Have Alleged a Concrete Injury and Damages*

To establish injury in fact to support standing, a plaintiff must show that he/she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Hodges v. King's Hawaiian Bakery W., Inc.*, No. 21-CV-04541-PJH, 2021 WL 5178826, at *4 (N.D. Cal. Nov. 8, 2021) (citing *Spokeo Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016)) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs allege they paid a premium price for the Products because they paid for a product they reasonably believed was specifically designed to counter the risks of developing diabetes, and for treating diabetes, by controlling/managing blood sugar levels, but received instead a mislabeled product that did not confer those expressly advertised benefits. (SAC ¶¶ 65-67.) Plaintiffs allege they would not have purchased the products had they known the Products did not "control glucose," "manage blood sugar," and were not authorized by the FDA to make those claims. (*Id.* ¶¶ 127, 141, 147, 160.) This is sufficient to confer Article III and statutory standing. *See Brazil v. Dole Food Co.,* 935 F.Supp.2d 947, 962 (N.D.Cal.2013) (holding that "Brazil suffered a concrete and particularized injury ... [because] he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products"); *see also Manchouck v. Mondelez Int'l Inc.,* No. 13–2148, 2013 WL 5400285, at *2 (N.D.Cal. Sept. 26, 2013) (finding plaintiff had both constitutional and statutory standing where the complaint alleged "plaintiff paid a 'price premium' because the product claimed to be 'made with real fruit,'" and that "[p]laintiff would

not have purchased the two products at that price point absent the alleged misstatements"); *see also Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately."); *see also Jones v. ConAgra Foods, Inc.,* 912 F.Supp.2d 889, 901 (N.D.Cal.2012) (allegations "that plaintiffs would not have purchased a product if the product had been labeled accurately [were] sufficient to establish injury under California's consumer laws"); *see also Arora v. GNC Holdings, Inc.,* No. 19-CV-02414-LB, 2019 WL 6050750 at *20-21 (N.D. Cal. Nov. 15, 2019) (allegations that plaintiffs read the misrepresentations at issue, believed them to be true, and would not have bought the products otherwise suffice to allege Article III and statutory (UCL) standing).

Defendant contends this case is similar to *Colella v. Atkins Nutritionals*, Inc., which dismissed New York consumer fraud claims on standing grounds. The plaintiff in *Colella* only alleged one conclusory allegation regarding the price premium paid: "Atkins charges a premium for its products and specifically markets them in a premium location of its retailers; thus, Plaintiff and members of the Class paid more than they normally would have for comparable products." 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018).

Plaintiffs make a number of allegations regarding price premium that are sufficient to confer standing: Plaintiffs allege they would not have purchased the products had they known the Products did not "control glucose," "manage blood sugar," and were not authorized by the FDA to make those claims. (SAC ¶¶ 127, 141, 147, 160); that all Plaintiffs "chose to pay the premium price based upon the various claims and promises made by Nestle regarding the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels." (*Id.* ¶¶ 65-67;) the "labeling, marketing, and advertising…became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant." (*Id.* ¶ 156.) Nothing more is required of Plaintiffs at this stage. *Colella* is inapplicable, insofar as it stands for the proposition that Plaintiffs must quantify the amount of the price premium paid by Plaintiffs to establish standing at the motion to dismiss stage. This is not the

consensus view in the Second Circuit, this District, nor the Ninth Circuit. *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) ("although plaintiffs sometimes point to comparators in support of a price premium claim, *a plaintiff is not required to do so in order to allege injury*;" *see also Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 110 (S.D.N.Y. 2021) (rejecting defendant's argument to apply a "rigorous pleading standard" for sufficient price premium allegations) emphasis added; *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *10-11 (S.D.N.Y. Nov. 9, 2020) ("allegations that plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"; *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (allegation that plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory); *Manchouck v. Mondelez Int'l Inc.*, No. 13–2148, 2013 WL 5400285, *2 (N.D.Cal. Sept. 26, 2013) (finding plaintiff had both constitutional and statutory standing without specifically quantifying the amount of the price premium paid); *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 901 (N.D.Cal.2012) (same); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 961–62 (N.D. Cal. 2013) (same).

Further, Defendant contends that Plaintiffs have no injury and hence no standing because it has a refund policy posted on its website for consumers who are dissatisfied with the taste of the Products. (Motion at 10.) Defendant's refund policy, or its "Great Taste Guarantee," purports to offer refunds to consumers that "Don't love the taste of BOOST." (Ex. A at 2, 4.) To begin with, the guarantee is patently inapplicable: Plaintiffs have not challenged the *taste* of BOOST and would not be eligible to receive refunds for the reasons they sued.[3]

The case cited by Defendant in support of this proposition, *Savoy v. Collectors Universe, Inc.*, held that a plaintiff did not have standing challenge a company's satisfaction guarantee clause because he did not try to personally take advantage of the company's satisfaction guarantee program; "In fact, nowhere in the Complaint does plaintiff claim to have attempted to take advantage of the satisfaction guarantee." No. SACV2000632DOCADS, 2020 WL 4938464, at *4 (C.D. Cal. July 21,

---

[3] Defendant has sought to introduce the refund guarantee via a motion for judicial notice (ECF No. 15-1). Concurrently with the filing of this Opposition, Plaintiffs' have a filed an opposition to Defendant's motion.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

2020).  Neither that case, nor any other cited by Defendant holds that the presence of an online refund policy moots consumer claims, and indeed there is no such rule. The *Savoy* plaintiff's allegations were *about* the refund policy: "[p]laintiff alleges that . . . PWCC has knowingly sold altered cards . . . and has refused to issue refunds of the purchase price for those cards." *Id*. *Savoy* has no application here because the refund policy is not implicated in Plaintiffs' SAC, and by its terms is only applicable if consumers do not like the taste of the Products.

Courts in the Ninth Circuit have held *only monetary refunds actually offered* to plaintiffs *prior* to the commencement of a lawsuit may warrant dismissal for lack of standing. *Harris v. PFI W. Stores, Inc.*, No. SACV192521JVSADSX, 2020 WL 3965022 at *3 (C.D. Cal. Apr. 9, 2020) ("PFI offered its refund prior to the commencement of suit. Therefore, Harris does not have standing."); *Lepkowski v. CamelBak Prod., LLC,* No. 19-CV-04598-YGR, 2019 WL 6771785, *2 (N.D. Cal. Dec. 12, 2019) ("CamelBak has "unconditionally sent Ms. Lepkowski ... a new 25 ounce CamelBak Eddy Water Bottle as a free replacement for Ms. Lepkowski's Water Bottle…also enclosed with th[e] letter [was] an unconditional refund check made payable to Ms. Lepkowski in the amount of $20.00, which [was] intended to be more than she paid for her water bottle at Sports Basement); *Tosh-Surryhne v. Abbott Labs. Inc.,* No. CIV S-10-2603 KJM, 2011 WL 4500880, at *1 (E.D. Cal. Sept. 27, 2011); *Becker v. Skype Inc.*, Case No. 5:12-cv-06477-EJD, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014) (dismissing claims where plaintiff received a full refund prior to filing lawsuit); *Epstein v. JPMorgan Chase & Co.*, No. 13 Civ. 4744 (KPF), 2014 WL 1133567, at *5 (S.D.N.Y. Mar. 21, 2014) ("that Plaintiff received the Refund Check demonstrates the absence of any 'actual' injury on which Plaintiff's standing could be established."). Unlike any of cases in the Ninth Circuit involving refunds that negated Article III standing, Defendant has made neither an actual monetary refund offer to Plaintiffs for the price of their Products, nor an actual monetary refund offer prior to the commencement of litigation. The mere existence of an online refund policy (which Defendant does not even assert Plaintiffs ever saw), and which would not apply to the reasons underlying this lawsuit, is insufficient to warrant dismissal for lack of standing.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

**2.**    ***Plaintiffs Have Standing With Regard To BOOST Glucose Control Max***

Defendant argues that Plaintiffs lack standing to assert claims regarding the BOOST Glucose Control Max 30g Protein because none of the Plaintiffs alleged they purchased it. (Motion at 10.) While authority is split on plaintiffs' standing to bring claims for products they did not personally purchase, the prevailing view in the Ninth Circuit is that class action plaintiffs can bring claims for products they didn't purchase "as long as the products and alleged misrepresentations are substantially similar." *Sims v. Campbell Soup Co*., 2018 U.S. Dist. LEXIS 222535, at *9-10 (C.D. Cal. Sep. 24, 2018).  The proper time to make the "substantial similarity" determination is at class certification.  *Id.; see also Clay v. CytoSport*, 2015 WL 5007884, (S.D. Cal. Aug. 19, 2015) at *7 (refusing to dismiss class claims for products not purchased by named plaintiff "[i]n light of the alleged similarity of ingredients, labels, and misrepresentations at issue in this case" and holding issue is better addressed at class certification stage); *Brazil*, 2013 WL 5312418 at *7 (adopting substantial similarity standard and holding that "Brazil is not asserting standing to sue over injuries he did not suffer; rather, Brazil asserts that the injuries he suffered as a result of buying the Purchased Products and the injuries suffered by the unnamed class members who purchased the Substantially Similar Products are one and the same.").

Here, the challenged representations on the BOOST Glucose Control Max 30g Protein are that it "Helps Manage Blood Sugar" and is named "Boost Glucose Control." (SAC ¶ 36.) The Products Plaintiffs have purchased, which include the Boost Control Rich Chocolate flavor, also contains the challenged representations of the "Boost Glucose Control" product name and "Helps Manage Blood Sugar." (*Id.* ¶ 39.) Therefore, the representations on the purchased Boost Control Rich Chocolate flavor are identical to the representations on the BOOST Glucose Control Max 30g Protein and Plaintiffs should be allowed to proceed with claims regarding that product.

**C.**    <u>**Plaintiffs' Health Claims And Drug Claims Are Not Preempted.**</u>

Defendant contends Plaintiffs' claims are preempted and should be dismissed because the Products do not make health claims in violation 21 C.F.R. § 101.14(a)(1). These arguments are meritless, as Plaintiffs' claims are not preempted and are properly pled.

Pursuant to the Supremacy Clause, federal law preempts state law when (1) Congress enacts a statute that explicitly preempts state law; (2) federal law occupies a legislative field to such an

15

extent that Congress left no room for state regulation in that field; or (3) state law actually conflicts with federal law. *Chae v. SLM Corp.,* 593 F.3d 936, 941 (9th Cir. 2010). Defendant bears "the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 925 (N.D. Cal. 2014). This Court must "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000). This presumption is heightened "in fields of traditional state regulation." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). In light of the historical "primacy of state regulation of matters of health and safety," (*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)) courts allows state law to "normally coexist with federal regulations." *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 718 (1985). And where Congress does provide for express preemption, courts are to read the clause narrowly. *Medtronic, Inc.*, 518 U.S. at 485.

A "health claim" is "any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication ... characterizes the relationship of any substance to a disease or health-related condition." *Johnson-Jack v. Health-Ade LLC*, No. 21-CV-07895-LB, 2022 WL 562827, at *8 (N.D. Cal. Feb. 24, 2022) (quoting 21 C.F.R. § 101.14(a)); *see McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2018 WL 3956022, at *7 (S.D. Cal. Aug. 17, 2018) ("a statement is a health claim only if it relates to a health related condition. General claims of health and wellness are not health claims."). For example, the phrase "HEART HEALTHY/Whole grains can help support a healthy lifestyle" is a health claim because it links heart health with whole grains. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1076 (N.D. Cal. 2017). Like nutrient-content claims, a health claim may be express or implied. *Id.* at 1074 ("an implied health claim includes 'those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.'") (quoting 21 C.F.R. § 101.14(a)(1)). "Substance" is defined as "**a specific food** or component of food". 21 C.F.R. § 101.14(a)(2). Further, these "health claims" must be complete, truthful, and not misleading. 21 C.F.R. § 101.14(d)(2)(iii).

Here, Defendant makes health claims in violation of 21 C.F.R. § 101.14(a)(1) that link their specific food products ("Substance") to diabetes: "'Designed for people with diabetes'…is an implicit or express health claim: it denotes a relationship  between the drink and diabetes, and reasonable consumers could only understand this to mean that the Products prevent diabetes or mitigates the negative effects of  diabetes" (SAC ¶ 34;) "'BOOST Glucose Control,' is an implicit or express  health claim because it purports to control a health-related condition, namely the  inability to control glucose, which describes diabetes" (*Id.*;) "'[h]elps manage blood sugar' is an implicit or express health claim because it purports to control a health-related condition, namely the inability to manage glucose, which  describes diabetes." (*Id.*) When looking at the product label as a whole, these claims by Defendant imply that the Products' ingredients, (which include dozens of chemical substances), help a health-related condition, namely diabetes.  Plaintiffs have clearly alleged violations of 21 C.F.R. § 101.14(a)(1) and do not seek to allege violations outside of 21 C.F.R. § 101.14(a)(1) as Defendant suggests. Further, Defendant's Products raise glucose levels. (SAC ¶¶ 54–55.) This makes the Health Claims described above misleading and in violation of 21 C.F.R. § 101.14(d)(2)(iii).

Since Plaintiffs' claims arise from express violations of § 101.14(a)(1) and (d)(2)(iii), the FDCA does not preempt any state law that "'effectively parallels or mirrors' the relevant federal labeling laws and regulations." *See Chacanaca v. Quaker Oats Co*., 752 F.Supp.2d 1111, 1118 (N.D. Cal. 2010) citing *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009); *see also Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 370 (N.D. Cal. 2010). California has adopted the Sherman Law, which incorporates the FDCA <u>*verbatim*</u> into its California's statutory framework. CAL. HEALTH & SAFETY CODE § 110100.  Likewise, The New York Food, Drug and Cosmetic Act has expressly adopted the federal food labeling requirements and has stated "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 343)[.]" Public Health Law §71.05(d). Thus, the "real question presented here is whether the FDCA preempts [Plaintiffs'] suit to enforce *state* [dietary supplement] requirements… that are *identical* to requirements imposed by the FDCA." *Brazil v. Dole Food Co*., 935 F. Supp. 2d 947 (N.D. Cal. 2013) (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Accordingly, Plaintiffs merely seek to hold Defendant to standards set out in the FDCA, through parallel state laws, which is permissible under the FDCA. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1076 (N.D. Cal. 2017) ("the Court finds that Plaintiff's unlawful prong UCL cause of action survives to the extent it is based on Plaintiff's use of heart healthy statements in violation of FDA regulations.").

### D.      The Second Amended Complaint Satisfies the Pleading Standards of Rules 8 and 9(b).

Defendant argues that Plaintiffs' claims fail under Rules 8 and 9(b) because (1) Plaintiffs have not alleged any facts establishing reliance, and (2) it is "not plausible on its face" that reasonable consumers would "believe Nestle BOOST drinks can cure diabetes." (Motion at 14–15.) As to the former argument, Plaintiffs address it above and will not reargue here. *See supra*, at § V(A). However, Defendant's latter argument is equally meritless.

To satisfy Rule 9(b)'s heightened standard, the allegations need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). As courts have pointed out in other cases involving false labelling, "so long as a plaintiff identifies the label claim at issue, where the statement was made, why it was fraudulent, and how it affected plaintiff," the purposes of Rule 9(b) are served. *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *12 (S.D. Cal. Jan. 3, 2018). More importantly, Rule 9(b) specifically states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, while Plaintiffs must allege the 'who, what, where, when, and why' of the fraudulent statements, they do not have to allege reliance with any particularity.

Plaintiffs have more than cleared this hurdle. Their SAC alleges in detail the content of the false and misleading representations, including the uniform representations on the Boost packaging: "[t]he Products are sold in lined bottles that prominently represented on the bottles themselves that

18

the Products 'help[s] manage blood sugar,' and/or that they are 'designed for people with diabetes.' The name of the Products themselves, BOOST Glucose Control, is also a representation that it controls glucose." (SAC ¶¶ 34-38, *passim*). Plaintiffs' SAC then explains in detail why the statements are deceptive and unlawful.  (*Id.* ¶¶ 43, 51-64.) Plaintiffs have identified which Products they purchased, when they purchased them, what misrepresentations they relied upon when purchasing the Products, and have asserted that they would not have purchased the Products if they had known the truth, and that they received something of lesser value than promised. (*Id.* ¶¶ 65-67.) These allegations are more than sufficient to meet the requirements of Rule 9(b).  *See Fernandez*, 2018 WL 280028 at *12 (labeling case holding that comparable allegations were sufficient under Rule 9(b) because defendant knew "what statements are at issue, why they are allegedly misleading, and how it affected [plaintiff]," and that further detail regarding the plaintiff's purchases "serves no end towards ensuring that [defendant] receives adequate notice and is protected from the burdens of baseless litigation.").

Many of the cases Defendant cites are neither availing nor relevant to their Motion. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (reversing an order decertifying the class); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20 Civ. 1765 (GPC) (BGS), 2021 WL 148063, at *3 (S.D. Cal. Jan. 15, 2021) (dismissing claims where, unlike here, the plaintiff pled reliance based on completely unrelated third parties and prior, unconnected misrepresentations); *Hodges v. King's Hawaiian Bakery W., Inc*., No. 21 Civ. 4541 (PJH), 2021 WL 5178826, at *7 (N.D. Cal. Nov. 8, 2021) (dismissing claims where plaintiffs alleged King's Hawaii sweet rolls deceptively implied they were made in Hawaii when the packaging clearly stated they were made in California).

In fact, *In re Tobacco*, (cited by Defendants), actually serves to highlight why Plaintiffs' claims here should survive Defendant's Motion.  In particular, the court unequivocally states:

> [W]e conclude that a plaintiff must plead and prove actual reliance . . . but . . . **is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements** where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign.

*In re Tobacco II Cases*, 46 Cal. 4th 298, 328, 207 P.3d 20, 40–41 (2009) (emphasis added).  This is precisely what Plaintiffs allege.  Defendant's packaging and marketing materials inundate consumers with representations that, when taken together, leave consumers with the reasonable

belief that the Products are intended to manage diabetes. Indeed, this is what differentiates BOOST Glucose Control from other nutritional drinks. Plaintiffs specifically stated that they each relied on "the representations that [the Product] controls and manages glucose levels." (SAC ¶¶ 65-67.) They also made clear that the representations made on the Products' packaging, taken together, convinced them that Products can prevent or manage diabetes. (*Id.*) ("at the time of his purchase, Mr. Horti relied on Nestle' diabetes-related factual representations on the Products' label. *All* of the diabetes related representations made by Nestle regarding the Products purchased by Mr. Horti are false."). This critical factor distinguishes Plaintiffs' claims from the those plead in the cases cited by Defendant, where the courts dismissed claims identifying "a range of statements." Plaintiffs' SAC plainly identifies diabetes related misrepresentations (glucose control, designed for people with diabetes, and helps manage blood sugar), each of which appears on the front of the Products' packaging. Defendant cannot pretend it does not understand which statements are challenged. Unlike the cases cited by Defendant, Plaintiffs did identify specific misrepresentations they relied on which cemented the impression to reasonable consumers that the Products manage diabetes risks. *See In re Arris Cable Modem Consumer Litig.*, No. 17 Civ. 01834 (LHK), 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (dismissing claims where, unlike here, the plaintiffs failed to specify any statements plaintiffs saw and relied upon); *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (same); *Edenborough v. ADT, LLC*, No. 16 Civ. 02233 (JST), 2016 WL 6160174, at *4 (N.D. Cal. Oct. 24, 2016) ("nowhere does plaintiff allege that he relied on any particular advertisement, website content, or other communications"); *Brown v. Madison Reed, Inc.*, No. 21 Civ. 01233 (WHO), 2021 WL 3861457, at *12 (N.D. Cal. Aug. 30, 2021) ("[plaintiffs] do not contend that they saw . . . the 'harsh' ingredient statements that they emphasize as the basis of their false advertising theory.").

### E.   Plaintiffs Have Established Breach of Express Warranty.

Defendant argues Plaintiffs have not established their breach of express warranty claims because "Plaintiffs haven't sufficiently alleged they relied on Nestle's purported misrepresentations . . . [a]nd even if Plaintiffs had sufficiently alleged that they understood the labeling to mean that

BOOST nutritional drinks could be used to cure diabetes [sic], that reliance was unreasonable." (Motion at 15.)

First, Plaintiffs allege they were led to believe the Products would prevent, manage or treat diabetes, not cure it.  Plaintiffs' SAC repeatedly emphasizes the misrepresentations at issue, and the fact that Plaintiffs relied on those misrepresentations.  (*See, e.g.*, SAC ¶ 37) ("Plaintiffs purchased Products and relied on the representation that it was 'designed for people with diabetes,' and on the representation that BOOST Glucose Control effectively controls glucose and helps manage blood sugar;") (*id.* ¶ 60) ("Mr. Horti relied on Nestle' diabetes-related factual representations on the Products' label;") (*id.* ¶ 61) ("Ms. George relied on Nestle' diabetes-related factual representations on the Products' label."); (*id.* ¶ 62) ("Ms. Craig relied on Nestle' diabetes-related factual representations on the Product's label.").  Indeed, Plaintiffs make clear in Count VI of their SAC ('Defendant's Breach of Express Warranty'), that "Defendant also made claims that were implied disease claims . . . ." (*Id.* ¶ 153.)  That is, Defendant warranted to Plaintiffs and the Proposed Class that the Products could treat or manage diabetes.  As detailed in their SAC, "[t]his breaches the warranties made by Defendant which Plaintiffs reasonably relied upon at the time of purchase." (*Id.*) Whether the Products' explicit diabetes and glucose control references could reasonably induce consumers to believe that the Products are intended to manage diabetes is, again, a question of fact for a jury to decide, and as already demonstrated above, Plaintiffs' understanding is consistent with what a reasonable consumer would understand.

**F.**   **Plaintiffs Have Plead the Prerequisites for Seeking Equitable Relief.**

Defendant argues that Plaintiffs cannot avail themselves of restitution or injunctive relief because "Plaintiffs have an adequate remedy at law."  By the express terms of the CLRA and UCL however, the availability of restitution is **cumulative** with other remedies available under other laws. *See Luong v. Subaru of Am., Inc.*, No. 17 Civ. 03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018); Cal. Bus. & Prof. Code § 17205 ("Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state;") Cal. Civ. Code § 1752 ("The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be

in addition to any other procedures or remedies for any violation or conduct provided for in any other law.").

Additionally, Plaintiffs are entitled to injunctive relief, because they lack an adequate remedy at law for <u>future harm</u>: "A previously deceived consumer may have standing to seek an injunction … [i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future." *Goldstein v. General Motors LLC*, No. 19 Civ. 1778 (LL) (AHG), 2022 WL 484995, at *7 (S.D. Cal. Feb. 16, 2022) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (citation omitted)). Plaintiffs have alleged exactly this: "Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging." (SAC ¶ 85.) Nothing more is required of Plaintiffs at this stage for claims for injunctive relief to be sustained.  Indeed, the UCL, CLRA, and FAL, each allow Plaintiffs to allege injunctive relief for the benefit of the public, even if they themselves may be able to ameliorate their risk of future harm.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety. If the Court finds any of Plaintiffs' allegations insufficient, they would request leave to amend the Complaint to address such issues.

Dated: April 20, 2022                    Respectfully submitted,

<u>/s/ Alex R. Straus</u>
Alex R. Straus, (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 South Beverly Place
Beverly Hills, CA 90212
Tel.:    (917) 471-1894
Fax:    (310) 496-3176
Email: astraus@milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT

Tel.:    (313) 303-3472
Fax:    (865) 522-0049
Email: nsuciu@milberg.com

Daniel K. Bryson*
J. Hunter Bryson*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC, 27603
Tel.:    (919) 600-5000
Fax:    (919)600-5035
Email: dbryson@milberg.com
Email: hbryson@milberg.com

Andrei Rado*
Zoe Aaron*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 10023
Tel.:    (212) 594-5300
Fax:    (865) 522-0049
Email: *arado@milberg.com*
Email: *zaaron@milberg.com*


*Pro Hac Vice* Applications Forthcoming

***Attorneys for Plaintiffs***

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT