1  CHRISTOPHER CHORBA, SBN 216692
    CChorba@gibsondunn.com
2  PERLETTE MICHÈLE JURA, SBN 242332
    PJura@gibsondunn.com
3  TIMOTHY W. LOOSE, SBN 241037
    TLoose@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
  333 South Grand Avenue
5  Los Angeles, CA 90071-3197
  Telephone:    213.229.7746
6  Facsimile:    213.229.6746

7  *Counsel for Defendant Nestlé Healthcare*
  *Nutrition, Inc.*

8

9  **UNITED STATES DISTRICT COURT**

10  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11  **OAKLAND DIVISION**

| | |
|---|---|
| 12    BRUCE HORTI, SANDRA GEORGE, and JEANETTE CRAIG, | Case No. 4:21-cv-09812-PJH |
| 13 | **DEFENDANT NESTLÉ HEALTHCARE** |
|               Plaintiffs, | **NUTRITION, INC.'S REPLY IN** |
| 14 | **SUPPORT OF MOTION TO DISMISS** |
|       v. | **THE SECOND AMENDED CLASS** |
| 15 | **ACTION COMPLAINT** |
|   NESTLÉ HEALTHCARE NUTRITION, INC., | |
| 16 | Date:        June 2, 2022 |
|               Defendant. | Time:        1:30 p.m. |
| 17 | Location:  Courtroom 3 – 3rd Floor |
| | Judge:     Hon. Phyllis J. Hamilton |
| 18 | |
| 19 | Date Action Filed:  February 4, 2022 |

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 2

    A. A Reasonable Consumer Would Not Believe the BOOST Drinks They Buy In Grocery Aisles Can Treat Diabetes. ...................................................................... 2

    B. Plaintiffs Lack Standing to Sue Because They Have Not Alleged a Cognizable Injury................................................................................................................... 6

        1. Plaintiffs Have Not Alleged a Concrete Injury. ........................................... 6

        2. Plaintiffs Lack Standing to Assert Claims Regarding BOOST Glucose Control Max 30g Protein Because They Never Bought It. ...................................... 9

    C. Federal Law Preempts Plaintiffs' Claims. ............................................................ 10

    D. The Complaint Does Not Satisfy the Pleading Standards of Rules 8 and 9(b). ............... 11

    E. Plaintiffs Have Not Established Breach of an Express Warranty. ................................. 12

    F. Plaintiffs Cannot Plead the Prerequisites for Seeking Equitable Relief. ........................ 13

III.  CONCLUSION ........................................................................................................ 14

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
   2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) .................................................... 2

*Arora v. GNC Holdings, Inc.*,
   2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) ................................................... 5

*Arroyo v. TP-Link USA Corp.*,
   2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ............................................... 9, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6, 11

*Becker v. Skype Inc.*,
   2014 WL 556697 (N.D. Cal. Feb. 10, 2014) ...................................................... 8

*Brazil v. Dole Food Co., Inc.*,
   2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .............................................. 10, 11

*Brown v. Madison Reed, Inc.*,
   2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ................................................... 12

*City of New York v. Smokes-Spirits.Com, Inc.*,
   911 N.E.2d 834 (N.Y. 2009) ............................................................................... 6

*Colella v. Atkins Nutritionals, Inc.*,
   348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................................................ 7

*Davidson v. Kimberly-Clark Corp.*,
   2014 WL 3919857 (N.D. Cal. Aug. 8, 2014) ................................................... 12

*Epstein v. JPMorgan Chase & Co.*,
   2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ................................................... 8

*Fernandez v. Atkins Nutritionals, Inc.*,
   2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ....................................................... 12

*Great Pac. Sec. v. Barclays Cap., Inc.*,
   743 F. App'x 780 (9th Cir. 2018) ..................................................................... 11

*Hadley v. Kellogg Sales Co.*,
   273 F. Supp. 3d 1052 (N.D. Cal. 2017) ........................................................... 13

1

2

# TABLE OF AUTHORITIES

Page(s)

3

4

*Harris v. PFI Western Stores, Inc.*,
　2020 WL 3965022 (C.D. Cal. Apr. 9, 2020) ........................................................................8

5

*Hodges v. King's Hawaiian Bakery West, Inc.*,
　2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) .............................................................. 3, 4, 5

6

7

*IntegrityMessageBoards.com v. Facebook, Inc.*,
　2021 WL 3771785 (N.D. Cal. Aug. 24, 2021) ....................................................................14

8

*Kommer v. Ford Motor Co.*,
　2017 WL 3251598 (N.D.N.Y. July 28, 2017) .......................................................................7

9

10

*Krommenhock v. Post Foods, LLC*,
　255 F. Supp. 3d 938 (N.D. Cal. 2017) ........................................................................... 4, 5

11

12

*Kwikset Corp. v. Superior Court*,
　51 Cal. 4th 310 (2011) ......................................................................................................11

13

*Lavie v. Procter & Gamble Co.*,
　105 Cal. App. 4th 496 (2003) ........................................................................................ 2, 6

14

15

*Lepkowski v. CamelBak Prods., LLC*,
　2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) ....................................................................8

16

17

*Lozano v. Bowmar Nutrition LLC*,
　2021 WL 4459660 (C.D. Cal. Aug. 19, 2021) ..................................................................10

18

*In re MacBook Keyboard Litig.*,
　2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ...................................................................13

19

20

*Meyer v. Sprint Spectrum L.P.*,
　45 Cal. 4th 634 (2009) ........................................................................................................6

21

22

*Moore v. Mars Petcare US, Inc.*,
　966 F.3d 1007 (9th Cir. 2020) ............................................................................................4

23

*Moore v. Trader Joe's Co.*,
　4 F.4th 874 (9th Cir. 2021) ......................................................................................... 2, 3, 5

24

25

*Moreno v. Vi-Jon, LLC.*,
　2021 WL 5771229 (S.D. Cal. Dec. 6, 2021) .................................................................. 3, 5

26

27

*Nacarino v. Chobani, LLC*,
　2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ....................................................................13

28

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES

Page(s)

2

3
*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ........................................................................7

4

5
*Perez v. Nidek Co.*,
711 F.3d 1109 (9th Cir. 2013) .......................................................................... 10

6
*Prescott v. Nestlé USA, Inc.*,
2022 WL 1062050 (N.D. Cal. Apr. 8, 2022) .............................................. 3, 14

7

8
*Red v. Kraft Foods, Inc.*,
2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...................................................4

9

10
*Savoy v. Collectors Universe, Inc.*,
2020 WL 4938464 (C.D. Cal. July 21, 2020) .......................................... 7, 8, 9

11

12
*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..................................................................... 13, 14

13
*Stoltz v. Fage Dairy Processing Indus., S.A.*,
2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ..................................................5

14

15
*Tabler v. Panera LLC*,
2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ................................................. 12

16
*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .................................................................................... 12

17

18
*Tosh-Surryhne v. Abbott Laboratories, Inc.*,
2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ..................................................8

19

20
*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ......................................................................................6

21

22
*Troyk v. Farmers Grp., Inc.*,
171 Cal. App. 4th 1305 ......................................................................................6

23
*Weiss v. Trader Joe's*,
838 F. App'x 302 (9th Cir. 2021) ................................................................. 3, 4

24

25
*Williamson v. Apple, Inc.*,
2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ....................................................4

26
**Regulations**

27
21 C.F.R. § 101.14(a)(1) ........................................................................... 10, 11

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As Plaintiffs concede, their complaint boils down to one allegation:   that "reasonable consumers" would believe Nestlé's BOOST Glucose Control nutritional drinks can "prevent, manage, or treat diabetes."  (Opp. at 1–3, 21.)  Not only does this contention lack any factual support, it also misstates what Nestlé actually said about its BOOST drinks.  The drinks at issue—BOOST Glucose Control, BOOST Glucose Control High Protein, and BOOST Glucose Control Max 30g Protein—are accurately advertised as nutritional drinks containing protein, essential vitamins, and minerals, with less sugar than standard nutritional beverages.  Because of their nutritional composition, the BOOST drinks "produce a lower blood sugar response vs. a standard nutritional drink."  (SAC ¶ 48.)  That characteristic makes them a better choice for people who monitor their blood sugar levels, including people with serious illnesses such as diabetes.  Even Plaintiffs acknowledge that this kind of "healthy eating . . . help[s] manage your blood sugar."  (*Id*. ¶ 21.)

Nestlé has never touted these drinks as a substitute for insulin.  Plaintiffs came up with that idea on their own.  But that inference is illogical, because no reasonable consumer would believe that a nutritional drink sold in grocery aisles can treat diabetes or act as a substitute for doctor-prescribed medication.  Plaintiffs cannot hold Nestlé responsible for something it did not say.  Because Plaintiffs' legal arguments in their opposition cannot overcome these fundamental flaws, the entire complaint should be dismissed.

To avoid dismissal, Plaintiffs ask this Court to view the BOOST nutritional drink labels from the perspective of a hypothetical consumer who suspends her common sense and ignores parts of the labels that do not support their claims.  Similarly, Plaintiffs disregard their obligation to plead an injury-in-fact sufficient to support standing, and their obligation to plead reliance with particularity under Rule 9(b).  And to try to avoid federal preemption of their claims, Plaintiffs ask this Court to adopt an interpretation of FDA regulations that defies both the plain text and common sense. Finally, Plaintiffs ignore binding Ninth Circuit law foreclosing their duplicative claims for breach of express warranty and equitable relief.  This Court should apply the correct legal standards and precedents, reject each of Plaintiffs' arguments, and dismiss the complaint in its entirety.

## II.   ARGUMENT

### A.   A Reasonable Consumer Would Not Believe BOOST Drinks Available in Grocery Aisles Can Treat Diabetes.

Plaintiffs agree that their complaint hinges on the notion that consumers would believe consuming BOOST drinks can "prevent, manage, or treat diabetes." (Opp. at 21.)[1]  Because this fundamentally implausible theory cannot satisfy the "reasonable consumer" test applicable to all of Plaintiffs' claims, the complaint should be dismissed.

Each of Plaintiffs' statutory and equitable claims requires proving that a "reasonable consumer" would be deceived by the product labels. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2018 WL 11354864, at *4–5, 8 (C.D. Cal. Jan. 24, 2018).  To satisfy the reasonable consumer standard, Plaintiffs "must demonstrate 'more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Moore*, 4 F.4th at 882.  Instead, they must plead facts demonstrating that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*  In determining how a reasonable consumer would view a label, courts must "take into account all the information available to consumers and the context in which that information is provided," *id.*, and should not look to how the "least sophisticated consumer" would view the statements, *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003); (Opp. at 8).

No reasonable consumer would believe the BOOST drinks available in grocery aisles can treat diabetes or act as a substitute for insulin.  (*See* Mot. at 4–7.)  Reasonable consumers, particularly reasonable consumers who monitor their blood sugar, understand that all food inevitably impacts blood sugar levels and that a nutritional shake containing clearly disclosed amounts of sugar and calories is no exception to this fundamental biological rule.  (*See* Request for Judicial Notice ("RJN") Ex. B at 1 ("Most of the food you eat is broken down into sugar (also called glucose) and released into your

---

[1]   Plaintiffs say they did not "allege . . . that the Products are advertised to 'cure' diabetes." (Opp. at 9; *see also id.* at 2, 21.)  But they claimed in their complaint that reasonable consumers would believe the BOOST drinks "treat, *cure*, or prevent diabetes." (SAC ¶ 142 (emphasis added).)  If Plaintiffs have now abandoned their "cure" argument, their complaint should still be dismissed because it is equally implausible that consumers would believe the BOOST drinks "prevent" or "treat" diabetes.

Gibson, Dunn &
Crutcher LLP

bloodstream.").)[2]  Reasonable consumers also understand that revolutionary new diabetes treatments don't appear one day out of the blue in the nutritional drinks section of a grocery aisle.  *See Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[A] reasonable consumer does not check her common sense at the door of the store.").

Plaintiffs' lead argument is that this Court cannot decide that their theory of deception is implausible at the pleadings stage.  (Opp. at 5–6.)  But after *Iqbal* and *Twombly*, that's exactly what a motion to dismiss is for.  And courts regularly decide on the pleadings that a reasonable consumer would not be deceived by a product label:

- In *Moore*, 4 F.4th 874, the plaintiffs sued Trader Joe's for selling inexpensive honey jars labeled "100% New Zealand Manuka Honey," on the theory that only about 60% of the honey derived from Manuka flower nectar.  *Id.* at 881.  The Ninth Circuit affirmed the dismissal of these consumer-deception claims because no reasonable person could possibly believe the plaintiffs' theory—that for $13.99 (or, for that matter, *any* price), Trader Joe's could sell honey made by bees who visited only one kind of flower.  *Id.* at 881–85.

- In *Hodges v. King's Hawaiian Bakery West, Inc.*, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) (cited at Opp. at 11, 19), this Court held, at the motion to dismiss stage, that a maker of "Hawaiian Sweet Rolls" did not deceive consumers by making the rolls in California.  *Id.* at *5–7.

- In *Prescott v. Nestlé USA, Inc.*, 2022 WL 1062050 (N.D. Cal. Apr. 8, 2022), the court determined on the pleadings that "Nestlé Toll House Premier White Morsels" did not deceive consumers into thinking the products contain white chocolate.  *Id.* at *3–6.

- In *Moreno v. Vi-Jon, LLC.*, 2021 WL 5771229 (S.D. Cal. Dec. 6, 2021), the court determined at the motion to dismiss stage that a hand sanitizer claiming to eliminate "99.99% of many common harmful germs" did not deceive consumers into believing it would kill 99.99% of *all* germs.  *Id.* at *1, 6–8; *see also id.* at *6 (collecting other cases in the Ninth Circuit dismissing deception claims).

---

[2]  Nestlé addresses this Court's ability to consider the contents of both of its exhibits in the concurrently filed reply in support of its request for judicial notice.

Gibson, Dunn &
Crutcher LLP

After arguing that the reasonable consumer test doesn't apply at the pleadings stage at all, Plaintiffs offer a trio of arguments to make it seem less stringent than it really is. *First*, they say that a reasonable consumer would not be aware of the basic fact that consuming any food or beverage with calories inevitably impacts blood sugar levels. (*See* Opp. at 8.) But courts don't assume consumers were born yesterday; the simple biological rule that eating and drinking food will affect blood sugar is "a well-known fact of life" that this court may infer is "known to the ordinary, reasonable consumer." *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *6 (N.D. Cal. Sept. 4, 2012); *Weiss*, 838 F. App'x at 303 (courts infer reasonable consumers bring their "common sense" to bear). For example, in *Red v. Kraft Foods, Inc.*, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), the court reasoned that consumers wouldn't believe crackers were "composed of primarily fresh vegetables" because a reasonable consumer does not view a "statement on a package and . . . then disregard 'well-known facts of life' and assume things about the products *other than* what the statement actually says." *Id.* at *3 (emphasis in original). The same is true here: consumers (and particularly consumers who monitor their blood sugar levels and would be interested in on-label representations relating to glucose) do not disregard their common sense about how the body works when they see BOOST Glucose Control nutritional drink labels. As Plaintiffs acknowledge, "'the standard is not a least sophisticated consumer,' but a reasonable one." (Opp. at 8.) Moreover, it is difficult to imagine that a reasonable consumer would rely on the challenged glucose-related representations without having any idea as to how glucose works. Plaintiffs allege that reasonable consumers would know diabetes is "a dysfunction of the body's ability to control blood sugar/glucose levels" (*id.* at 9), which implies that reasonable consumers have some baseline understanding of how the body normally regulates blood sugar.

*Second*, Plaintiffs argue that a reasonable consumer can be deceived by the front of a label, even if the back dispels any confusion. (Opp. at 7–8, 10). But courts have consistently held the opposite: Information on the back of a label is relevant. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("qualifiers in packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead'"); *Hodges*, 2021 WL 5178826, at *7 ("A reasonable consumer is not free to ignore the ingredient list on a food package."). In any event, the distinction between the front and back of the label is largely irrelevant here; each of the BOOST drinks displays

the amount of sugar and other nutrition information in large text on the front of the label, too. (SAC ¶¶ 34–39.) This fact alone distinguishes this case from *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) (cited at Opp. at 7), where the court discussed the relevance of sugar disclosures on the *back* of the product labels and ultimately recognized that the analysis differs if "sugar content is also shown on the front panel." *Id.* at 964 n.32. Even if reasonable consumers would ignore the nutrition label on the back, they would not ignore information prominently displayed on the front of the label indicating that the BOOST drinks contain sugar and calories, and thus will affect blood sugar levels. *See Hodges*, 2021 WL 5178826, at *7 (a reasonable consumer cannot be "selectively blind").

*Third*, Plaintiffs argue that the context in which the BOOST drinks are sold—grocery aisles in retailers such as Costco, Walmart, CVS, and Sam's Club—does not matter for purposes of the reasonable consumer test. (Opp. at 10.) But reasonable consumers do not view products in a vacuum. Courts "take into account all the information available to consumers *and the context in which that information is provided*." *Moore*, 4 F.4th at 882 (emphasis added). For example, in *Stoltz v. Fage Dairy Processing Indus., S.A.*, the court analyzed allegedly deceptive yogurt labels from the perspective of "consumers like Plaintiffs in grocery store aisles," reasoning that "the nature and circumstances" of that context will necessarily inform how consumers will view the labels. 2015 WL 5579872, at *19 (E.D.N.Y. Sept. 22, 2015). Similarly, in *Moreno*, the court took into account the fact that a hand sanitizer was sold "over-the-counter" in assessing how much a consumer would read into the label's claims regarding effectiveness in killing germs. 2021 WL 5771229, at *5. Considering context in this way doesn't mean, as Plaintiffs would have it, that consumers categorically "[can]not be misled by food packaging based on the place of sale." (Opp. at 10.) Instead, it means that context is relevant when determining how a reasonable consumer would view labels.[3]

---

[3]   Plaintiff cites *Arora v. GNC Holdings, Inc.*, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) for the notion that context doesn't matter in determining deception. (Opp. at 10.) But that case, which analyzed claims made on a dietary supplement label, confirms that context is relevant in the reasonable consumer analysis. In distinguishing another case, the court noted that the "fact context is different" because of the differing layout and placement of disclaimers of the respective websites on which the products were sold. *Arora*, 2019 WL 6050750, at *13.

Gibson, Dunn &
Crutcher LLP

In sum, Plaintiffs ask this Court to view the BOOST drinks from the perspective of someone who abandons his common sense, gives no thought to *where* he's buying the drinks, and blinds himself to all the information on the drinks' labeling except a few words that are allegedly deceptive when seen on their own. Only this kind of hypothetical, willfully blind consumer would actually believe that a nutritional shake can prevent or treat diabetes. But the standard for deception is a reasonable consumer—not a hypothetical "least sophisticated consumer." *Lavie*, 105 Cal. App. 4th at 504; (Opp. at 8). Because that is exactly what Plaintiffs are trying to do here, this Court should dismiss Plaintiffs' claims.

**B.     Plaintiffs Lack Standing to Sue Because They Have Not Alleged an Injury in Fact.**

Plaintiffs must allege that they "suffered an injury in fact that is concrete, particularized, and actual or imminent" to establish standing under Article III. (Mot. at 7–8); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). And Plaintiffs' statutory claims also independently require actual injury. (Mot. at 7–8); *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009) (GBL); *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (UCL and FAL require the plaintiff specifically to have "lost money or property"); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009) (CLRA). Because Plaintiffs' allegations do not measure up to these standards, the Court should dismiss Plaintiffs' complaint.

**1.     Plaintiffs Have Not Alleged a Concrete Injury.**

In their opposition, Plaintiffs do not defend their theory that they were injured because they bought a product that allegedly does not comply with FDA labeling regulations regarding "disease claims" and "health claims." (*See* Mot. at 8–9; Opp. at 11–14; SAC ¶¶ 31, 42.) Nor could they, as a suit "merely seeking to ensure [the] defendant's 'compliance with regulatory law'" is insufficient to confer standing to sue under Article III. *TransUnion*, 141 S. Ct. at 2206.

Instead, Plaintiffs point to their allegation that they paid a "premium price" for the BOOST drinks that they would not have paid "had they known the [drinks] did not 'control glucose,' 'manage blood sugar,' and were not authorized by the FDA to make those claims." (Opp. at 11.) While some courts have held that allegations that plaintiffs would not have bought a product but for the defendant's advertising are sufficient to allege standing (*see* Opp. at 13–14), others have decided that such

Gibson, Dunn &
Crutcher LLP

allegations do not confer standing unless the plaintiffs have pleaded non-conclusory "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*See* Mot. at 9); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019).

Where, as here, Plaintiffs allege only that they paid some unidentified "premium price" (SAC ¶¶ 60–62), i.e., "more than they normally would have for comparable" lower-sugar nutritional drinks, their "conclusory allegations are insufficient to identify a cognizable injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). For example, in *Naimi*, the Ninth Circuit held that although the plaintiffs alleged that they paid a price premium for canned espresso, they did not allege an injury in fact because they "did not allege how much they paid for the beverage, how much they would have paid for it absent the alleged deception, . . . or any other details regarding the price premium." 798 F. App'x at 70. The same is true here, as Plaintiffs allege only that they "pa[id] the premium price" for the BOOST drinks "based upon the Products' diabetes-related representations." (SAC ¶¶ 60–62.) In short, a plaintiff cannot circumvent generally applicable pleading standards by alleging that he paid a "price premium" for a product.

There is another, independent reason why Plaintiffs suffered no injury and therefore lack standing to sue: Nestlé's refund policy provides them an adequate remedy. (Mot. at 9–10.) Nestlé offers unsatisfied customers their money back, no questions asked, through its "Great Taste Guarantee." (*See* RJN, Ex. A.) Because Nestlé offered Plaintiffs a refund for the drinks they bought, Plaintiffs have not suffered an injury and therefore lack standing—regardless of whether they took advantage of the offer. *Savoy v. Collectors Universe, Inc.*, 2020 WL 4938464, at *4–5 (C.D. Cal. July 21, 2020); *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017).

Plaintiffs argue that this refund policy is an insufficient remedy on the theory that Nestlé offered refunds only for taste, not for deceptive advertising, and that Nestlé should have offered each plaintiff a refund personally instead of posting its refund policy online. (Opp. at 13–14.) Neither of those points undermines the refund's impact on the standing analysis. And although Plaintiffs do not reference Nestlé's refund policy in the complaint, the Court can consider the webpage explaining Nestlé's refund

policy because Plaintiffs rely on other pages of Nestlé's BOOST website in the complaint.   (RJN, Ex. A.)

 *First*, that Nestlé's refund policy is labeled a "Great Taste Guarantee" does not preclude Plaintiffs from taking advantage of it just because they had a different complaint about BOOST Glucose Control drinks.  The only proof consumers have to submit to take advantage of Nestlé's refund policy is a receipt showing their purchase.  (RJN, Ex. A.)  Nestlé invites—but does not require—consumers to tell Nestlé "what [they] didn't like about the flavor [they] tried" (*id.* at 2), which would include any complaints by Plaintiffs that they were concerned about the drinks' labeling.

 *Second*, there is no support for Plaintiffs' argument that a refund policy is an inadequate remedy unless a defendant somehow knew to reach out to each disgruntled consumer individually.  (*See* Opp. at 13–14.)  The cases Plaintiffs themselves cite support Nestlé's argument that its refund policy serves as an adequate remedy.  For example, in *Tosh-Surryhne v. Abbott Laboratories, Inc.*, 2011 WL 4500880, at *4 (E.D. Cal. Sept. 27, 2011), the court held that the plaintiff's claims for monetary damages were moot where the defendant had announced a recall and offered a full refund for the recalled product to consumers who "could prove they had purchased" it by "submitt[ing] recall forms on defendant's website or through defendant's hotline."  The court never suggested that the defendant had to reach out to the plaintiff personally to offer a refund.  *See id.*  Here, similarly, Nestlé offered a money-back guarantee to any consumer who could prove he or she purchased the BOOST Glucose Control drinks and who filed a refund form with Nestlé, and for any reason.  (RJN, Ex. A.)

 The other cases plaintiffs cite don't help them.  In *Harris v. PFI Western Stores, Inc.*, 2020 WL 3965022 (C.D. Cal. Apr. 9, 2020), for example, the court was concerned with the timing of the defendant's refund, not whether it offered a refund to plaintiff personally.  *Id.* at 3.  And in the other three cases, the plaintiffs actually received refunds before filing suit against the defendants.  *See Lepkowski v. CamelBak Prods., LLC*, 2019 WL 6771785, at *2–3 (N.D. Cal. Dec. 12, 2019); *Becker v. Skype Inc.*, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014); *Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014).  None of those cases are inconsistent with Nestlé's argument.  As the court held in *Savoy*, "it is well established that if a plaintiff utilizes and is granted a refund pursuant to a satisfaction guarantee clause, then that plaintiff has suffered no injury and hence

has no standing." 2020 WL 4938464, at *5. And "[i]t follows, then, that if a plaintiff has failed to take advantage of a satisfaction guarantee to redress his injury, the plaintiff cannot clearly and sufficiently allege injury." *Id*. Here, Plaintiffs could have taken advantage of Nestlé's refund policy before filing suit. Thus, regardless of whether any of the Plaintiffs actually took advantage of Nestlé's refund policy, they lack standing to sue Nestlé.

*Third*, rather than offer any authority to suggest that Nestlé's refund policy is inadequate to establish a remedy, Plaintiffs argue that it goes beyond the pleadings because Plaintiffs do not specifically reference Nestlé's refund policy in their complaint. (Opp. at 13–14.) But, as explained in Nestlé's request for judicial notice and concurrently filed reply in support of its request for judicial notice, the Court can consider Nestlé's refund policy from its website because Plaintiffs relied on Nestlé's website extensively in their complaint. (Dkt. 15-1 at 1–2.)

### 2. Plaintiffs Lack Standing to Assert Claims Regarding BOOST Glucose Control Max 30g Protein Because They Never Bought It.

Plaintiffs do not dispute that they never bought BOOST Glucose Control Max 30g Protein drinks (Opp. at 15), or that courts in this District "generally consider non-purchased products unable to satisfy the standing requirements for claims under California statutes," *Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *4 (N.D. Cal. Sept. 29, 2015). Nonetheless, Plaintiffs argue that they should be able to represent a class of consumers who purchased BOOST Glucose Control Max 30g Protein nutritional drinks because it is supposedly "substantially similar" to the other two BOOST Glucose Control drinks Plaintiffs allege that they did buy. (Opp. at 15; *see* SAC ¶¶ 60–62.)

Plaintiffs argue that the BOOST Glucose Control Max 30g Protein nutritional drink is "substantially similar" to the other two drinks because it has a similar name and its labeling says that it "'helps manage blood sugar.'" (Opp. at 15 (quoting SAC ¶ 36).) But Plaintiffs also specifically allege that the BOOST Glucose Control Max 30g Protein drink is *different* from the other BOOST drinks they purchased because its labeling does *not* state that it is "designed for people with Diabetes" like the other drinks (*see* SAC ¶ 37 ("Products [except MAX] have represented that they are 'designed for people with Diabetes." (brackets in original))), and that each BOOST drink contains *different* ingredients (*id.* ¶ 3 (alleging different levels of protein for each BOOST drink)). Where, as here,

1    Plaintiffs make only a conclusory assertion that products they didn't buy are similar to the products

2    they did buy, rather than "delving into the substantial similarity of each model," Plaintiffs' allegations

3    are "not enough to give standing for products the Plaintiff[s] did not purchase." *Arroyo*, 2015 WL

4    5698752, at *4.

5            Perhaps recognizing these deficiencies, Plaintiffs ask the Court to kick this question until class

6    certification. (Opp. at 15.) But "courts 'should address standing prior to class certification.'" *Lozano*

7    *v. Bowmar Nutrition LLC*, 2021 WL 4459660, at *3 (C.D. Cal. Aug. 19, 2021). And there is no need

8    to defer deciding this question until class certification. In *Lozano*, for example, the court held that

9    plaintiff lacked standing to sue over protein-fortified foods she never bought and dismissed those

10   claims at the pleadings stage. *Id*. The court concluded that even if the plaintiff had "standing to

11   predicate her claims on substantially similar unpurchased products," she had not pleaded "facts

12   indicating the unpurchased products are substantially similar" to the ones she had bought. *Id*. Here,

13   too, it is clear from the face of the complaint that Plaintiffs did not buy the BOOST Glucose Control

14   Max 30g Protein drink, and that it is not "substantially similar" to the other BOOST drinks. The Court

15   should therefore dismiss Plaintiffs' claims based on BOOST Glucose Control Max 30g Protein drinks.

16   **C.     Federal Law Preempts Plaintiffs' Claims.**

17           Courts "have routinely found express preemption in the food-misbranding context when a

18   plaintiff has attempted to sue over conduct that does not violate the FDCA or its accompanying

19   regulations." *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *10 (N.D. Cal. Sept. 23, 2013); *see*

20   *also Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (there is a "'narrow gap' through which

21   a state-law claim must fit to escape preemption by the FDCA"). Thus, if the BOOST drink labels do

22   "not violate the FDCA or its accompanying regulations," then Plaintiffs' state-law claims are all

23   preempted. *Brazil*, 2013 WL 5312418, at *10. Notwithstanding their recitation of broad principles

24   relating to preemption, Plaintiffs do not dispute this basic test. (*See* Opp. at 17–18.)

25           Plaintiffs' only argument for avoiding preemption is that the BOOST drink labels make "health

26   claims" in violation of 21 C.F.R. § 101.14(a)(1). (*See* Opp. at 16–17.)[4] But that argument rests on a

27   ────────────────

28   [4]   While Plaintiffs' complaint suggested that the BOOST drink labels make "disease claims" in
     violation of 21 C.F.R. 101.93(g)(2) (*see* SAC ¶¶ 42, 153), Plaintiffs now concede that they "do not
     seek to allege violations outside of 21 C.F.R. § 101.14(a)(1)" (Opp. at 17).

misreading of the regulation, which applies only to claims that "a relationship exists between *the presence or level of a substance in the food* and a disease or health-related condition." 21 C.F.R. § 101.14(a)(1) (emphasis added); (*see* Mot. at 12–13). As Plaintiffs note, a typical example of a health claim falling within the scope of this regulation is: "HEART HEALTHY/Whole grains can help support a healthy lifestyle." (Opp. at 16.) This claim identifies the presence or level of a substance (whole grains) in a food (cereal) and its relationship to a health-related condition (assists with heart health).

By contrast, the BOOST drink labels identify no particular "substance in the" drinks, the "presence or level" of which has an effect on health. Plaintiffs appear to suggest that the drinks "as a whole" can count as a "substance" in them. (*See* Opp. at 16–17.) But interpreting the entirety of the drink to be a "substance in" the drink is nonsensical. The fact that section 101.14(a)(1) uses the phrase "substance *in* the food" indicates that the "substance" must be a component of the food, not the entirety of it. Moreover, even if the entirety of the drink could somehow constitute a "substance in the [drink]" for purposes of section 101.14(a)(1), Plaintiffs do not point to any language on the labels discussing "the presence or level of" the substance. Nor could they—bottles of Boost Glucose Control nutritional drink don't tout how much "Boost Glucose Control" they contain.

Accordingly, because the BOOST drink labels do not make any "health claims" that would violate 21 C.F.R. 101.14(a)(1) or any other provisions of the FDCA and its implementing regulations, Plaintiffs' state-law claims are all preempted. *Brazil*, 2013 WL 5312418, at *10.

## D. The Complaint Does Not Satisfy the Pleading Standards of Rules 8 and 9(b).

Because Plaintiffs have not adequately pleaded deception under the reasonable consumer standard, Plaintiffs' complaint does not state a "plausible claim for relief" for any of their claims. *Iqbal*, 556 U.S. at 679. Nor have Plaintiffs adequately pleaded "actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011).

Perhaps recognizing this deficiency, Plaintiffs misconstrue the pleading standard for reliance. They assert (without citation) that they "do not have to allege reliance with any particularity." (Opp. at 18.) That is wrong. Plaintiffs must "plead reliance with particularity"—that is, they must "plead

with particularity the 'who, what, when, where, and how' of [their] reliance." *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782–83 (9th Cir. 2018). Plaintiffs have failed to do that here. While they identify a number of statements they allege to be deceptive (*see* SAC ¶¶ 1–59), they never identify *which* of these statements they actually saw or relied upon or how those statements caused them to buy the BOOST drinks.[5] Instead, all the complaint provides is the same cut-and-pasted, conclusory allegation that each Plaintiff "relied on Nestle'[s] diabetes-related factual representations on the Products' label[s]." (SAC ¶¶ 60–62.) Plaintiffs never specify *what* representations they refer to or how they relied on those representations—and therefore fall short of pleading reliance with particularity.

Plaintiffs next argue that they shouldn't be required to plead individualized reliance in light of *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). But courts have repeatedly recognized that *In re Tobacco II* establishes a "narrow" exception to the reliance requirement stemming from the unique nature of the tobacco industry's "extensive and long-term advertising campaign." *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *11 (N.D. Cal. Aug. 30, 2021); *Tabler v. Panera LLC*, 2019 WL 5579529, at *13 (N.D. Cal. Oct. 29, 2019). Plaintiffs do not allege that they purchased the BOOST drinks due to a decades-long advertising campaign like the one at issue in *In re Tobacco II*, so that narrow exception does not apply. *See Davidson v. Kimberly-Clark Corp.*, 2014 WL 3919857, at *12 (N.D. Cal. Aug. 8, 2014) ("the holding in [*In re Tobacco*] *II* is inapposite" to an ordinary deceptive advertising claim). Because Plaintiffs have failed to plead reliance with particularity or cited any applicable authority suggesting they need not do so, their complaint does not satisfy the applicable pleading standards.

**E.      Plaintiffs Have Not Established Breach of an Express Warranty.**

Plaintiffs agree that their express-warranty claim rises and falls with their central claim that they reasonably relied on the BOOST drinks' labeling to mean that these drinks "prevent diabetes or

---

[5]      This fact alone serves to distinguish this case from *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) (cited at Opp. at 18–19). There, the court determined that Rule 9(b) did not require the plaintiff to specify the date on which he purchased allegedly deceptively labeled products. *Id.* at *12. But the court noted that the plaintiff had pleaded "how [the deceptive statements] affected" him and thus reasoned that the purposes of Rule 9(b) had been fulfilled. *Id.* Unlike the plaintiff in *Fernandez*, however, Plaintiffs here have not alleged which statements they saw or how those statements affected them.

mitigate[] the negative effects of diabetes." (Opp. at 21; SAC ¶ 33.)  In other words, if the Court agrees with Nestlé that Plaintiffs' conclusory assertions about their reliance are inadequate under Rule 9(b) (Section II.D, *supra*), or that no reasonable consumer would believe a nutritional drink sold in grocery stores could serve as a substitute for medication to prevent or treat diabetes (Section II.A, *supra*), the Court should dismiss Plaintiffs' express-warranty claim because "reasonable reliance" upon the "exact terms of the warranty" is an element of Plaintiffs' claim, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1092 (N.D. Cal. 2017).

## F.      Plaintiffs Cannot Plead the Prerequisites for Seeking Equitable Relief.

Finally, the Court should dismiss Plaintiffs' equitable claims for restitution and injunctive relief because Plaintiffs have an adequate remedy at law.  If "the availability of an adequate legal remedy is clear from the face of the [complaint]," then "further amendment . . . would be futile." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020).

Plaintiffs argue (while ignoring all authority cited in Nestlé's motion) that they can seek restitution *and* monetary damages for the same alleged misconduct because "the availability of restitution is cumulative" of other remedies under the UCL and CLRA.  (Opp. at 21.)  But the Ninth Circuit has rejected this precise argument, along with Plaintiffs' cited authority.  (*Id.* at 21–22.)  In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Court held that although "a State may authorize its courts to give equitable relief unhampered by the restriction that an adequate remedy at law be unavailable," it "cannot remove that fetter from the federal courts." *Id.* at 843–44 (cleaned up).  Accordingly, "traditional principles governing equitable remedies in federal court"—i.e., that a party may seek equitable relief only if it lacks an adequate remedy at law—"apply when a party requests restitution under the UCL and CLRA." *Id.* at 844; *see also Nacarino v. Chobani, LLC*, 2021 WL 3487117, *12–13 (N.D. Cal. Aug. 9, 2021) (dismissing plaintiff's restitution claim that was "rooted in the same allegations" as plaintiff's claims for monetary damages).

As for injunctive relief, Plaintiffs argue that they lack an adequate remedy at law because they stand to suffer future harm if Nestlé "continues to disseminate misleading information on the Products' packaging."  (Opp. at 22 (quoting SAC ¶ 85).)  But Plaintiffs have not adequately alleged that they suffered *any* harm (*see* Section II.B.1, *supra*), and thus have not adequately alleged they are at risk of

suffering any future harm.  And even if Plaintiffs had alleged past cognizable harm, their allegation that they could be harmed in the future by Nestlé continuing to "disseminate misleading information" is insufficient, as Plaintiffs have not explained why monetary relief would be an inadequate remedy. *Sonner*, 971 F.3d at 844 (dismissing equitable claim where "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy"); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2021 WL 3771785, at *20–21 (N.D. Cal. Aug. 24, 2021).  Nor do Plaintiffs allege that they wish to purchase the BOOST drinks again in the future.  *See Prescott*, 2022 WL 1062050, at *6 (dismissing claim for injunctive relief because plaintiffs "did not allege facts showing they would be misled by Nestlé's labeling and advertising in the future").

## III.   CONCLUSION

Nestlé respectfully requests that the Court dismiss the second amended complaint in its entirety.

DATED: May 4, 2022


By: */s/ Timothy Loose*
CHRISTOPHER CHORBA, SBN 216692
PERLETTE MICHÈLE JURA, SBN 242332
TIMOTHY W. LOOSE, SBN 241037
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7746
Facsimile:     213.229.6746
CChorba@gibsondunn.com
PJura@gibsondunn.com
TLoose@gibsondunn.com

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*

Gibson, Dunn &
Crutcher LLP