1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7   BRUCE HORTI, et al.,

8             Plaintiffs,

9        v.

10   NESTLÉ HEALTHCARE NUTRITION,
     INC.,

11

12             Defendant.

13

Case No.  21-cv-09812-PJH

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

Re: Dkt. No. 15

14        Defendant's motion to dismiss plaintiffs' second amended complaint ("SAC") came

15   on for hearing before this court on June 9, 2022.  Plaintiffs appeared through their

16   counsel, Nick Suciu, III, and J. Hunter Bryson.  Defendant appeared through its counsel,

17   Timothy W. Loose.  Having read the papers filed by the parties and carefully considered

18   their arguments and the relevant legal authority, and good cause appearing, the court

19   hereby GRANTS defendant's motion, for the following reasons.

20                                      **BACKGROUND**

21        This is a putative consumer class action regarding advertising of nutritional drinks.

22   Plaintiff Bruce Horti is a resident of Concord, California.  SAC ¶ 8.  Plaintiff Sandra

23   George is a resident of Adelanto, California.  SAC ¶ 9.  Plaintiff Jeanette Craig is a

24   resident of Kingston, New York.  SAC ¶ 10.  Defendant Nestlé HealthCare Nutrition, Inc.

25   ("Nestlé") is a Delaware Corporation with a headquarters in Bridgewater, New Jersey.

26   SAC ¶ 11.

27   //

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.     The Products**

Defendant makes several health drinks, including Boost Glucose Control, Boost Glucose Control High Protein, and Boost Glucose Control Max ("Boost Max").  SAC ¶ 1. Plaintiffs allege that the representations on the labels of each of these products mislead and "trick" reasonable consumers into believing that the products can prevent and treat diabetes.  SAC ¶ 4.  In particular, plaintiffs allege the following representations are misleading: (a) "Designed for people with diabetes"; (b) the name of the Products: "BOOST Glucose Control"; and (c) "Helps manage blood sugar."  SAC ¶ 33.  Boost Max does not include the representation (a) "Designed for people with diabetes."  Id.

Plaintiffs allege they bought Boost Glucose Control drinks in retail stores.  SAC ¶¶ 60-62.  Each plaintiff paid an unidentified "premium price" for the drink that was "more expensive than other [unidentified] choices."  SAC ¶¶ 60-62.  And each plaintiff chose to purchase the drinks "based upon the Products' diabetes-related representations."  SAC ¶¶ 60-62.  Plaintiffs do not allege that they consumed the products, they do not describe if anything happened to them after they consumed the products, and they do not allege that they are diabetic.

Much of plaintiffs' complaint is dedicated to a general discussion of diabetes and other background information.  SAC ¶¶ 15-59.  As part of this discussion, plaintiffs concede that there is no known cure for diabetes, and that it is a condition that is managed both through "healthy eating" and taking "insulin or other medicines."  SAC ¶ 21 (citing Request for Judicial Notice ("RJN") Ex. B).

**B.     Procedural Posture**

Plaintiffs initiated this lawsuit by complaint filed December 20, 2021.  Dkt. 1.  They filed the first amended complaint the same day.  Dkt. 2.  Pursuant to stipulation, plaintiffs filed the now-operative second amended complaint with the corrected entity name for defendant on February 4, 2022.  Dkt. 9 & 11.

Plaintiffs assert the following claims against Nestlé: Count I: violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); Count II:

2

1    violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL");

2    Count III: California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.

3    ("CLRA"); Counts IV and V: New York General Business Law §§ 349 and 350 (together,

4    "GBL"); Count VI: breach of express warranty; and Count VII: unjust enrichment.  SAC

5    ¶¶ 74-165.  Plaintiffs seek to represent separate California and New York subclasses of

6    "All persons in the [respective states] who purchased the [Boost drinks] for personal use

7    and not for resale."  SAC ¶ 64.

8         Nestlé now asks the court to dismiss the SAC in its entirety for failure to state a

9    claim and for lack of standing.  Dkt. 15.  In support of the motion to dismiss, defendant

10    requests that the court take judicial notice of certain materials.  Dkt. 15-1.

**REQUEST FOR JUDICIAL NOTICE**

12         Federal Rule of Evidence 201 permits a court to notice a fact if it is "not subject to

13    reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if

14    it is "generally known," or "can be accurately and readily determined from sources whose

15    accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  Under the

16    incorporation by reference doctrine, the court has discretion to consider on a motion to

17    dismiss "documents whose contents are alleged in a complaint and whose authenticity no

18    party questions, but which are not physically attached to the [plaintiff's] pleading."  Davis

19    v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012); see also United

20    States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached

21    to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers

22    extensively to the document or the document forms the basis of the plaintiff's claim.").

23         Here, defendant requests that the court take notice of Exhibit A, a reproduction of

24    its webpages related to refunds for customers dissatisfied with the taste of Boost

25    products.  Dkt. 15-3.  Though defendant contends that plaintiffs' complaint relies heavily

26    on the Boost website, a review of the SAC in totality reveals that it relies little on the

27    Boost website itself and rather on images from other websites or retailers.  Plaintiffs have

28    not referenced the Boost website so much that it may be considered in its entirety, and

United States District Court
Northern District of California

1    defendant's request is DENIED on this basis.

2          Further, defendant's reference to the refund page of the Boost website is DENIED

3    as moot.  Defendant contends that consumer plaintiffs lack standing where a full refund

4    was made available to them prior to suit—the remedy of a refund moots plaintiff's injury-

5    in-fact.  Savoy v. Collectors Universe, Inc., 2020 WL 4938464, at *4 (C.D. Cal. July 21,

6    2020).  The Savoy case is much narrower than this general proposition, where a

7    plaintiff's claim for false advertising of a customer satisfaction guarantee was deemed

8    moot because he never attempted to utilize the refund policy prior to filing suit.  Id. at *4.

9    But the court need not reach this argument regarding plaintiffs' standing (and thus

10   whether to consider this exhibit) because the SAC fails on other grounds, discussed

11   below.

12         In contrast, defendant's Exhibit B is a copy of the same informational webpage

13   titled, "What is Diabetes?" on the CDC website that plaintiffs cite to describe diabetes in

14   the SAC.  SAC ¶¶ 18-21 n.1-4 (Dkt. 11 at 5-6).  Plaintiffs' objection to the court's

15   consideration of this material because it merely provides background on diabetes is

16   nonsensical.  Defendant cites to the material for the same purpose as plaintiffs cite to the

17   material in their pleading, and such background information aids in assessing the

18   "reasonable consumer" standard, an element essential to plaintiffs' claims.  The court

19   therefore GRANTS defendant's request to take notice of Exhibit B.  Dkt. 15-4.

                                    **DISCUSSION**

20

21   **A.    Legal Standards**

22         **1.    Rule 12(b)(6) – Failure to State a Claim**

23         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

24   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,

25   1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

26   a complaint include a "short and plain statement of the claim showing that the pleader is

27   entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule

28   12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

United States District Court
Northern District of California

1   facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th

2   Cir. 2013).

3        While the court is to accept as true all the factual allegations in the complaint,

4   legally conclusory statements, not supported by actual factual allegations, need not be

5   accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer

6   sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

7   Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

8        "A claim has facial plausibility when the plaintiff pleads factual content that allows

9   the court to draw the reasonable inference that the defendant is liable for the misconduct

10  alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

11  permit the court to infer more than the mere possibility of misconduct, the complaint has

12  alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  Id. at 679.  Where

13  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

14  cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

15  2005).

16       Because plaintiffs' claims sound in fraud, their complaint must also meet the

17  heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v.

18  Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging

19  fraud or mistake to state with particularity the circumstances constituting fraud or mistake.

20  To satisfy this standard, the "complaint must identify the who, what, when, where, and

21  how of the misconduct charged, as well as what is false or misleading about the

22  purportedly fraudulent statement, and why it is false."  Salameh v. Tarsadia Hotel, 726

23  F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

24       Review is generally limited to the contents of the complaint, although the court can

25  also consider a document on which the complaint relies if the document is central to the

26  claims asserted in the complaint, and no party questions the authenticity of the

27  document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may

28  consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393

1  F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th

2  Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach

3  Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and

4  documents referenced extensively in the complaint and documents that form the basis of

5  a the plaintiffs' claims.  See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am.

6  W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

7      If dismissal is warranted, it is generally without prejudice, unless it is clear that the

8  complaint cannot be saved by any amendment.  Sparling, 411 F.3d at 1013.  "Leave to

9  amend may also be denied for repeated failure to cure deficiencies by previous

10  amendment."  Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

11      **2.    Rule 12(b)(1) – Lack of Article III Standing**

12      The court has an ongoing obligation to ensure that it has subject matter jurisdiction

13  such that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the

14  court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Federal courts are limited by the

15  Constitution and Congress to only adjudicate cases involving diversity of citizenship or a

16  federal question, or those to which the United States is a party.  Mims v. Arrow Fin.

17  Servs., LLC, 565 U.S. 368, 376-77 (2012); see also Chen-Cheng Wang ex rel. United

18  States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992) ("Federal courts have no

19  power to consider claims for which they lack subject matter jurisdiction.").  Rule 12(b)(1)

20  of the Federal Rules of Civil Procedure also allows a defendant to raise the defense of

21  lack of subject matter jurisdiction by motion.  The plaintiff bears the burden of establishing

22  subject matter jurisdiction.  Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994).

23      A challenge to subject matter jurisdiction may be facial or factual.  Safe Air for

24  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the

25  court determines whether the allegations contained in the complaint are sufficient on their

26  face to invoke federal jurisdiction, accepting all material allegations in the complaint as

27  true and construing them in favor of the party asserting jurisdiction.  Id. at 1039; Warth v.

28  Seldin, 422 U.S. 490, 501 (1975).  Where the attack is factual, however, "the court need

not presume the truthfulness of the plaintiff's allegations," and may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  Safe Air for Everyone, 373 F.3d at 1039.  Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989); see also Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**B.    Analysis**

    **1.    Whether Plaintiffs' Claims are Preempted by Federal Law**

    "Express preemption exists when a statute explicitly addresses preemption."  Reid v. Johnson & Johnson, 780 F.3d 952, 959 (9th Cir. 2015).  Conflict preemption occurs when it would be "impossible for a private party to comply with both state and federal requirements," English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

    Defendant argues that all of plaintiffs' product labeling claims are preempted by the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA").  "The [FDCA] . . . forbids the misbranding of food, including by means of false or misleading labeling."  POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 106 (2014) (citing §§ 301, 403, 52 Stat. 1042, 1047, as amended, 21 U.S.C. §§ 331, 343). The NLEA provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food . . . that is not identical to" federal requirements contained in the relevant sections.  21 U.S.C. § 343-1.  "Not identical to" "means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container,

1   that: (i) Are not imposed by or contained in the applicable provision . . . or (ii) Differ from

2   those specifically imposed by or contained in the applicable provision. . . ." 21 C.F.R. §

3   100.1(c)(4).  Therefore, state labeling obligations that are "not identical to" those imposed

4   by federal law are expressly preempted.

5         California expressly incorporates the provisions of the FDCA (as amended by

6   NLEA) in the state's Sherman Law.  See Cal. Health & Safety Code § 110100.  State

7   laws are not preempted if they "are equal to, or substantially identical to, requirements

8   imposed by or under" federal law.  21 C.F.R. § 808.1(d)(2).  Accordingly, the NLEA "has

9   been repeatedly interpreted not to preempt requirements imposed by state law that

10   effectively parallel or mirror the relevant sections of the NLEA."  Lanovaz v. Twinings N.

11   Am., Inc., No. C-12-02646-RMW, 2013 WL 675929, at *3 (N.D. Cal. Feb. 25, 2013)

12   (collecting cases); Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 573 (N.D. Cal. 2013)

13   ("Courts in this district have repeatedly refused to find preemption 'where a requirement

14   imposed by state law effectively parallels or mirrors the relevant sections of the FDCA.'")

15   (citations and internal punctuation omitted).

16         Defendant contests as preempted plaintiffs' argument that the labels make "health

17   claims" that needed to be "preauthorized by the FDA."  SAC ¶¶ 29, 45.  Plaintiffs aver

18   that their claims are not preempted because the Boost product labels at issue amount to

19   unauthorized health claims in violation of one of NLEA's implementing regulations, 21

20   C.F.R. § 101.14.

21         A "health claim" is "any claim made on the label or in labeling of a food, including a

22   dietary supplement, that expressly or by implication . . . characterizes the relationship of

23   any substance to a disease or health-related condition."  21 C.F.R. § 101.14(a)(1).

24   Within the regulation, "Substance means a specific food or component of food,

25   regardless of whether the food is in conventional food form or a dietary supplement that

26   includes vitamins, minerals, herbs, or other similar nutritional substances."  21 C.F.R.

27   § 101.14(a)(2).  Courts view, for example, the phrase "HEART HEALTHY/Whole grains

28   can help support a healthy lifestyle" as a health claim because it links whole grains, a

United States District Court
Northern District of California

8

1   substance, with heart health, a health-related condition.  Hadley v. Kellogg Sales Co.,

2   273 F. Supp. 3d 1052, 1076 (N.D. Cal. 2017) (citation omitted); see also FDA, Guidance

3   for Industry: A Food Labeling Guide, at 81 (Jan. 2013), available at

4   https://www.fda.gov/downloads/Food/GuidanceRegulation/UCM265446.pdf ("Both

5   elements of 1) a substance and 2) a disease are present in a health claim.").  A health

6   claim may be express or implied.  Hadley, 273 F. Supp. 3d at 1074.  "An implied health

7   claim includes 'those statements, symbols, vignettes, or other forms of communication

8   that suggest, within the context in which they are presented, that a relationship exists

9   between the presence or level of a substance in the food and a disease or health-related

10  condition.'"  Id. at 1074 (quoting 21 C.F.R. § 101.14(a)(1)).

11          Here, the parties do not dispute that Boost Glucose Control drinks are considered

12  "food" under the FDCA.  SAC ¶ 29.  The drinks therefore must meet labeling

13  requirements applicable to all food.  See 21 U.S.C. § 343.  Plaintiffs aver that the Boost

14  Glucose Control drink is itself a "substance" as that term is defined in 21 C.F.R.

15  101.14(a)(2).  The court disagrees with the overly nuanced interpretation of the product

16  label proffered in plaintiffs' opposition papers.  See Dkt. 16 at 22.  The court also

17  disagrees with defendant's proposed interpretation of the regulation (see Dkt. 17 at 16),

18  which would avoid the first half of the definition of substance, "[1] a specific food or [2]

19  component of food."  21 C.F.R. 101.14(a)(2) (emphasis added).  The court finds that the

20  challenged statements clearly and simply refer to the Boost products themselves as the

21  substance that is linked to a health condition, diabetes.  The court accepts that the

22  statement "Designed for people with diabetes" refers to the Boost drink as a food when

23  read in context with the other statements, creating a sufficient link tying the food to

24  diabetes.  The representations, collectively (a) "Designed for people with diabetes";

25  (b) the name of the products: "BOOST Glucose Control"; and (c) "Helps manage blood

26  sugar "(SAC ¶ 33), establish both elements necessary to constitute an implied health

27  claim, including (1) a substance and (2) a disease.  See Hadley, 273 F. Supp. 3d at 1074

28  (statements must be viewed in the context in which they are presented).  Therefore, the

United States District Court
Northern District of California

1  court concludes that the three statements on both Boost Glucose Control and Boost

2  Glucose Control High Protein collectively constitute a "health claim" that is not

3  preempted.

4       This assessment does not apply to one of the three products, however.  The

5  product label for Boost Glucose Control Max does not include the statement "Designed

6  for people with diabetes."  SAC ¶ 33.  That product label instead only includes the

7  statements "BOOST Glucose Control" and "Helps manage blood sugar," two statements

8  that do not refer to a specific disease or health-related condition.  Plaintiffs aver that

9  "'BOOST Glucose Control,' is an implicit or express health claim because it purports to

10 control a health-related condition, namely the inability to control glucose, which describes

11 diabetes" (SAC ¶ 34), but such an interpretation suggests an inferential leap from

12 glucose control to diabetes that falls short of specifying a health-related condition.  So too

13 with plaintiffs' suggested inference from the statement, "Helps manage blood sugar,"

14 where they contend that it relates to the inability to manage glucose, which describes

15 diabetes—this leap in reasoning also goes too far and falls short of describing a health-

16 related condition.  Though managing blood sugar and controlling glucose may be

17 important activities for persons with diabetes, these two activities do not describe a

18 disease or health-related condition.  The label of Boost Glucose Control Max does not

19 make any health claim, and it is thus preempted because it falls outside the boundaries of

20 the NLEA.  Therefore, the court DISMISSES plaintiffs' claims related to the third product,

21 Boost Glucose Control Max, with prejudice.[1]

22      To the extent plaintiffs argue that the Boost product labels make unsubstantiated

23 "disease claims" under 21 C.F.R. § 101.93(g)(2), their argument fails.  SAC ¶ 153.  As

24 defendant highlights, that regulation does not apply because it actually deals with "dietary

25 supplements," a different category under the FDCA.  Even if that regulation did apply,

26

27 [1] The court does not reach the question of whether plaintiffs have standing to assert
   claims regarding Boost Max based on its "substantial similarity" with the other products.
28 However, the fact that no plaintiff purchased Boost Max (SAC ¶¶ 60-62) certainly does
   not weigh in favor of permitting the claims related to this product to advance.

10

1    however, the statements on the Boost labels do not constitute "disease claims" under that

2    regulation because the statements do not represent that "the *product itself* can cure or

3    treat a disease."  Greenberg v. Target Corp., 985 F.3d 650, 654 (9th Cir. 2021)

4    (emphasis added).  The three statements identified by plaintiffs do not declare or suggest

5    that the Boost products treat or cure diabetes.

6        **2.    Whether the Product Labels Would Deceive a Reasonable Consumer**

7        Plaintiffs' first three causes of action are brought under California statutes: the

8    Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer

9    Legal Remedies Act ("CLRA").  Cal. Bus. & Prof. Code § 17200 (UCL), Cal. Bus. & Prof.

10   Code § 17500 (FAL); Cal. Civ. Code § 1770 (CRLA).  Plaintiffs' fourth and fifth causes of

11   action are brought under similar New York consumer protection statutes, General

12   Business Law sections 349 and 350.

13       "Under the consumer protection laws of California [and] New York, . . . claims

14   based on deceptive or misleading marketing must demonstrate that a 'reasonable

15   consumer' is likely to be misled by the representation."  Moore v. Trader Joe's Co., 4

16   F.4th 874, 881 (9th Cir. 2021); accord Consumer Advocates v. Echostar Satellite Corp.,

17   113 Cal.App.4th 1351, 1360 (2003).  "Under the reasonable consumer standard,

18   [plaintiffs] must show that members of the public are likely to be deceived."  Williams, 552

19   F.3d at 938.  "The California Supreme Court has recognized that these laws prohibit not

20   only advertising which is false, but also advertising which[,] although true, is either

21   actually misleading or which has a capacity, likelihood or tendency to deceive or confuse

22   the public."  Id. (internal quotation marks omitted) (quoting Kasky v. Nike, Inc., 27 Cal.4th

23   939, 951 (2002)).  The reasonable consumer test requires more than a mere possibility

24   that defendant's product "might conceivably be misunderstood by some few consumers

25   viewing it in an unreasonable manner."  Lavie v. Procter & Gamble Co., 105 Cal.App.4th

26   496, 508 (2003).  Rather, the test requires a probability "that a significant portion of the

27   general consuming public or of targeted consumers, acting reasonably in the

28   circumstances, could be misled."  Id.; see also Moore, 4 F.4th at 881.

1    Courts considering the New York analogs to California's deceptive advertising

2    claims (New York G.B.L. §§ 349, 350, plaintiffs' fourth and fifth claims here) apply the

3    same objective assessment.  Garadi v. Mars Wrigley Confectionery US, LLC, No.

4    119CV03209RJDST, 2021 WL 2843137, at *2 (E.D.N.Y. July 6, 2021) ("New York and

5    California have adopted an objective definition of deception under which the alleged act

6    must be 'likely to mislead [or deceive] a reasonable consumer acting reasonably under

7    the circumstances.'" (citation omitted)); see also Mantikas v. Kellogg Co., 910 F.3d 633,

8    637 (2d Cir. 2018).

9    Generally, "whether a reasonable consumer would be deceived . . . [is] a question

10   of fact not amenable to determination on a motion to dismiss."  Ham v. Hain Celestial

11   Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); see Reid v. Johnson & Johnson,

12   780 F.3d 952, 958 (9th Cir. 2015).  "However, in rare situations a court may determine,

13   as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not

14   plausible."  Ham, 70 F. Supp. 3d at 1193.

15   Here, plaintiffs fail to show that members of the public, particularly the targeted

16   consumer group, are likely to be deceived by defendant's product labels.  As the SAC

17   describes, diabetes is a serious, chronic disease in which a person's ability to regulate

18   blood sugar (glucose) is impaired.  SAC ¶ 16.  There is no cure, but diabetes can be

19   managed "with healthy eating and being active, or your doctor may prescribe insulin,

20   other injectable medications, or oral diabetes medicines to help manage your blood sugar

21   and avoid complications."  SAC ¶ 21; see also Dkt. 15-4.  Again, plaintiffs charge that

22   three representations on the Boost product labels are misleading: (a) "Designed for

23   people with diabetes"; (b) the name of the Products: "BOOST Glucose Control"; and (c)

24   "Helps manage blood sugar."  SAC ¶ 33.  Plaintiffs infer that these statements

25   overpromise treatment for diabetes and underdeliver, but these statements would not

26   lead a reasonable consumer to believe that the Boost nutritional drinks would treat this

27   chronic disease.  Reasonable consumers, particularly reasonable consumers who

28   monitor their blood sugar, understand that consuming food, including nutritional drinks

1   like Boost, impacts blood sugar levels.  See Dkt. 15-4.  The product labels simply do not

2   make the representations plaintiffs advance, where they do not represent that Boost

3   Glucose Control will on its own treat diabetes or maintain healthy glucose levels.

4   Plaintiffs fail to establish that persons with diabetes, as the targeted consumers of the

5   Boost Glucose Control products, would mistake the representations for promises of

6   treatment or even replacements for the insulin so many are prescribed.  See Lavie, 105

7   Cal.App.4th at 508 (explaining that the reasonable consumer standard is assessed from

8   the view of "a significant portion of the general consuming public or *of targeted*

9   *consumers*, acting reasonably in the circumstances" (emphasis added)).

10      Plaintiffs, following the reasoning in Williams v. Gerber Prod. Co., argue that the

11  product information on the back labels of the Boost packaging cannot cure the misleading

12  statements on the front of the package.  In Williams, the Ninth Circuit determined that a

13  reasonable consumer could be deceived by images on a fruit snack label depicting a

14  number of different fruits, "potentially suggesting (falsely) that those fruits or their juices

15  are contained in the product."  Williams, 552 F.3d at 939.  The appellate panel rejected

16  the argument that a misrepresentation on the front of the package could be cured by a

17  disclaimer on the back of the package, instead concluding "reasonable consumers expect

18  that the ingredient list contains more detailed information about the product that confirms

19  other representations on the package."  Id. at 939-40.

20      This case, however, does not involve any misrepresentation.  Though a

21  reasonable consumer is not expected to look to the back of a product label to dispel a

22  misleading claim on the front of a product label, see Williams, 552 F.3d at 939, plaintiffs

23  fail to show the deception of the statements here.  Plaintiffs do not contest that the

24  product labels misstate the contents, that they misrepresent the ingredients, sugar, or

25  carbohydrates.  Where "there is no deceptive act to be dispelled and no other statement

26  or other depiction that could mislead the reasonable consumer, then it is not plausible

27  that a significant portion of the general consuming public could be deceived."  Ebner v.

28  Fresh, Inc., 838 F.3d 958, 966 (9th Cir. 2016) (citing Williams, 552 F.3d at 936) (internal

1    quotation mark omitted); see also Truxel v. General Mills Sales, Inc., No. C 16-04957

2    JSW, 2019 WL 3940956, at *1, 4 (N.D. Cal. Aug. 13, 2019) (where "the actual ingredients

3    were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to

4    their own conclusions about whether or not the sugar content was healthy for them.").  A

5    reasonable consumer would not be deceived by the representations on the Boost product

6    labels.

7         The context of plaintiffs' purchase of the allegedly misleading products only

8    reinforces the implausibility of their claims.  No reasonable consumer of the targeted

9    consumer group would expect a novel diabetes treatment to simply appear on grocery

10   shelves out of the blue.

11        In sum, it is not plausible that a reasonable consumer would be deceived by the

12   Boost products labels.  The court DISMISSES plaintiffs' first five claims on this basis.

13        **3.      Whether Plaintiffs Have Alleged a Cognizable Injury**

14        Plaintiffs may establish a cognizable injury where they did not receive the full value

15   of a purchase by alleging that she paid a "price premium" due to the defendant's

16   deceptive conduct.  See Izquierdo v. Mondelez Int'l Inc., 2016 WL 6459832, at *7

17   (S.D.N.Y. Oct. 26, 2016).  However, "The bare recitation of the word 'premium' does not

18   adequately allege a cognizable injury."  Naimi v. Starbucks Corp., 798 F. App'x 67, 70

19   (9th Cir. 2019).  In Naimi, the Ninth Circuit held that although the plaintiffs alleged that

20   they paid a price premium for canned espresso, they did not allege an injury in fact

21   because they "did not allege how much they paid for the beverage, how much they would

22   have paid for it absent the alleged deception, . . . or any other details regarding the price

23   premium."  Id. at 70.

24        Here, plaintiffs do not describe with any particularity how they were injured.  They

25   do not state whether they have diabetes, they do not describe whether they consumed

26   the products, and they do not articulate any injury they suffered as a result of ingesting

27   the Boost drinks.  Plaintiffs announce that they have suffered injury based on their

28   payment of a "premium price" for a product that did not work as advertised and that they

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1   would not have paid for had they known the truth, but this is insufficient to adequately

2   allege a cognizable injury.  SAC ¶¶ 60-62.  As in <u>Naimi</u>, plaintiffs' allegations lack any

3   detail about the prices they paid or the differences between Boost Glucose Control

4   products and non-premium products.  Plaintiffs thus fail to make out a concrete injury.

5   Plaintiffs lack standing for any of their claims and the SAC must be dismissed.

6       **4.    Whether the Pleading Satisfies the Standards of Rule 8 and Rule 9(b)**

7       To survive the defendant's motion to dismiss, plaintiffs' CLRA, FAL, and UCL

8   claims "must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well

9   as the heightened pleading requirements of Rule 9(b)."  <u>Davidson v. Kimberly-Clark</u>

10  <u>Corp.</u>, 889 F.3d 956, 964 (9th Cir. 2018).  Satisfying this standard requires that the

11  plaintiffs state with particularity the circumstances constituting fraud, including "the who,

12  what, when, where, and how" of the alleged misconduct charged.  <u>Vess v. Ciba-Geigy</u>

13  <u>Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).

14      Defendant argues that plaintiffs fall short of the necessary particularity of their

15  reliance on the allegedly misleading product labels.  <u>See</u> <u>Great Pac. Sec. v. Barclays</u>

16  <u>Cap., Inc.</u>, 743 F. App'x 780, 782-83 (9th Cir. 2018) (plaintiffs must plead with

17  particularity "the 'who, what, when, where, and how' of [their] reliance.").  The court

18  agrees that plaintiffs fail to plead particularity, especially related to the "how" element of

19  pleading under Rule 9(b).  Plaintiffs allege here that each of them "relied on Nestlé'[s]

20  diabetes-related factual representations on the Products' label[s]."  SAC ¶¶ 60-62.  These

21  bare contentions fall short of describing *how* plaintiffs were led to believe that the Boost

22  products treated diabetes or otherwise fell short of the representations on the labels.

23  Plaintiffs offer no comparisons of these Boost products against other Boost products or

24  other glucose-control marketed food products.  Plaintiffs' CLRA, FAL, and UCL claims

25  are not particularly pleaded, and they are therefore dismissed on this basis as well.

26      **5.    Whether Plaintiffs Have Pleaded a Breach of Express Warranty**

27      "To state a claim for breach of express warranty under California law, a plaintiff

28  must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3)

1    a breach of warranty that proximately caused plaintiff's injury." <u>Williams v. Beechnut</u>

2    <u>Nutrition Corp.</u>, 185 Cal.App.3d 135, 142 (1986).

3         Here, plaintiffs fail to identify the exact terms of a warranty.  As discussed in

4    relation to the UCL, CLRA, and FAL claims, plaintiffs have failed to identify an actionable

5    misrepresentation as a matter of law.  This claim is therefore dismissed.

6                               **CONCLUSION**

7         For the reasons stated above, including plaintiffs' failures to state a claim and to

8    plead injury-in fact sufficient to establish standing, the court GRANTS defendant's motion

9    to dismiss.  Defendant's request for judicial notice is GRANTED in part and DENIED in

10    part, as detailed above.  The court DISMISSES plaintiffs' claims related to Boost Glucose

11    Control Max with prejudice.  Plaintiffs' claims related to Boost Glucose Control and Boost

12    Glucose Control High Protein may be amended to address the deficiencies noted in this

13    order.  Any amended pleading must be filed within 28 days from the date of this order.

14    No additional parties or claims may be added without leave of court or stipulation of

15    defendant.

16         **IT IS SO ORDERED.**

17    Dated: July 5, 2022

18                             <u>*/s/ Phyllis J. Hamilton*</u>

19                             PHYLLIS J. HAMILTON
                               United States District Judge

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*