CHRISTOPHER CHORBA, SBN 216692
  CChorba@gibsondunn.com
PERLETTE MICHÈLE JURA, SBN 242332
  PJura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  TLoose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7746
Facsimile:    213.229.6746

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| BRUCE HORTI, SANDRA GEORGE, and JEANETTE CRAIG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC.,<br><br>Defendant. | Case No. 4:21-cv-09812-PJH<br><br>**DEFENDANT NESTLÉ HEALTHCARE NUTRITION, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>*[Proposed Order filed concurrently herewith]*<br><br>Date:      October 27, 2022<br>Time:      1:30 p.m.<br>Location:  Courtroom 3 – 3rd Floor<br>Judge:     Hon. Phyllis J. Hamilton<br><br>Date Action Filed:  December 20, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 27, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the U.S. District Court for the Northern District of California, Oakland Courthouse, Courtroom 3, 3rd Floor, at 1301 Clay St., Oakland, CA 94612, Defendant Nestlé Healthcare Nutrition, Inc. will move under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) for an order dismissing Plaintiffs' third amended complaint (ECF No. 29) on several grounds:

*First*, Plaintiffs do not allege any facts suggesting that a reasonable consumer would be deceived into thinking Nestlé's BOOST Glucose Control nutritional drinks can treat diabetes. That failing dooms Plaintiffs' claims, all of which require proof of deception.

*Second*, Plaintiffs lack standing under Article III, and under the narrower standing requirements for their statutory claims, because they have not alleged any concrete and particularized injury. Plaintiffs claim that they overpaid for the BOOST drinks because they supposedly thought the drinks would treat diabetes. But Plaintiffs' "price premium" theory fails because they have not identified the "premium" they paid or alleged that any such premium is attributable to Nestlé, rather than the pricing decisions of the independent third-party retailers where the BOOST drinks were sold.

*Third*, the complaint does not satisfy Rules 8 and 9(b). Plaintiffs' copied-and-pasted, conclusory allegations do not identify the specific label statements on which they relied, and Plaintiffs continue to advance implausible claims about the ability of the BOOST drinks to treat diabetes that this Court need not credit.

*Fourth*, Plaintiffs' claims for equitable relief should be dismissed because Plaintiffs have not alleged that they lack an adequate remedy at law. And Plaintiffs are not entitled to injunctive relief because they do not allege that they wish to purchase the BOOST drinks again in the future, and thus are not at risk of suffering any future harm.

*Finally*, the Court should dismiss Plaintiffs' complaint with prejudice, because Plaintiffs have now had four opportunities to plead their claims, and still have not alleged any cognizable claims even after receiving the benefit of the Court's prior order dismissing their claims. Therefore, it would be futile to allow Plaintiffs to amend their complaint yet another time.

This motion is based on this notice of motion and motion; the accompanying memorandum of points and authorities; all other documents on file in this action; and any oral argument of counsel.

DATED:  August 29, 2022

By: */s/ Timothy Loose*
CHRISTOPHER CHORBA, SBN 216692
PERLETTE MICHÈLE JURA, SBN 242332
TIMOTHY W. LOOSE, SBN 220842
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:     213.229.7746
Facsimile:      213.229.6746
CChorba@gibsondunn.com
PJura@gibsondunn.com
TLoose@gibsondunn.com

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

    I.   INTRODUCTION ................................................................................................................ 1

    II.  STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

    III. SUMMARY OF FACTUAL ALLEGATIONS .................................................................... 2

    IV. LEGAL STANDARD ........................................................................................................... 3

    V.  ARGUMENT ......................................................................................................................... 3

        A.  No Reasonable Consumer Would Believe the BOOST Drinks Can Prevent or Treat Diabetes. ................................................................................................................ 3

        B.  Plaintiffs Have Not Adequately Alleged Standing Under a Price-Premium Theory. ........................................................................................................................... 7

        C.  Plaintiffs Do Not Plead Their Claims with Sufficient Particularity. ............................. 9

        D.  Plaintiffs Cannot Plead the Prerequisites for Seeking Equitable Relief. .................... 10

        E.  Plaintiffs' Fundamentally Flawed Claims Cannot Be Fixed by Amendment and Should Be Dismissed with Prejudice. ......................................................................... 12

    VI. CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Arris Cable Modem Consumer Litig.*,
  2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .................................................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................... 3

*Brown v. County of San Bernardino*,
  2021 WL 4497882 (C.D. Cal. May 21, 2021) ........................................................................... 13

*Brown v. Madison Reed, Inc.*,
  2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ........................................................................... 10

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ...................................................................................................... 3

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ...................................................................................................... 12

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) .............................................................................................. 6

*City of New York v. Smokes-Spirits.Com, Inc.*,
  911 N.E.2d 834 (N.Y. 2009) ........................................................................................................ 7

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) .................................................................................... 9, 12

*Edenborough v. ADT, LLC*,
  2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ............................................................................ 10

*El Toro Grp., LLC v. Bareburger Grp., LLC*,
  141 N.Y.S.3d 3 (N.Y. App. Div. 2011) ..................................................................................... 11

*Great Pac. Sec. v. Barclays Cap., Inc.*,
  743 F. App'x 780 (9th Cir. 2018) ................................................................................................. 9

*Haskins v. Symantec Corp.*,
  654 F. App'x 338 (9th Cir. 2016) ............................................................................................... 10

*Hodges v. King's Hawaiian Bakery W., Inc.*,
  2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ...................................................................... 3, 4, 5

*IntegrityMessageBoards.com v. Facebook, Inc.*,
  2021 WL 3771785 (N.D. Cal. Aug. 24, 2021) ........................................................................... 12

*Izquierdo v. Mondelez International Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .......................................................................... 8, 9

# TABLE OF AUTHORITIES

Page(s)

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................................................ 3

*Killensworth v. Godfrey*,
   2020 WL 2842856 (C.D. Cal. Mar. 18, 2020) ...................................................................... 13

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................................ 7, 9

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ................................................................................................ 4

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) .............................................................................................. 13

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ...................................................................... 12

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ........................................................................................................... 8

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ............................................................................................ 3, 4, 5

*Moreno v. Vi-Jon, LLC*,
   2021 WL 5771229 (S.D. Cal. Dec. 6, 2021) ...................................................................... 5, 7

*Mullins v. Premier Nutrition Corp.*,
   2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ......................................................................... 11

*Nacarino v. Chobani, LLC*,
   2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) .................................................................. 11, 12

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) ......................................................................................... 8, 9

*Parent v. Millercoors LLC*,
   2016 WL 3348818 (S.D. Cal. June 16, 2016) ........................................................................ 6

*Prescott v. Nestlé USA, Inc.*,
   2022 WL 1062050 (N.D. Cal. Apr. 8, 2022) ..................................................................... 5, 12

*Schwartz v. Provident Life & Accident Ins. Co.*,
   216 Cal. App. 4th 607 (2013) ................................................................................................ 7

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .......................................................................................... 11, 12

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs' third amended complaint does little more than add window dressing to the same ramshackle theory this Court has already rejected in its prior order dismissing this case. Cosmetic changes aside, Plaintiffs' complaint still boils down to the implausible claim that the labels on Nestlé's BOOST Glucose Control nutritional drinks deceive reasonable consumers into believing that those drinks can "mitigate, treat, or prevent prediabetes or diabetes." (TAC ¶ 5.) But this Court has already squarely dismissed that far-fetched theory. As the Court explained in its Dismissal Order, a "reasonable consumer would not be deceived by the representations on the Boost product labels" because those labels do "not involve any misrepresentation." (Dkt. 27 at 13–14.) Plaintiffs have pleaded no facts in their third amended complaint that would change this conclusion.

Nor have Plaintiffs managed to correct the other flaws this Court identified. Plaintiffs have not pleaded a cognizable harm sufficient to establish standing, pleaded their claims with the requisite particularity under Rule 9(b), or offered any reason why they would be entitled to equitable relief despite the availability of money damages. Because Plaintiffs' amended complaint doubles down on the same implausible theory this Court already rejected, the Court should dismiss the third amended complaint with prejudice.

**II.   STATEMENT OF ISSUES TO BE DECIDED**

1. Whether a reasonable consumer would believe the BOOST drinks can be used to treat or prevent diabetes.

2. Whether Plaintiffs have standing to sue Nestlé under Article III and the narrower standing requirements of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL); False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL); Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (CLRA); and New York General Business Law §§ 349 and 350.

3. Whether the complaint contains nonconclusory factual allegations plausibly showing that Plaintiffs relied on specific misrepresentations on the BOOST drink labels.

4. Whether Plaintiffs have adequately alleged, in support of their claims for equitable relief, that they lack an adequate legal remedy.

### III.     SUMMARY OF FACTUAL ALLEGATIONS

Much like their prior complaints, Plaintiffs' factual allegations in the third amended complaint largely consist of general information about diabetes (*see* TAC ¶¶ 15–27), and unadorned legal conclusions about the supposed deceptiveness of the BOOST drink labels (*see id.* ¶¶ 28–75.)  In the few copied-and-pasted paragraphs devoted to Plaintiffs' actual purchases of the BOOST drinks, all of the Plaintiffs allege the same exact thing: they bought the BOOST drinks even though they were "more expensive than other [unidentified] choices," that their choice "to pay the premium price [was] based upon the Products' diabetes-related representations," and that they were short-changed because these nutritional drinks do not, in fact, "mitigate, treat, or prevent disease." (*Id.* ¶¶ 76–77.)  Plaintiff Bruce Horti alleges that he was diagnosed with prediabetes and thought the BOOST drinks would "manage glucose levels" and have a "salutary benefit on diabetes and prediabetes." (*Id.* ¶ 76.)  Plaintiff Sandra George alleges that she is diabetic and similarly believed that, while the BOOST drinks may not replace her medication, they would "control blood sugar" and "mitigate, prevent disease." (*Id.* ¶ 77.)  Finally, Plaintiff Jeanette Craig does not specify whether she is a diabetic, whether she has any blood sugar-related concerns, or what she believed the BOOST drinks would do when she purchased them. (*Id.*)  Notably, none of the Plaintiffs can point to any statement actually appearing on the BOOST drinks boasting that the products would "control" blood sugar and "mitigate" diabetes, because none of the labels make such a claim.  All the labels say is that the drinks have "1 carb choice," contain "4 grams of sugar," are "designed for people with diabetes," and "help manage blood sugar," none of which are alleged to be false.  Equally as noteworthy, none of the Plaintiffs alleges any adverse impacts, or any concerns about their blood-sugar levels, from their consumption of the BOOST drinks.

Based on these allegations, Plaintiffs bring claims on behalf of California and New York subclasses of "[a]ll persons" in those states "who purchased the [drinks] for personal use and not for resale." (TAC ¶ 79.)  Plaintiffs assert claims against Nestlé for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL) (Count I); California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL) (Count II); California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (CLRA) (Count III); New York General Business Law §§ 349 and 350 (together, GBL) (Counts IV and V); and unjust enrichment (Count VI). (*Id.* ¶¶ 89–166.)

## IV.   LEGAL STANDARD

Rule 8 requires Plaintiffs to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To do so, Plaintiffs must state a "plausible claim for relief." *Id.* at 679. While the Court generally "accept[s] as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted." *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at *5 (N.D. Cal. Nov. 8, 2021).

Because Plaintiffs' claims sound in fraud, they must also satisfy Rule 9(b)'s heightened pleading standard. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Id.* "A party alleging fraud must 'set forth *more* than the neutral facts necessary to identify the transaction.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## V.   ARGUMENT

### A.   No Reasonable Consumer Would Believe the BOOST Drinks Can Prevent or Treat Diabetes.

Like the pleading that this Court dismissed, Plaintiffs' third amended complaint continues to hinge on the notion that reasonable consumers would believe drinking BOOST Glucose Control nutritional drinks will "mitigate, treat, or prevent prediabetes or diabetes." (TAC ¶ 5; *see also id.* ¶¶ 50–52, 57, 68, 76–77.) Plaintiffs offer nothing new in their complaint that would respond to the shortcomings with this theory, which this Court detailed in its Dismissal Order. (Dkt. 27 at 11–14.) Accordingly, their complaint should again be dismissed in its entirety.

To succeed on any of their claims, Plaintiffs must prove that a "reasonable consumer" would be deceived by the BOOST nutritional drink labels. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see also Hodges*, 2021 WL 5178826, at *8 (dismissing unjust enrichment claim because plaintiffs "fail[ed] to identify an actionable deception under the reasonable consumer test"). To satisfy this standard, Plaintiffs "must demonstrate 'more than a mere possibility that [the BOOST] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"

*Moore*, 4 F.4th at 882. Instead, they must plead facts demonstrating that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* In determining how a reasonable consumer would view a label, courts must "take into account all the information available to consumers and the context in which that information is provided," *id.*, and should not look to how the "least sophisticated consumer" would view the statements, *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003).

In its order dismissing the second amended complaint, this Court concluded that the BOOST labels "would not lead a reasonable consumer to believe that the Boost nutritional drinks would treat" diabetes. (Dkt. 27 at 12.) That is so because the "product labels simply do not . . . represent that Boost Glucose Control will on its own treat diabetes or maintain healthy glucose levels." (*Id.* at 13.) Indeed, as the Court noted, the BOOST labels accurately disclose the contents, ingredients, sugar, and carbohydrates in each drink, and "do[] not involve any misrepresentation." (*Id.*)

The Court also correctly explained that, in evaluating the BOOST labels, reasonable consumers would bring common sense to bear: "Reasonable consumers, particularly reasonable consumers who monitor their blood sugar, understand that consuming food, including nutritional drinks like Boost, impacts blood sugar levels." (Dkt. 27 at 12–13.) In light of this basic background knowledge, no reasonable consumer—and particularly "[n]o reasonable consumer of the targeted consumer group"— "would mistake the [BOOST label's] representations for promises of treatment or even replacements for the insulin so many are prescribed." (*Id.* at 13–14.) This conclusion is further "reinforce[d]" by the fact that all three Plaintiffs purchased the BOOST drinks in grocery stores. (*Id.* at 14.)

This Court's conclusion accords with a wealth of case law within the Ninth Circuit, which makes clear that deception-based claims should be dismissed where, as here, no reasonable consumer would be deceived by the labels in question. (*See* Dkt. 15 at 4–7; Dkt. 17 at 2–6.) For example:

- In *Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021), the court affirmed dismissal of deception-based claims regarding water bottle labels because, "[w]hen considered within the context of the water bottle packaging as a whole," and in light of common sense, no reasonable consumer would believe "that the water balances her internal bodily pH." *Id.* at 303.

- In *Prescott v. Nestlé USA, Inc.*, 2022 WL 1062050 (N.D. Cal. Apr. 8, 2022), the court determined on the pleadings that "Nestlé Toll House Premier White Morsels" did not deceive consumers into thinking the products contain white chocolate where the label made no representations suggesting that the morsels contained chocolate. *Id.* at *3–6.
- In *Hodges*, this Court dismissed claims alleging that a maker of "Hawaiian Sweet Rolls" deceived consumers by making the rolls in California, reasoning that a reasonable consumer wouldn't be "selectively blind" and wouldn't "ignore the ingredients list on a food package." 2021 WL 5178826, at *5–7 (Hamilton, J.).

Similarly, courts routinely dismiss claims of deception that rely on the notion that consumers would expect the impossible from a product:

- In *Moreno v. Vi-Jon, LLC*, 2021 WL 5771229 (S.D. Cal. Dec. 6, 2021), the court dismissed claims alleging that a hand sanitizer under-delivered on its promised efficacy because the court was "unaware of the existence of an over-the-counter hand sanitizer that can protect Plaintiff against the various pathogens, diseases and illnesses listed by him . . . nor does Plaintiff allege the existence of any such hand sanitizer on the market." *Id.* at *5.
- In *Moore*, the Ninth Circuit affirmed the dismissal of claims regarding honey labels on the grounds that no reasonable consumer would expect that, for $13.99, Trader Joe's could sell honey made entirely by bees who visited only one kind of flower. 4 F.4th at 881–85.

As this Court correctly reasoned in its prior order, the logic of these cases demands dismissal of Plaintiffs' claims regarding the BOOST labels. No reasonable consumer would expect BOOST nutritional drinks that cost a few dollars a bottle will deliver impossible results by "treat[ing] the symptoms and causes of diabetes," (TAC ¶ 61), or acting as a "cure" for diabetes (*id.* ¶ 155). Nor would a reasonable consumer "expect a novel diabetes treatment to simply appear on grocery shelves out of the blue." (Dkt. 27 at 14.)

Plaintiffs have not added any allegations to warrant a different conclusion. Plaintiffs put forward the same basic theory that consumers would believe the BOOST drinks can "prevent disease and/or treat disease." (TAC ¶ 42.) To support this already-rejected notion, Plaintiffs now point to FDA and FTC cease-and-desist letters regarding sham diabetes treatments. Those letters have nothing at all

do to with BOOST nutritional drinks, but Plaintiffs nevertheless argue that the FDA and FTC were targeting issues that are similar to the ones Plaintiffs attempt to raise. (*See id.* ¶ 61.) But even a cursory look at those claims on the sham diabetes treatments shows how different they are. Unlike the products with which the FDA and FTC took issue—such as "Diabalance Diabetes Supplement" and another product described as a "diabetes support formula"—the BOOST labels do not claim to "keep[] blood sugar at an optimum level" as a part of a "diabetic supplies kit." (*Id.*) Instead, the BOOST labels simply and accurately state that the drinks "help[] manage blood sugar" and are "designed for people with diabetes," and the BOOST advertisements cited by Plaintiffs make clear that the drinks are "[n]ot a substitute for medication." (TAC ¶¶ 3, 39.) The labels never promise to keep blood sugar at a static or "optimum" level. Indeed, as this Court already recognized, the BOOST labels "simply do not make the representations plaintiffs advance, where they do not represent that Boost Glucose Control will on its own treat diabetes or maintain healthy glucose levels." (Dkt. 27 at 13.)

Nor do Plaintiffs' new allegations regarding the in-store placement of the BOOST drinks move the needle. Plaintiffs allege that the BOOST drinks are sold in the "Diabetes Care > Nutrition & Food" section of the CVS website and, in physical stores like Walmart, in aisles that "adjoin aisles selling over-the-counter medications." (TAC ¶¶ 45–48.) As an initial matter, Plaintiffs do not explain how a third-party retailer's independent decisions on placement of the BOOST drinks on a "food" shelf, or in an aisle that is adjacent to over-the-counter medication is deceptive. Moreover, this Court has made clear that third-party retailers' placement of products cannot be used to justify a claim of deception unless a plaintiff can plausibly "allege that defendant controls third parties that stock grocery stores and other locations." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020); *see also Parent v. Millercoors LLC*, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (dismissing as implausible a claim that the defendant controlled product placement in third-party stores). And even if Plaintiffs could show that CVS or Walmart's product placement decisions had any impact on their perception of the product's ability to treat disease, this Court correctly noted that the BOOST labels themselves "do[] not involve any misrepresentation" and that the context in which the drinks are sold merely "reinforces the implausibility of [Plaintiffs'] claims." (Dkt. 27 at 13–14.) A truthful label on

a nutritional shake sold in a grocery store is no basis for a claim that reasonable people would be misled into thinking they were buying a novel diabetes treatment.

Finally, Plaintiffs' half-hearted pivot away from their "insulin replacement" theory also falls flat. In the third amended complaint, Plaintiffs allege that products "other than insulin . . . can be used to control and maintain healthy glucose levels," and that reasonable consumers expect to be able to purchase such products "over-the-counter." (TAC ¶ 26.) But Nestlé never represented that the BOOST drinks are an "over-the-counter" diabetes treatment, and Plaintiffs have not alleged that such an over-the-counter diabetes treatment exists at all, let alone in the form of a chocolate, strawberry, or vanilla-flavored nutritional drink. *Cf. Moreno*, 2021 WL 5771229, at *5 (no deception where plaintiff does not "allege the existence of any such [product] on the market"). Plaintiff Sandra George actually demonstrates the implausibility of her claims—she admittedly "did not believe [the BOOST drinks] would replace her prescription medications," yet she still maintains that she thought the drinks would "control blood sugar" or "mitigate, prevent disease." (TAC ¶ 77.) Claiming that consumers would believe the BOOST drinks can maintain static, healthy blood sugar levels when those same consumers acknowledge that they still need diabetes medication confirms no reasonable consumer would believe the BOOST drinks can treat diabetes. As this Court already determined, the BOOST labels "do not represent that Boost Glucose Control will on its own . . . maintain healthy glucose levels." (*Id.* at 13.)

Put simply, "it is not plausible that a reasonable consumer would be deceived by the Boost product labels." (Dkt. 27 at 14.) Plaintiffs have not pleaded any new facts that would change this conclusion. Their third amended complaint should therefore be dismissed.

**B.    Plaintiffs Have Not Adequately Alleged Standing Under a Price-Premium Theory.**

Plaintiffs' claims fail for additional, independent reasons that also warrant dismissal. To establish Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Like Article III, the GBL requires plaintiffs to "plead that they have suffered actual injury," and mere "allegations of indirect or derivative injuries will not suffice." *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009). The UCL and FAL impose even narrower requirements, "confin[ing] standing to those actually injured by a defendant's business practices," *Schwartz v.*

*Provident Life & Accident Ins. Co.*, 216 Cal. App. 4th 607, 611 (2013), and requiring that a plaintiff's injury specifically involve "lost money or property," *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). And under the CLRA, plaintiffs must show they suffered some sort of damage, such as "pecuniary damages," "certain types of transaction costs, [or] opportunity costs." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009). Plaintiffs have not satisfied these requirements.

Although "Plaintiffs may establish a cognizable injury . . . by alleging that [they] paid a 'price premium' due to the defendant's deceptive conduct," Plaintiffs must allege details regarding the premium they paid, including "how much they paid for the [BOOST drinks]" or "how much they would have paid for it absent the alleged deception." (Dkt. 27 at 14 (quoting *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019)).) For example, in *Izquierdo v. Mondelez International Inc.*, 2016 WL 6459832, at *1 (S.D.N.Y. Oct. 26, 2016), the plaintiffs alleged that they overpaid for sour candy at a movie theatre that was packaged in a misleading, half-empty box. But the court held that the plaintiffs had not adequately alleged injury because they did not identify the premium that they paid for the candy. *Id.* at *7. It didn't matter that the plaintiffs alleged that other candy was sold at lower prices per ounce than the sour candy they purchased, because that "comparison t[old] the [c]ourt nothing about the value of the candy, or whether the cost of the candy was inflated by [defendant's] allegedly misleading packaging." *Id.* And it wasn't "clear that [the p]laintiffs' alleged injury (the price paid) flowed from any act of [the defendant]," rather than the movie theatre. *Id.* Similarly, in *Naimi*, the Ninth Circuit held that although the plaintiffs alleged that they paid a price premium for canned espresso, they did not allege an injury in fact because they "did not allege how much they paid for the beverage, how much they would have paid for it absent the alleged deception, [or] whether [the defendant] (as opposed to a third-party distributor) was responsible for any overpayment." 798 F. App'x at 70.

As in *Izquierdo* and *Naimi*, Plaintiffs have not identified the premium that they purportedly paid for the BOOST drinks. While Plaintiffs allege generally that Nestlé sells BOOST Glucose Control drinks at a 19.3% premium over BOOST Original drinks, and that the BOOST drinks are more expensive per ounce than other nutritional drinks, Plaintiffs do not allege facts that relate to their particular purchases. (TAC ¶¶ 73–75.) Without alleging what Plaintiffs actually paid, and what other

8

Gibson, Dunn & Crutcher LLP

options Plaintiffs were actively considering, their generalized allegations still fail to assert a price premium theory. Moreover, even if the generalized allegations are given consideration, Plaintiffs' allegations about the retail price of *other* nutritional drinks tell this Court "nothing about the value of" BOOST Glucose Control drinks, or whether their price is "inflated by [Nestlé's] allegedly misleading packaging." *Izquierdo*, 2016 WL 6459832, at *7. Plaintiffs do not allege that Nestlé—as opposed to the Costco, Walmart, CVS, and Sam's Club retailers who make the pricing decisions where Plaintiffs purchased the BOOST drinks—is "responsible for any overpayment." *Naimi*, 798 F. App'x at 70; (TAC ¶¶ 73–75). Nor do Plaintiffs allege that they would have purchased these other allegedly "non-price-premium" products, which have different features. For example, the BOOST Glucose Control drinks have approximately 70% less sugar than BOOST Original drinks. Plaintiffs do not allege that they would have purchased BOOST Original drinks, nor do they allege any facts to show that that they did not realize the benefit of their bargain by selecting and obtaining a product with lower levels of sugar.

The only assertions that Plaintiffs make about their own experiences are devoid of detail. Plaintiffs allege that they paid an unidentified "premium price" for the BOOST drinks, but not how much they actually paid for the BOOST drinks, how much they would have paid for them absent Nestlé's alleged mislabeling, or what other, cheaper nutritional drinks they considered purchasing as an alternative. (TAC ¶¶ 76–77.) These conclusory assertions are insufficient to allege a cognizable injury. *Naimi*, 798 F. App'x at 70; *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (dismissing claims where "plaintiff only conclusorily asserts that [the defendant] charges a premium").

C.   **Plaintiffs Do Not Plead Their Claims with Sufficient Particularity.**

Given that each of their claims allege deception, Rule 9(b) requires that Plaintiffs adequately plead "actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset*, 51 Cal. 4th at 326–27. Plaintiffs must "plead reliance with particularity"—that is, they must "plead with particularity the 'who, what, when, where, and how' of [their] reliance." *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782–83 (9th Cir. 2018).

Plaintiffs have failed to do that here. They identify a number of statements they allege to be deceptive (*see* TAC ¶¶ 28–67), but never identify *which* of these statements they actually relied upon. Instead, Plaintiffs' copied-and-pasted factual allegations simply claim the very same thing for every single plaintiff: each of them "relied on Nestlé's diabetes-related factual representations" without specifying which "diabetes-related factual representations" they are referring to. (*Id.* ¶¶ 76–77.) Plaintiffs have also again failed to "describe[e] *how* [they] were led to believe that the Boost products treated diabetes." (Dkt. 27 at 15.) Plaintiffs don't point to any *actual text* on the BOOST labels that they relied upon in reaching the conclusion that the drinks purport to treat diabetes, and therefore fall short of pleading reliance with particularity.

Courts routinely dismiss complaints where, as here, plaintiffs identify "a range of statements" that are allegedly misleading but fail to specify "which statements any of them saw or relied on in deciding to buy" the products in question. *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8–9 (N.D. Cal. Jan. 4, 2018); *see also Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal because the plaintiff "did not allege that she read and relied on a *specific* misrepresentation" (emphasis added)); *Edenborough v. ADT, LLC*, 2016 WL 6160174, at *4 (N.D. Cal. Oct. 24, 2016); *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *10 (N.D. Cal. Aug. 30, 2021). For example, in *Arris*, the plaintiffs alleged that several statements on the company's website and the product's packaging were misleading and "generally allege[d] that they relied on" such misrepresentations. 2018 WL 288085, at *9. The court reasoned that this was insufficient to satisfy Rule 9(b) because, given the range of statements at issue, the general allegation "inhibits [the defendant]'s ability to 'defend against the charge.'" *Id.* The same is true here. Plaintiffs identify a range of allegedly misleading statements on the BOOST packaging, website, and advertising (*see* TAC ¶¶ 28–67), but never specify which of these representations they relied upon in deciding to purchase the BOOST drinks. This falls short of Rule 9(b)'s stringent pleading requirements, and this Court should dismiss all of Plaintiffs' claims as inadequately pleaded.

**D.  Plaintiffs Cannot Plead the Prerequisites for Seeking Equitable Relief.**

The Court should dismiss Plaintiffs' equitable claims for restitution and injunctive relief for the independent reason that Plaintiffs have an adequate remedy at law.

First, Plaintiffs' restitution claim (*see* TAC ¶¶ 103, 112, 126, 166) is unnecessary given the availability of money damages. The Ninth Circuit recently held in a UCL case that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In other words, an equitable-restitution claim is unnecessary when Plaintiffs are already suing for legal relief that would be adequate. *Mullins v. Premier Nutrition Corp.*, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018). And New York courts follow the same principle that claims for equitable relief "must be dismissed [where] plaintiffs have a complete and adequate remedy at law," such as monetary damages. *El Toro Grp., LLC v. Bareburger Grp., LLC*, 141 N.Y.S.3d 3, 4–5 (N.Y. App. Div. 2011).

Here, Plaintiffs seek monetary damages under the CLRA and GBL (a legal remedy) *and* restitution under the UCL, FAL, and CLRA and for their unjust enrichment claim (an equitable remedy) for the same supposed harm. (*See* TAC ¶¶ 103, 112, 126, 166.) But Plaintiffs cannot have it both ways. For example, in *Nacarino v. Chobani, LLC*, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021), where the plaintiff sued under the UCL and CLRA for allegedly deceptive advertising of vanilla-flavored yogurt, the court dismissed the plaintiff's equitable claims for restitution because she also sought damages under the CLRA. *Id.* at *12–13. The court held that regardless of whether her CLRA claim had any merit, the plaintiff had "not demonstrated that there is an inherent limitation of the legal remedy that renders [money damages] inadequate." *Id.* at *12. And because the plaintiff's claims for restitution and monetary damages were "rooted in the same allegations that" the yogurt's labeling was "misleading to consumers and a violation of the FDA regulations," she "failed to 'establish that she lacks an adequate remedy at law' with respect to her claim for restitution." *Id.* at *12–13 (quoting *Sonner*, 971 F.3d at 844). The same is true here: Plaintiffs' claims under the UCL, FAL, and CLRA and unjust enrichment claim are all premised on the same theory that BOOST Glucose Control nutritional drink's labeling falsely marketed that it could help "mitigate, treat, or prevent prediabetes or diabetes." (TAC ¶ 5.) Regardless of the merits of Plaintiffs' claims, Plaintiffs cannot seek money damages *and* restitution for these claims because they have not alleged why money damages are inadequate. *Sonner*, 971 F.3d at 844.

Second, Plaintiffs' claims for injunctive relief (*see* TAC ¶¶ 102, 113, 139, 158) are untenable for similar reasons. "While injunctive relief was not at issue in *Sonner*, . . . numerous courts in this circuit have applied *Sonner* to injunctive relief claims." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (cleaned up). And *Sonner* requires plaintiffs seeking equitable relief to allege that they lack an adequate remedy at law. 971 F.3d at 844 (dismissing equitable claim where "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy"); *IntegrityMessageBoards.com v. Facebook, Inc.*, 2021 WL 3771785, at *20–21 (N.D. Cal. Aug. 24, 2021). Here, Plaintiffs allege that "injunctive relief is of particular importance given the likely consequences of [Nestlé's] actions" (TAC ¶ 6), but they never allege what the supposed "likely consequences" are, nor that monetary damages would not remedy their alleged injury.

Although courts have emphasized that retrospective "money damages are an inadequate remedy for future harm," *Nacarino*, 2021 WL 3487117, at *12, Plaintiffs have not adequately alleged that they are at risk of suffering any future harm. A plaintiff can seek "forward-looking equitable relief" only if she specifically alleges she would "be unable to rely on the product's advertising or labeling in the future, and so w[ould] not purchase the product although she would like to." *IntegrityMessageBoards.com*, 2021 WL 3771785, at *20–21. Plaintiffs here allege only that they "are likely to continue to be damaged by [Nestlé's] deceptive trade practices, because [Nestlé] continues to disseminate misleading information on the Products' packaging." (TAC ¶ 100.) But Plaintiffs have not alleged that they wish to purchase the BOOST drinks again in the future, and thus there is no risk that they could suffer future harm absent an injunction. *See Prescott*, 2022 WL 1062050, at *6 (dismissing claim for injunctive relief because plaintiffs "did not allege facts showing they would be misled by Nestlé's labeling and advertising in the future"); *Colella*, 348 F. Supp. 3d at 145 (dismissing "request for injunctive relief" where the "plaintiff made no allegations of future harm"). Accordingly, the Court should dismiss Plaintiffs' equitable claims for restitution and injunctive relief.

E.    **Plaintiffs' Fundamentally Flawed Claims Cannot Be Fixed by Amendment and Should Be Dismissed with Prejudice.**

A court should not grant leave to amend when there has been a "failure to cure deficiencies by amendments previously allowed" or when amendment would be "futile." *Carvalho v. Equifax Info.*

*Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010). Plaintiffs have already had multiple chances to plead their claims and have still failed to state any viable claims. (Dkt. 1, 2, 11, 29.) Despite these repeated opportunities, Plaintiffs continue to advance a legal theory that this Court has already squarely rejected in its Dismissal Order: the untenable proposition that a reasonable person would see a flavored nutritional drink as a miraculous diabetes treatment. Plaintiffs were not able to cure this fundamental flaw in response to the Court's detailed Dismissal Order. Accordingly, there is "no need to prolong the litigation by permitting further amendment," *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002), and this Court should dismiss all of Plaintiffs' claims with prejudice, *see, e.g.*, *Brown v. County of San Bernardino*, 2021 WL 4497882, at *6 (C.D. Cal. May 21, 2021) (denying leave to amend where plaintiff had already "amended her complaint multiple times"); *Killensworth v. Godfrey*, 2020 WL 2842856, at *8 (C.D. Cal. Mar. 18, 2020) (recommending dismissal with prejudice where plaintiff had "been given multiple opportunities to amend his complaint").

## VI.   CONCLUSION

Nestlé respectfully requests that the Court dismiss the third amended complaint in its entirety, with prejudice.

DATED:  August 29, 2022

By: */s/ Timothy Loose*
CHRISTOPHER CHORBA, SBN 216692
PERLETTE MICHÈLE JURA, SBN 242332
TIMOTHY W. LOOSE, SBN 241037
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7746
Facsimile:    213.229.6746
CChorba@gibsondunn.com
PJura@gibsondunn.com
TLoose@gibsondunn.com

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*