1  Trenton R. Kashima (SBN 291405)
   **MILBERG COLEMAN BRYSON**
2  **PHILLIPS GROSSMAN, PLLC**
   401 West Broadway, Suite 1760
3  San Diego, CA 91942
   Telephone: (212) 946-9389
4  Email: tkashima@milberg.com

5  *Attorney for Plaintiffs
   and the putative Classes*

6  [*Additional attorneys on signature page*]

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| **BRUCE HORTI, SANDRA GEORGE,** and **JEANETTE CRAIG,** individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**NESTLE HEALTHCARE NUTRITION, INC.,** a Delaware Corporation,<br><br>**Defendant.** | Case No. 4:21-cv-09812-PJH<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date:     October 27, 2022<br>Time:     1:30 p.m.<br>Location: Court 3 – 3rd Floor<br>Judge:    Hon. Phyllis J. Hamilton<br><br>Date Action Filed: February 4, 2022 |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i
TABLE OF AUTHORITIES ......................................................................................................... ii
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1
I.   INTRODUCTION ............................................................................................................. 1
II.  STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1
III. SUMMARY OF FACTUAL ALLEGATIONS ................................................................ 2
IV.  ARGUMENT ..................................................................................................................... 4
     A.  Legal Standard ....................................................................................................... 4
     B.  A Reasonable Consumer Would Believe the Products Can Prevent or Treat Diabetes ...... 4
     C.  Plaintiffs Have Adequately Alleged Standing Under a Price-Premium Theory. ................ 9
     D.  Plaintiffs Have Pled Their Claims with Sufficient Particularity ....................................... 10
     E.  Plaintiffs Can Seek Equitable Relief ................................................................................. 13
     F.  Plaintiffs Have Pled Colorable Claims .............................................................................. 13
V.   CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                  **Page(s)**

*Arora v. GNC Holdings, Inc.*
    No. 19-CV-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) ........................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) .......................................................................................................... 4

*Bly-Magee v. California*,
    236 F. 3d 1014, 1019 (9th Cir. 2001) ........................................................................................ 4

*Brazil v. Dole Food Co.*
    935 F.Supp.2d 947 (N.D. Cal. 2013) ......................................................................................... 9

*Cohen v. Ainsworth Pet Nutrition, LLC*
    No. 2:20-CV-05289-MCS-AS, 2020 WL 7250329 (C.D. Cal. Oct. 26, 2020). ....................... 10

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ..................................................................................... 10

*Davidson v. Kimberly-Clark Corp.*
    873 F.3d 1103 (9th Cir. 2017) ................................................................................................. 13

*Edenborough v. ADT, LLC*
    16-CV-6160174, 2016 WL 6160174, at *4 (N.D. Cal. Oct. 24, 2016) .................................... 12

*Haskins v. Symantec Corp.*
    654 F. App'x 338, 339 (9th Cir. 2016) .................................................................................... 12

*Hodges v. King's Hawaiian Bakery W., Inc.*
    2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ........................................................................ 7, 8

*In re Arris Cable Modem Consumer Litig.*,
    17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................ 12

*In re Stac Electronics Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................................................... 4

*Izquierdo v. Mondelez International Inc.*
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................................... 9

*Jones v. ConAgra Foods, Inc.*,
    912 F.Supp.2d 889 (N.D. Cal. 2012) ......................................................................................... 9

*Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*
    No. 220CV00690KJMDMC, 2022 WL 172315 (E.D. Cal. Jan. 19, 2022) ............................. 10

ii
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
THE SECOND AMENDED CLASS ACTION COMPLAINT

*Manchouck v. Mondelez Int'l Inc.*
  No. 13–2148, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ...................................................... 9

*Naimi v. Starbucks Corp.*
  798 F. App'x 67 (9th Cir. 2019) ................................................................................................. 9

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ......................................................................................................... 4

*Prescott v. Nestlé USA*, Inc.
  2022 WL 1062050 (N.D. Cal. Apr. 8, 2022) ......................................................................... 7, 8

*Ruiz v. Celsius Holdings, Inc.*,
  No. 321CV00128GPCKSC, 2021 WL 5811264 (S.D. Cal. July 28, 2021) .............................. 10

*Semegen v. Weidner,*
  780 F.2d 727 (9th Cir. 1985) ................................................................................................... 11

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) ................................................................................................... 13

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) ................................................................................................... 11

*Brown v. Madison Reed, Inc.*
  21-CV-01233-WHO, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ...................................... 12

*Weiss v. Trader Joe's*,
  838 F. App'x 302 (9th Cir. 2021) .............................................................................................. 7

**Statutes**

Federal Rules of Civil Procedure
FRCP 12(b)(6) ............................................................................................................................ 4

Federal Rules of Procedure
FRCP 9(b) ..................................................................................................................... 4, 11, 12

**Other Authorities**

https://www.ftc.gov/news-events/news/press-releases/2021/09
/ftc-sends-cease-desist-demands-10-companies-suspected-making-
diabtes-treatment-claims-without (last visited July 14, 2022) ......................................... 3, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Plaintiffs Bruce Horti, Sandra George, and Jeanette Craig (collectively, "Plaintiffs"), respectfully submit this memorandum in opposition to Defendant Nestle Healthcare Nutrition, Inc.'s ("Defendant" or "Nestle") Motion to Dismiss Plaintiffs' Third Amended Complaint (hereinafter the "Motion") (Dkt. No. 32).

Defendant sells the BOOST Glucose Control, and BOOST Glucose Control High Protein products (collectively, the "Products") in packaging that prominently display and advertise that the Products "help manage blood sugar," and are "designed for people with diabetes." Third Amended Complaint (Dkt. No. 29) ("TAC"), at ¶¶ 1-3, 35-39.  These claims misled Plaintiffs and consumers because they imply that the products control glucose, and therefore were understood by Plaintiffs to mean that the products would have some affirmatively therapeutic impact on their blood glucose levels, or otherwise mitigate, treat, or prevent diabetes or diabetes. *Id.*, at ¶¶ 42-67. Defendant's motivation in doing so is transparent; by marketing their products as specifically "designed for people with diabetes," it can charge a demonstrable market premium for their products. *Id.*, at ¶¶ 68-74 (noting that Defendant charges more for their Boost Contract products than other competing nutritional drinks).  Accordingly, Defendant's misrepresentations are not without injury.

In its Motion, Defendant grossly misinterprets the applicable regulations, and Plaintiffs' allegations, in an attempt to legalize its conduct. As discussed below, the law is straight forward: relevant federal and state law squarely prohibit Defendant from deceptively advertising its products to have some affirmatively therapeutic impact on blood glucose levels, or to otherwise mitigate, treat, or prevent prediabetes or diabetes. Additionally, Plaintiffs specifically plead that Defendant's "diabetes" misrepresentations are both deceptive and damaging to the putative Class. This is all that is required at this stage of the litigation.

For these reasons, and others discussed below, Defendant's Motion should be denied entirely.

**II.   STATEMENT OF ISSUES TO BE DECIDED**

1.   Whether a "reasonable consumer" would believe that BOOST Glucose Control

drinks can be used to control glucose levels to prevent, treat, or mitigate the negative effects of diabetes.

2. Whether Plaintiffs have Article III and statutory standing to sue Nestle.

3. Whether Plaintiffs sufficiently allege that they were misled by Defendant's fraudulent representations of the BOOST Glucose Control drinks.

4. Whether Plaintiffs sufficiently allege a claim for breach of express warranty.

5. Whether Plaintiffs sufficiently allege their claims for equitable relief.

### III. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiffs brought this class action individually and on behalf of California and New York consumers who purchased BOOST Glucose Control, and BOOST Glucose Control High Protein during the relevant time period (collectively, the "Classes"). TAC, at ¶¶ 79.

As noted above, the Products prominently advertise and warrant that the Products "help manage blood sugar," and are "designed for people with diabetes." *Id.* at ¶¶ 1-3, 35-39. The Products further state that they "Help[ ] manage blood sugar." *Id.* at ¶¶ 35-39. Accordingly, when viewed in their totality, Plaintiffs allege that the Products either explicitly or implicitly are claiming to prevent disease and/or treat disease (namely, diabetes and pre-diabetes). *Id.* at ¶ 42. And given the nature of the disease at issue and Defendant's packaging, Plaintiffs understood that the Products would have some affirmatively therapeutic impact on (*i.e.* control or manage) their blood glucose levels. *Id.* at ¶¶ 76-77.

Plaintiffs' interpretation of the Products' labels is not unreasonable, as the vast majority of diabetics treat their diabetes with medications whose mechanism of action is what the Products represent to do: control glucose levels. *Id.* at ¶¶ 17-26. As noted in the Third Amended Complaint:

> a reasonable consumer, with diabetes or prediabetes, understands that products and treatments, other than insulin, can be used to control and maintain healthy glucose levels, their principal concern. Accordingly, a product does not have to be an insulin replacement to be considered a treatment for diabetes or prediabetes. Reasonable consumers also understand that for any given health condition there are common prescription treatments, and over-the-counter treatments. For example, consumers know there are over-the-counter pain killers, and prescription pain killers as well, and the same holds true for gastrointestinal conditions, influenza and countless other health issues.

*Id.* at ¶ 26. Indeed, even the name of the Products themselves, Boost Glucose Control, is a

representation that it controls glucose. *Id.* at ¶ 35.[1] This is likely why Defendant markets the Products in the manner it does: "[w]ith the dramatic rise of diabetes and prediabetes, companies have tapped into consumer anxieties about avoiding the risks of developing diabetes or prediabetes and treating or mitigating its symptoms and progression." *Id.* at ¶ 27.

Plaintiffs' conclusion that the Products claim to actively control or manage glucose levels is not an unreasonable allegation. In 2021, the Federal Trade Commission ("FTC") and FDA sent several cease-and-desist letters to companies suspected of advertising unproven treatments or cures for diabetes. *Id.* at ¶ 61 *citing* https://www.ftc.gov/news-events/news/press-releases/2021/09/ftc-sends-cease-desist-demands-10-companies-suspected-making-diabetes-treatment-claims-without (last visited July 14, 2022). For example, the FTC and FDA noted that a product named, in part, "DIABETES SUPPORT" combined with the statements "Diabetes is caused when the body either resists insulin or does not produce enough; either of which can lead to unbalanced blood glucose levels. Our diabetes support formula assists in keeping blood sugar at an optimum level. ..... Diabetes Support helps to balance blood glucose levels" and "May help balance Blood Sugar Levels" was sufficient to make a disease claim. *Id.*, *citing* https://www.ftc.gov/system/files/warning-letters/warning-letter-ar-rahmah_pharm_llc.pdf (last visited July 14, 2022). A similar result should follow here. *Id.* at ¶ 57.

Additionally, any representation that the Products control or manage glucose levels is patently false. *Id.* at ¶¶ 50-59. As alleged by Plaintiffs in their Complaint, Defendant's representations are reasonably understood by consumers, and were understood by Plaintiffs, to mean that the Products would have some affirmatively therapeutic impact on their blood glucose levels, or otherwise mitigate, treat, or prevent prediabetes or diabetes. *See id.* at ¶ 57. But Defendant's own clinical trial concluded that the Products were only associated with a lesser rise in glucose levels as compared to one other unidentified nutritional drink and this is only because Boost Glucose Control drinks have less sugar. *Id.* at ¶¶ 50-56. This is not what a reasonable consumer would understand from Defendant's representations, and this is not what Plaintiffs understood. *Id.* at ¶¶ 57-59.

---

[1] It is also worth noting that Defendant places its Products next to or with blood glucose monitoring systems both in stores and online. *See* TAC at ¶¶ 45-48. This only increases the likelihood that consumers would understand that Defendant's Products control or manage blood glucose levels. *Id.*

3

Plaintiffs alleged that they specifically purchased the Products based on the Products' diabetes-related representations, including the representations that it controls and manages glucose levels. *Id.* at ¶¶ 76-77. Accordingly, they relied on Defendant's misrepresentations and were injured as a result. Indeed, Plaintiffs specifically allege that Defendant's "Boost Glucose Control" Products are sold at a sizable premium when compared to other nutritional drinks. *Id.* at ¶¶ 70-75. For example, on Nestle's own site, a six-pack of the Nestle BOOST Original costs $7.95, while the BOOST Glucose Control six-pack sells for $9.49, a premium of 19.3 percent. *Id.* at ¶ 73. Plaintiffs further provided a list of the pricing of five of Defendant's competitors, to show that Defendant charges a premium for the Products. *Id.* at ¶ 74.

## IV.　ARGUMENT

### A.　<u>Legal Standard</u>

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The heightened pleading standards under Rule 9(b) require only that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F. 3d 1014, 1019 (9th Cir. 2001) (*quoting Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). Consequently, Rule 9(b) only requires that defendants receive "adequate notice" to show that the complaint is not "a pretext for the discovery of unknown wrongs." *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

### B.　<u>A Reasonable Consumer Would Believe the Products Can Prevent or Treat Diabetes.</u>

In its Order Granting Defendant's Motion to Dismiss this Court held "Plaintiffs fail to

establish that persons with diabetes, as the targeted consumers of the Boost Glucose Control products, would mistake the representations for promises of treatment or even replacements for the insulin so many are prescribed." Dkt. No. 15 at p. 13. Put differently, the Court held that "these statements would not lead a reasonable consumer to believe that the Boost nutritional drinks would treat this chronic disease" and the "product labels simply do not… represent that Boost Glucose Control will on its own treat diabetes or maintain healthy glucose levels." Order on Motion to Dismiss Second Amended Complaint, Dkt. No. 27 at pp. 12-13. Defendant seized on this portion of the Order in the Motion, to contend that no reasonable consumer would understand that "BOOST Glucose Control" means that the product would control or manage "Glucose."  Motion at pp. 3-7. Plaintiffs would disagree.

Plaintiffs did not believe the Products were low sugar nutritional shakes, rather Plaintiff Bruce Horti had been diagnosed with prediabetes and was interested in reducing his risk of developing diabetes and ameliorating his prediabetes when he purchased the Boost Glucose Control Rich Chocolate and Very Vanilla flavors. TAC at ¶ 76. He does not take medication for his prediabetes. *Id.* He purchased the products because *he believed they would have a beneficial effect on his prediabetes and prevent diabetes*. *Id.* Plaintiff Horti did not believe the touted diabetes benefits were simply a result of low sugar content. *Id.* In addition, Plaintiff Sandra George has diabetes and takes two prescription medications for it. *Id.* ¶ 77. Plaintiff George bought Boost Glucose Control-High Protein because she believed the Products would have a beneficial effect on her diabetes by controlling her glucose levels. *Id.* Although Ms. George did not believe the Products would outright replace her prescription diabetes medications, she believed since the Products were advertised for diabetics and would control blood sugar that *it would provide a beneficial effect on her diabetes by controlling her glucose. Id.* Ms. George used to purchase low-sugar and sugar-free protein drinks, but when she noticed the specific diabetes representations and purported glucose control benefits on the Products, she stopped buying the other protein drinks altogether because they did not represent anything about being for diabetics specifically. *Id.*

Plaintiffs sufficiently allege they believed the Products would treat their prediabetes and diabetes. Mr. Horti alleged he purchased the Products as a pre-diabetic looking to consume a product

that would prevent his pre-diabetes from worsening and prevent him from being diagnosed with diabetes. TAC ¶ 76. Further, Ms. George alleged she purchased the Products because she wanted a product with protein that would treat her diabetes by lowering her blood sugar level in combination with her diabetes medication. *Id.* ¶ 77. Ms. George even stopped purchasing other protein products that were also low sugar because they did not claim to "control glucose," "manage blood sugar" or be "designed for people with diabetes." *Id.* Therefore, Plaintiffs have clearly established that they are "persons with diabetes," and "as the targeted consumers of the Boost Glucose Control products, would mistake the representations for promises of treatment… ." Dkt. No. 15 at 13.

In their TAC, Plaintiffs alleged several allegations to show that consumers, like Plaintiffs, would mistakenly believe the representations on the Products meant that they could actively control glucose or blood sugar levels. First, as a matter of semantics there is nothing that suggests that consumers would not understand Defendant's "Glucose Control" and "helps manage blood sugar" representations literally.  TAC, at ¶¶ 50-52. Second, as the Court noted, "[t]he context of plaintiffs' purchase" is important. Order on Motion to Dismiss, Dkt. No. 15 at 14.  Plaintiffs also allege that reasonable consumers would not understand that the products were simply "low sugar" drinks, given that other "diet" products are not branded as "Glucose Control" or advertised to "help[ ] manage blood sugar." TAC, at ¶ 59.  Nor are they labeled and marketed specifically to diabetics. *Ibid.* As the operative Complaint notes, Diet Coke is not advertised as "diabetic glucose control Coke," and there is no "Pepsi Diabetes." *Ibid.*  Plaintiffs further alleged the Products were not sold on grocery aisles next to bread and cereal, but rather they were sold with other diabetes medicines and supplies, both in store and online. *Id.*, at ¶¶ 46 Further on the CVS website, the Products are sold under the following tabs: Home>Shop>Home Health Care>Diabetes Care>Nutrition & Food), 47 (the Products on the same aisles that sells blood glucose monitoring systems).[2] Therefore, Plaintiffs, like many other consumers, were reasonable in concluding the Products could help control blood sugar levels.

---

[2] Plaintiffs have alleged Nestle had a hand in where the Products were placed in a grocery store and/or online because diabetes is a permanent disease and Defendant knows this. *Compare* TAC, at ¶ 45 *with* Motion at p. 6 ("Plaintiffs do not explain how a third-party retailer's independent decisions on placement of the BOOST drinks on a 'food' shelf, or in an aisle that is adjacent to over-the-counter medication is deceptive.")

It is important to note that Plaintiffs do not claim that the Products will cure diabetes or were a replacement for insulin. *See generally* TAC. Defendant contends that "[a] truthful label on a nutritional shake sold in a grocery store is no basis for a claim that reasonable people would be misled into thinking they were buying a novel diabetes treatment." Motion at pp. 5-6. However, there is nothing novel or truthful about Defendant's misrepresentations.

Plaintiffs assert that the Products do not perform as advertised: they do nothing to "control" blood glucose levels or "manage" blood sugar levels. *Id.* While diabetes is a chronic illness that requires a person to monitor their blood sugar because their bodies do not produce insulin, the operative Complaint notes that "a reasonable consumer, with diabetes or prediabetes, understands that products and treatments, other than insulin, can be used to control and maintain healthy glucose levels, their principal concern." TAC, at ¶¶ 21-26. Indeed, a google search for "diabetes supplements" will show that the market is replete with numerous products that claim to help maintain or control glucose levels. Accordingly, a reasonable consumer would understand that the Products are making similar marketing claims. Moreover, Plaintiffs strongly contest the representations on the Products and allege the Products' representations are misleading. "According to the study, the DS-ONS (Products) caused blood glucose levels to go up." TAC at ¶ 54. "Nestle BOOST *does not control glucose in a way that such claim is reasonably understood*, it simply provokes a less bad glucose response than some other, unidentified product." *Id.* These allegations are clearly contesting whether the representations of "control glucose", "manage blood sugar" or "is designed for people with diabetes" are accurate representations. Therefore, Plaintiffs have contested the accuracy of Products' labels and have alleged they are misleading.

Defendant cites a few cases in support of the proposition that no reasonable consumer would be deceived by the labels in question. See *Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021); *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021); *Prescott v. Nestlé USA*, Inc., 2022 WL 1062050 (N.D. Cal. Apr. 8, 2022). These cases are inapposite for varying reasons.

In *Weiss* the Ninth Circuit examined "the context of the water bottle packaging as a whole" and concluded that "ionized" and other representations referred to the water itself but not the internal

7
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
THE SECOND AMENDED CLASS ACTION COMPLAINT

impact the water would have on one's body while consuming it. Here, Defendant's Products *refer expressly to internal bodily impact* and a disease: "helps manage *blood sugar*" and "designed for people with diabetes." TAC, at ¶¶ 35-38. The Products specifically state they are designed to help a purchaser with controlling the one ingredient that causes diabetes, glucose. Diabetes is a disease, and a representation that something is designed specifically for people with a disease can only be interpreted to mean that it either prevents the disease, or, if one already has it, mitigates the symptoms, or otherwise treats it; therefore, *Weiss* is inapplicable.

In *Hodges*, the plaintiffs alleged "EST 1950 HILO, HAWAII" inside a three-point crown evocative of a pineapples crown on the front of the product's packaging conveyed the products at issue were made in Hawaii. No. 21-CV-04541-PJH, 2021 WL 5178826, at *1. However, the plaintiffs acknowledged neither the brand name nor the product name convey a message about the product's origin. *Id.* Further, the plaintiffs conceded that other Hawaiian-themed trade dress on the product's label did not convey a product-origin claim either. *Id.* Here, Plaintiffs have not conceded any of the facts that were conceded in *Hodges*. Plaintiffs expressly alleged the Product's name, "BOOST GLUCOSE CONTROL" is misleading. TAC ¶ 35. Further, Plaintiffs have alleged every diabetes representation on the Products is misleading and conveys the Product is intended to be marketed to diabetics and prediabetic consumers, such as Plaintiffs. *Id.* at ¶¶ 5, 155 ("Defendant's representations are reasonably understood by consumers, and were understood by Plaintiffs, to mean that the Products would have some affirmatively therapeutic impact on their blood glucose levels, or otherwise mitigate, treat, or prevent prediabetes or diabetes").

In *Prescott*, the plaintiff could not be misled because "[n]othing about the ordinary and common meanings of the adjectives 'white' and "premier" would suggest to a reasonable consumer that the Product is white *chocolate."* No. 19-CV-07471-BLF, 2022 WL 1062050, at *4. "Similarly, images of a cookie and white morsels do not provide any information as to the substance of the morsels." *Id.* Here, Defendant makes several unequivocal representations the Products are intended to be used by prediabetics or diabetics to control their glucose by stating they "control glucose", "manage blood sugar" and are "designed for people with diabetes". The ordinary and common meanings of those phrases indicate a consumer would believe the Products are designed for

purchasers with prediabetes or diabetes and that such Products can treat those conditions and is entirely different than the vague representations in *Prescott*.

### C. Plaintiffs Have Adequately Alleged Standing Under a Price-Premium Theory.

Despite Defendant's arguments to the contrary, the operative Complaint adequately alleges an injury based on the price premium theory of recovery. In the Third Amended Complaint, Plaintiffs allege that Mr. Horti is prediabetic while Ms. George is diabetic. TAC at ¶¶ 76-77. Plaintiffs allege the Products were more expensive than the other choices they viewed and paid a premium price based on the Products' diabetes-related representations. *Id.* Plaintiffs allege they would not have purchased the Products had they known the Products did not "control glucose," or "manage blood sugar." *Id.* Furthermore, Plaintiffs used Defendant's own pricing, and the pricing of competitors, to show that there is a plausible price premium associated with the products. *Id.*, at ¶¶ 72-77. This is sufficient to confer Article III and statutory standing. *See Brazil v. Dole Food Co.,* 935 F.Supp.2d 947, 962 (N.D. Cal. 2013); *Manchouck v. Mondelez Int'l Inc.,* No. 13–2148, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013); *Jones v. ConAgra Foods, Inc.,* 912 F.Supp.2d 889, 901 (N.D. Cal. 2012); *Arora v. GNC Holdings, Inc*., No. 19-CV-02414-LB, 2019 WL 6050750 at *20-21 (N.D. Cal. Nov. 15, 2019).

Defendant contends Plaintiffs have not identified a premium they purportedly paid for Boost Drinks and that their fraud claims should be dismissed. Motion at p. 8. However, as Defendant correctly points out in its brief, the BOOST Glucose Control products sold by Defendant are sold at a 19.3 % premium than its other BOOST Nutritional drinks that do not allege to control glucose. *Id.* Plaintiffs specifically allege although the Products were more expensive than other choices they viewed, they chose to pay the premium price based upon the Products' diabetes-related representations, including the representations that it controls and manages glucose levels. TAC at ¶¶ 76-77. Nothing more is required of Plaintiffs at this stage.

Defendant's heavy reliance on *Naimi v. Starbucks Corp.,* 798 F. App'x 67 (9th Cir. 2019) and *Izquierdo v. Mondelez International Inc.*, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) is understandable but overstated. First, all the courts within the Ninth Circuit have declined to apply *Naimi* for the proposition that Defendant advances. For example, in *Kirchenberg v. Ainsworth, Pet*

*Nutrition, Inc.*, No. 220CV00690KJMDMC, 2022 WL 172315 (E.D. Cal. Jan. 19, 2022), the defendant cited *Naimi* to argue the plaintiffs had alleged a "bare recitation" of a "price premium" without indicating how much plaintiffs "paid for the [product], how much they would have paid…absent the alleged deception…, or any other details" was insufficient for standing. *Id*., at *3. The court rejected the defendant's reliance on *Naimi* and refused to dismiss the plaintiffs' complaint for lack of standing given she argued "she would not have spent money on defendants' products but for defendants' misrepresentations." *Id.* Other courts in the Ninth Circuit have also declined to follow *Naimi*, *Collela* and other cases advanced by Defendant. *See, Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018); *but see Ruiz v. Celsius Holdings, Inc.*, No. 321CV00128GPCKSC, 2021 WL 5811264 (S.D. Cal. July 28, 2021) ("Following the district court in *Greene*, 262 F. Supp. 3d at 69, the Court declines to dismiss the GBL claims on the ground that Plaintiffs have not alleged a precisely comparable product to demonstrate the amount of the price premium, as whether Plaintiffs can indeed show that they paid a price premium is a question of fact not properly determined at the pleading stage."); *Cohen v. Ainsworth Pet Nutrition, LLC*, No. 2:20-CV-05289-MCS-AS, 2020 WL 7250329 (C.D. Cal. Oct. 26, 2020).

In *Izquierdo,* the court dismissed the plaintiffs' fraud claims finding that just "because [p]laintiffs [] recite[d] the word 'premium' multiple times in their Complaint does not make [p]laintiffs' injury any more cognizable" and that "[p]laintiffs ha[d] not alleged that they paid a *higher* price for the [products] than they otherwise would have, absent deceptive acts." No. 16-CV-04697 (CM), 2016 WL 6459832, at *7. . Here, Plaintiffs have alleged they paid a higher price for the Products than they otherwise would have absent the false misrepresentations made by Defendant, hence, *Izquierdo* is clearly distinguishable. TAC at ¶¶ 76-77.

Therefore, Plaintiffs have sufficiently alleged a premium price injury and Defendant's motion should be dismissed on this basis.

   D.   **<u>Plaintiffs Have Pled Their Claims with Sufficient Particularity</u>**

Defendant argues that Plaintiffs' claims fail to meet the heightened pleading standards of Rule 9(b) for two reasons: (1) Plaintiffs "never identify *which* of [Defendant's deceptive statements] they actually relied upon", and (2) Plaintiffs "don't point to any *actual text* on the BOOST labels

10
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

that they relied upon in reaching the conclusion that the drinks purport to treat diabetes." Motion at p. 10. Defendant is wrong on both points.

To satisfy Rule 9(b)'s heightened standard, the allegations need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (*per curiam*) (internal quotation marks omitted). Here, Plaintiffs' allegations are more than specific enough to (1) identify the deceptive statements Plaintiffs relied upon, and (2) what text Plaintiffs relied upon "in reaching the conclusion that the drinks purport to treat diabetes."

Plaintiffs laid out in detail which of Defendant's representations were deceptive and made clear Plaintiffs relied on those statements. *See* TAC ¶¶ 5 ("Defendant's express representations that the Products control glucose and are designed for diabetics are deceptive. Defendant's representations are reasonably understood by consumers, and were understood by Plaintiffs, to mean that the Products would have some affirmatively therapeutic impact on their blood glucose levels, or otherwise mitigate, treat, or prevent prediabetes or diabetes"); 35 (detailing the misrepresentations made "on bottles themselves and on the packaging of the multi-packed bottles"); 36 (showing Defendant's packaging with the misrepresentations displayed prominently). The Complaint lays out exactly which Product or Products each Plaintiff purchased. TAC ¶¶ 76 ("Mr. Horti purchased the Boost Glucose Control Rich Chocolate and Very Vanilla"); 77 ("Ms. George purchased the Boost Glucose Control-High Protein"); *id.* ("Ms. Craig purchased the Boost Glucose Control Product"). The Complaint further makes clear that each Plaintiff "relied on Nestle's diabetes-related factual representations on the Products' label" and more specifically the "controls and manages glucose levels" claims. *Id.* ¶¶ 76-77 ("[Plaintiff] chose to pay the premium price based upon the Products' diabetes-related representations (as identified above), including the representations that it controls and manages glucose levels.").

Thus, the Complaint alleges that each Plaintiff relied on specific misrepresentations present

on the packaging of each Product or Products that Plaintiff purchased. This is more than sufficient to "give [Defendant] notice," *Semegen*, 780 F.2d 731, of the misrepresentations at issue. Nor is there any uncertainty in the misrepresentations which led Plaintiffs to believe the Products could treat diabetes. As detailed in the Complaint, the Products' branding as "BOOST Glucose Control" and Defendant's representations that the Products are "designed for people with diabetes" and that the Products "help[] manage blood sugar" taken together lead reasonable consumers to believe the Products treat diabetes. TAC ¶ 35; *see also id.* ¶ 61 (describing action taken by federal regulators for similarly misleading claims regarding the treatment of diabetes); *see also Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *12 (S.D. Cal. Jan. 3, 2018) (allegations were sufficient under Rule 9(b) because the defendant knew "what statements are at issue, why they are allegedly misleading, and how it affected [plaintiff]," and that further detail regarding the plaintiff's purchases "serves no end towards ensuring that [defendant] receives adequate notice and is protected from the burdens of baseless litigation.").

Defendant relies on four cases where "plaintiffs identify a range of statements that are allegedly misleading but fail to specify which statements any of them saw or relied on" which were subsequently dismissed. Each of these cases in inapposite because Plaintiffs here did specify which representations they relied upon—namely, the misrepresentations present on the labeling of the specific Products they purchased. *Compare* TAC ¶¶ 76, 77 (alleging each Plaintiff relied on the representations present on the labeling for their respective Products); *with In re Arris Cable Modem Consumer Litig.*, 17-CV-01834-LHK, 2018 WL 288085, at *8–9 (N.D. Cal. Jan. 4, 2018) (alleging misleading statements in the defendant's advertising and on various website and not specifying which plaintiff relied on); *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal where plaintiff did not even argue she alleged reliance on specific representations); *Edenborough v. ADT, LLC*, 16-CV-6160174, 2016 WL 6160174, at *4 (N.D. Cal. Oct. 24, 2016) (granting dismissal in part where plaintiffs failed to allege they visited the website where the alleged misrepresentations were made); *Brown v. Madison Reed, Inc.*, 21-CV-01233-WHO, 2021 WL 3861457, at *10 (N.D. Cal. Aug. 30, 2021) (granting dismissal where the misrepresentations at issue were made during different marketing campaigns at different times and

the plaintiffs did not allege which representations they relied on).

### E. Plaintiffs Can Seek Equitable Relief

Defendant next argues that Plaintiffs cannot seek restitution or injunctive relief because "Plaintiffs have an adequate remedy at law." Motion at p. 10. Plaintiffs acknowledge that restitution is not available for their claims under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) and concede their claims for restitution.

Regarding injunctive relief, however, Defendant is simply wrong to assert that Plaintiffs have an adequate remedy at law. This is because without injunctive relief Plaintiffs lack an adequate remedy for <u>future harm</u>. It is axiomatic that a plaintiff facing "an actual and imminent threat of future injury" is entitled to injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1114 (9th Cir. 2017). The question of whether such risk of future injury exists in cases with previously deceived consumers was settled in this Circuit:

> Today, we resolve this district court split in favor of plaintiffs seeking injunctive relief. We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Davidson*, 873 F.3d 1115. Plaintiffs have met the standard laid out in *Davidson*, alleging that "Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging." TAC, at ¶ 100.

### F. Plaintiffs Have Pled Colorable Claims

Defendant's final argument mischaracterizes the Court's prior ruling, claiming that "Plaintiffs continue to advance a legal theory that this Court has already squarely rejected." Motion at p. 13. As Your Honor knows, however, the Court concluded in its original order that "the three statements on both Boost Glucose Control and Boost Glucose Control High Protein collectively constitute a 'health claim' that is not preempted." Order Granting Def.'s MTD (ECF No. 27) at 10. Furthermore, Your Honor gave Plaintiffs leave to "amend [their Complaint] to address the deficiencies noted in this order." *Id.* at 16. Plaintiffs thus filed their Third Amended Complaint on August 2, 2022, ECF No. 29, addressing the deficiencies outlined in Your Honor's July 5 Order.

Plaintiffs' surviving claims are well-pled and should move forward.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint in its entirety. If the Court finds any of Plaintiffs' allegations insufficient, they would request leave to amend the Complaint to address such issues.

Dated: September 26, 2022                    Respectfully submitted,

*/s/ Trenton R. Kashima*
Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
401 West Broadway, Suite 1760
San Diego, CA 91942
Telephone: (212) 946-9389
Email: tkashima@milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:   (313) 303-3472
Fax:   (865) 522-0049
Email: nsuciu@milberg.com

Daniel K. Bryson**
J. Hunter Bryson*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC, 27603
Tel: (919) 600-5000
Fax: (919)600-5035
Email: dbryson@milberg.com
Email: hbryson@milberg.com

Andrei Rado*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 10023
Tel.:   (212) 594-5300
Fax:   (865) 522-0049

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Email: *arado@milberg.com*

Zoe Aaron**
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 10023
Tel.:   (212) 594-5300
Fax:   (865) 522-0049
Email: *zaaron@milberg.com*

*\*Pro Hac Vice*
*\*Pro Hac Vice Forthcoming*
***Attorneys for Plaintiffs***