CHRISTOPHER CHORBA, SBN 216692
   CChorba@gibsondunn.com
PERLETTE MICHÈLE JURA, SBN 242332
   PJura@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
   TLoose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7746
Facsimile:   213.229.6746

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| BRUCE HORTI, SANDRA GEORGE, and JEANETTE CRAIG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC.,<br><br>Defendant. | Case No. 4:21-cv-09812-PJH<br><br>**DEFENDANT NESTLÉ HEALTHCARE NUTRITION, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   November 3, 2022<br>Time:   1:30 p.m.<br>Location:   Courtroom 3 – 3rd Floor<br>Judge:   Hon. Phyllis J. Hamilton<br><br>Date Action Filed: December 20, 2021 |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

    I.   INTRODUCTION ............................................................................................................ 1

    II.  ARGUMENT .................................................................................................................... 1

        A.  No Reasonable Consumer Would Believe the BOOST Drinks Can Treat Diabetes. ............................................................................................................. 1

        B.  Plaintiffs Lack Standing to Sue Because They Have Not Alleged an Injury in Fact. ..................................................................................................... 4

        C.  Plaintiffs Have Not Pleaded Their Claims with Particularity. ........................... 7

        D.  Plaintiffs Have Not Adequately Pleaded Allegations for Seeking Equitable Relief. ................................................................................................. 7

        E.  Plaintiffs' Third Amended Complaint Should Be Dismissed with Prejudice. ................... 8

    III. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Arris Cable Modem Consumer Litig.*,
  2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ................................................................................ 7

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) .................................................................................................. 7

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) .................................................................................................... 8

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) .......................................................................................... 2

*City of New York v. Smokes-Spirits.Com, Inc.*,
  911 N.E.2d 834 (N.Y. 2009) .................................................................................................... 4

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...................................................................................... 7

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d 1103 (9th Cir. 2017) .................................................................................................. 8

*Haskins v. Symantec Corp.*,
  654 F. App'x 338 (9th Cir. 2016) ............................................................................................. 7

*Hodges v. King's Hawaiian Bakery W., Inc.*,
  2021 WL 5178826 (N.D. Cal. Nov. 8, 2021) ........................................................................... 4

*Izquierdo v. Mondelez International Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................................... 6

*Kennard v. Kellogg Sales Co.*,
  2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) ......................................................................... 9

*Kirchenberg v. Ainsworth, Nutrition, Inc.*,
  2022 WL 172315 (E.D. Cal. Jan. 19, 2022) ......................................................................... 5, 6

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ............................................................................................................. 4

*In re MacBook Keyboard Litig.*,
  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .......................................................................... 8

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ............................................................................................................. 5

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .............................................................................................. 1, 3, 4

*Naimi v. Starbucks Corp.*,
  798 F. App'x 67 (9th Cir. 2019) ............................................................................................... 5

*Parent v. Millercoors LLC*,
  2016 WL 3348818 (S.D. Cal. June 16, 2016) .......................................................................... 2

*Prescott v. Nestlé USA, Inc.*,
  2022 WL 1062050 (N.D. Cal. Apr. 8, 2022) ................................................................... 4, 8, 9

**TABLE OF AUTHORITIES**

Page(s)

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................................................................................. 7, 8

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................................................................ 4

*Weiss v. Trader Joe's*,
  838 F. App'x 302 (9th Cir. 2021) ........................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

In its order dismissing Plaintiffs' second amended complaint, this Court made clear that no reasonable consumer would believe "that BOOST Glucose Control will on its own treat diabetes or maintain healthy glucose levels." (Dkt. 27 at 13.) Plaintiffs' opposition confirms that they simply "disagree" with the Court and continue to assert that a reasonable consumer would believe the BOOST drinks can "treat diabetes" and "maintain healthy glucose levels." (Opp. at 4, 7.) Similarly, although Plaintiffs point to padded allegations, they have not responded to the Court's demand for "detail" regarding the alleged price premium *they* paid, or explained "*how* plaintiffs were led to believe that the Boost products treated diabetes or otherwise fell short of the representations on the labels." (Dkt. 27 at 15.) Plaintiffs' inability to remedy the defects identified in this Court's dismissal order confirms that they cannot state a claim on any cognizable theory. The Court should dismiss the third amended complaint with prejudice.

### II. ARGUMENT

**A.   No Reasonable Consumer Would Believe the BOOST Drinks Can Treat Diabetes.**

All of Plaintiffs' claims require them to prove that a "reasonable consumer" would be deceived by the BOOST nutritional drink labels. (Mot. at 3–4); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021). As Plaintiffs concede, this Court's dismissal order made clear that reasonable consumers would not "believe that the Boost nutritional drinks would treat . . . diabetes or maintain healthy glucose levels." (Opp. at 5 (quoting Dkt. 27 at 12–13).) Nevertheless, Plaintiffs continue to advance exactly that theory, arguing that reasonable consumers would believe the BOOST drinks can "treat diabetes" (*id.* at 4), or "maintain healthy glucose levels" (*id.* at 7). And although they maintain they "do not claim that the [BOOST drinks] will cure diabetes" (*id.*), their third amended complaint alleges that consumers "would reasonably believe . . . that the [BOOST drinks] in fact help treat, *cure*, or prevent diabetes" (TAC ¶ 155 (emphasis added)). Because this Court already squarely rejected these arguments exactly as phrased by Plaintiffs in their third amended complaint and opposition, Plaintiffs have failed to state a claim. (*See* Dkt. 27 at 11–14.)

In an effort to plead around this Court's order, Plaintiffs offer a few alternative formulations of their theory. They say reasonable consumers would believe the BOOST drinks can "treat," "prevent," "ameliorat[e]," or "have a beneficial effect on" diabetes or prediabetes by "actively control[ling] glucose or blood sugar levels." (Opp. at 5–6.) But these are all variations on the same theme; as Plaintiffs acknowledge, the only way to "treat," "prevent," or "ameliorate" diabetes is by maintaining healthy glucose levels (*id.* at 6), and this Court already held that no reasonable consumer would believe they could accomplish this solely by drinking BOOST Glucose Control beverages (Dkt. 27 at 13).

Nor do Plaintiffs' other arguments establish that reasonable consumers would be deceived by the BOOST drink labels. First, Plaintiffs argue that, "as a matter of semantics," reasonable consumers would read the BOOST drink labels "literally" to mean that the drinks will actively maintain healthy glucose levels in the person who consumes them. (Opp. at 6.) But as this Court explained, the BOOST drink labels "simply do not make the representations" that Plaintiffs call the "literal" reading because the labels do not promise that the drinks will "treat diabetes" or "maintain healthy glucose levels." (Dkt. 27 at 13.) Plaintiffs do not contest that the BOOST drink labels accurately state "the contents, . . . ingredients, sugar, [and] carbohydrates" in each drink. (*Id.*) Accordingly, Plaintiffs cannot point to anything that is false or misleading on the BOOST drink labels.

Second, Plaintiffs argue that the context in which the BOOST drinks are allegedly sold—in the "Diabetes Care > Nutrition & Food" section of retailers' websites and in grocery aisles that "adjoin aisles selling over-the-counter medications" (TAC ¶¶ 46–48)—renders them deceptive. As Nestlé explained in its motion (Mot. at 6–7), because Plaintiffs do not provide any non-conclusory allegations "that [Nestlé] controls third parties that stock grocery stores and other locations," the placement of the products cannot make them deceptive, *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020). All Plaintiffs offer to show control over third parties is a bare assertion that Nestlé must have "had a hand in where the Products were placed in a grocery store and/or online because diabetes is a permanent disease and Defendant knows this." (Opp. at 6 n.2.) This argument assumes that Nestlé marketed the BOOST drinks as a way to treat diabetes—a contention that this Court already found to be implausible and need not accept. (Dkt. 27 at 12–14); *see also Parent v. Millercoors LLC*, 2016 WL 3348818, at *7–8 (S.D. Cal. June 16, 2016) (dismissing as implausible a claim that the

defendant controlled product placement in third-party stores). But even if Nestlé did control the placement of the BOOST drinks in retailers' stores, that wouldn't change the analysis: the allegation that the drinks are sold in grocery aisles and the "Diabetes Care-Nutrition & Food" section of retailers' websites merely "reinforces the implausibility of [Plaintiffs'] claims" and could not, alone, render the truthful BOOST drink labels deceptive. (Dkt. 27 at 14.)

Third, Plaintiffs argue that their allegations about the BOOST drinks are reasonable because the FDA and FTC sent "cease-and-desist letters to companies suspected of advertising unproven treatments or cures for diabetes" in 2021. (Opp. at 3.) But Plaintiffs do not draw any persuasive parallels between the BOOST drink labels and sham diabetes treatments that have been the subject of the FDA and FTC cease-and-desist letters. (*See* Opp. at 3; TAC ¶ 61.) As Nestlé explained in its motion (Mot. at 5–6), the letters Plaintiffs cite had nothing to do with the BOOST drinks, and Plaintiffs do not allege that the FDA or FTC has ever taken issue with the truthful labels on the BOOST drinks. Moreover, whereas the products cited in those letters promised to "keep[] blood sugar at an optimum level" as a part of "diabetic supplies kit" (TAC ¶ 61), the BOOST drink labels do not promise that the drinks will "maintain healthy glucose levels" (Dkt. 27 at 13).

Fourth, Plaintiffs argue that it is enough that the third amended complaint "sufficiently allege[s] *they* believed the Products would treat their prediabetes and diabetes." (Opp. at 5–7 (emphasis added).) But whether Plaintiffs themselves "misunderstood" the BOOST drink labels by "viewing [them] in an unreasonable manner" is irrelevant to determining what a "reasonable consumer" would think of those labels. *Moore*, 4 F.4th at 882. Because no reasonable consumer would think the BOOST labels promise a "novel diabetes treatment" (Dkt. 27 at 14), Plaintiffs' own, idiosyncratic interpretation of the labels is irrelevant.

Finally, Plaintiffs try to nitpick facts as a basis to distinguish a few of the cases cited in Nestlé's motion. (Opp. at 7–9.) But Plaintiffs do not address Nestlé's core point that "the logic of these cases demands dismissal of Plaintiffs' claims" because no reasonable consumer would expect the chocolate, vanilla, or strawberry-flavored BOOST drink to deliver impossible results by treating diabetes. (*See* Mot. at 5.) For example, just as the court in *Weiss v. Trader Joe's*, 838 F. App'x 302 (9th Cir. 2021), concluded that no reasonable consumer would believe bottled water could "balance[] her internal

3

bodily pH," no reasonable consumer would believe a nutritional drink could treat diabetes. *Id.* at 303. Similarly, this Court's determination in *Hodges v. King's Hawaiian Bakery West, Inc.*, 2021 WL 5178826 (N.D. Cal. Nov. 8, 2021), that reasonable consumers are not "selectively blind" and do not "ignore the ingredients list on a food package" applies with equal force here given that the BOOST drink labels clearly disclose the number of calories and amount of sugar in each bottle. *Id.* at *7; *see also Prescott v. Nestle USA, Inc.*, 2022 WL 1062050, at *4 (N.D. Cal. Apr. 8, 2022) (dismissal appropriate where plaintiffs fail to allege plausible deception or correct a deficient theory of deception from a prior order of dismissal).

Cases in the Ninth Circuit show that courts routinely reject deception-based claims where, as here, the plaintiff's theory relies on consumers believing a product can deliver the impossible. For example, in *Moore*, the court rejected the notion that consumers would believe a product label offering "100% New Zealand Manuka Honey" meant that 100% of the honey was derived from Maunka flower nectar. 4 F.4th at 881–86. The court reasoned that, even if "there is some ambiguity as to what '100%' means" on the label, "contextual inferences" such as the price of the product and "the impossibility of making a honey that is 100% derived from one floral source" mean that no reasonable consumer would adopt the interpretation offered by the plaintiff. *Id.* at 882–83. The same logic applies here: no reasonable consumer would adopt Plaintiffs' interpretation of the BOOST drink labels given that those labels are found on affordable, flavored nutritional drinks that never promise to deliver impossible results by treating or preventing diabetes.

Plaintiffs' dissection of the facts of these cases misses the bigger point—this Court has already held in the context of *these facts* and *these labels* that "it is not plausible that a reasonable consumer would be deceived" as Plaintiffs allege. (Dkt. 27 at 14.) Because Plaintiffs have offered nothing to change this conclusion and have instead opted to simply "disagree" with this Court's earlier determination (Opp. at 5), their third amended complaint should be dismissed with prejudice.

**B.    Plaintiffs Lack Standing to Sue Because They Have Not Alleged an Injury in Fact.**

The Court should also dismiss Plaintiffs' claims on the separate ground that they have not adequately alleged a concrete injury in fact under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Nor have Plaintiffs satisfied the statutory standing requirements of the GBL

4

(requiring plaintiffs to plead "actual injury," *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009)), UCL and FAL (requiring a plaintiff's injury to involve "lost money or property," *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011)), or CLRA (requiring plaintiffs to plead damage, such as "pecuniary damages," "certain types of transaction costs, [or] opportunity costs," *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009)).  (*See* Mot. at 7–8.)  While "Plaintiffs may establish a cognizable injury where they did not receive the full value of a purchase by alleging that [they] paid a 'price premium' due to the defendant's deceptive conduct," they must allege facts detailing the premium they paid, including "how much they paid for the [BOOST drinks]" or "how much they would have paid for it absent the alleged deception."  (Dkt. 27 at 14 (quoting *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019)).)

Plaintiffs argue that they adequately pleaded injury because they alleged that the BOOST drinks "were more expensive than the other choices they viewed," that other protein or nutritional drinks are priced lower than the BOOST drinks, and that they "would not have purchased" the BOOST drinks or paid the premium price had they known of their alleged deceptive advertising.  (Opp. at 9; TAC ¶¶ 72–77.)  Although some courts have held that such allegations are sufficient to confer standing (Opp. at 9–10), this Court has held that "announc[ing] that [Plaintiffs] have suffered injury based on their payment of a 'premium price' for a product that did not work as advertised and that they would not have paid for had they known the truth . . . is insufficient to adequately allege a cognizable injury" (Dkt. 27 at 14–15).

Despite having the benefit of this Court's ruling, Plaintiffs allege the same conclusory allegations in their third amended complaint that they "pa[id] the premium price" for the BOOST drinks "based upon the Products' diabetes-related representations."  (TAC ¶¶ 76–77.)  As in *Naimi*, where the Ninth Circuit rejected the plaintiffs' price premium theory because they "did not allege how much they paid for [canned espresso or] how much they would have paid for it absent the alleged deception," the Court should dismiss Plaintiffs' claims because they do not allege how much they paid for the BOOST drinks or how much they would have paid absent the alleged false advertising.  Rather than attempt to distinguish *Naimi*, Plaintiffs argue that district courts within this circuit have declined to follow it, citing *Kirchenberg v. Ainsworth, Nutrition, Inc.*, 2022 WL 172315 (E.D. Cal. Jan. 19, 2022).  (Opp. at

9–10.) But that is wrong; in *Kirchenberg*, where the plaintiff alleged that she paid a premium for mislabeled dog food, the court applied *Naimi* and held that the plaintiff alleged sufficient facts to support a price premium theory because she specifically alleged that she purchased the dog food multiple times and "paid '$25.50'" for it one time and "'$31.48' another time." *Kirchenberg*, 2022 WL 172315, at *3. Plaintiffs, by contrast, have not alleged how much they paid for the BOOST drinks.

Plaintiffs also attempt to distinguish their case from *Izquierdo v. Mondelez International, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016), in which the court similarly held that the plaintiffs did not adequately allege injury because they did not identify the purported premium they paid for sour candy at a movie theatre. Plaintiffs argue that, unlike the plaintiffs in *Izquierdo*, they alleged that they "paid a higher price for the BOOST drinks than they otherwise would have absent the false misrepresentations" and thus have sufficiently alleged injury in fact. (Opp. at 10.) But merely alleging that Plaintiffs paid a "higher price" still does not identify the actual premium or higher price that they paid.

Finally, Plaintiffs' price comparisons miss the mark because they compare BOOST Glucose Control drinks to standard nutritional drinks with entirely different nutritional compositions. *See* Compl. ¶ 74. Putting aside the fact that Plaintiffs do not explain where the alleged prices in their comparison chart come from, or whether those were the prices charged at the stores where *they* bought their BOOST drinks, the chart tells this Court "nothing about the value of" BOOST Glucose Control drinks because it doesn't provide a reasonably equivalent comparison product—*i.e.*, another high-quality nutritional drink with a similar formulation of reduced sugar and carbohydrates. *Izquierdo*, 2016 WL 6459832, at *7. Given that they do not provide an equivalent comparison product, Plaintiffs have not adequately pleaded that the price of the BOOST drinks is "inflated by [Nestlé's] allegedly misleading packaging" rather than simply the result of its unique nutritional composition when compared to standard nutritional drinks. *Id.*

In short, Plaintiffs cannot circumvent generally applicable pleading standards by chanting the phrase "price premium." Because that's all Plaintiffs have done here, they have not identified an injury that is sufficient to support either Article III or the statutory standing requirements of the laws they invoke.

**C.      Plaintiffs Have Not Pleaded Their Claims with Particularity.**

Plaintiffs do not contest that their claims are subject to "the heightened pleading standards of Rule 9(b)." (Opp. at 10.) To satisfy those heightened standards, Plaintiffs had the burden to "state with particularity . . . the who, what, when, where, and how of the misconduct charged." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). In other words, Plaintiffs had to "specif[y] *which* statements" they relied on rather than identifying "a range of statements . . . that [they] allege are misleading." *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8–9 (N.D. Cal. Jan. 4, 2018) (emphasis added).

Plaintiffs have had four tries at their pleading, and they still have not met this burden. As Plaintiffs concede, their reliance allegations are limited to a single copied-and-pasted sentence alleging that each Plaintiff "relied on Nestle's diabetes-related factual representations on the Products' label." (Opp. at 11; TAC ¶¶ 76–77.) But simply making a broad hand wave over all "factual representations" on a label is not sufficient to identify the *specific* alleged misrepresentation on which any of the Plaintiffs relied. *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (a plaintiff must "allege that she read and relied on a specific misrepresentation" to satisfy rule 9(b)). And to the extent Plaintiffs allege that they relied on claims that the BOOST drinks "control[] and manage[] glucose levels" (Opp. at 11), they cannot point to any *actual* language on the labels promising that the BOOST drinks will "control and manage glucose levels" because the labels don't say anything of the sort. Because Plaintiffs cannot point to any specific statements on the BOOST drink labels on which they relied to form their unreasonable beliefs, this Court should dismiss their claims as insufficient to meet the heightened pleading standard of Rule 9(b).

**D.      Plaintiffs Have Not Adequately Pleaded Allegations for Seeking Equitable Relief.**

Plaintiffs correctly "acknowledge that restitution is not available for their claims under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)," but they insist that they should be able to seek injunctive relief because they have no adequate remedy at law for their allegations of "future harm." (Opp. at 13.) That is wrong because Plaintiffs have not adequately pleaded they lack an adequate remedy at law, nor have they alleged that they'll suffer any future harm from Nestlé's alleged mislabeling of the BOOST drinks.

First, although *Sonner* involved restitution instead of injunctive relief, Plaintiffs do not dispute that "numerous courts in this circuit have applied *Sonner* to injunctive relief claims." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020); *Sonner*, 971 F.3d at 844. And under *Sonner*, plaintiffs seeking equitable relief must allege that they lack an adequate remedy at law, 971 F.3d at 844, rather than just that equitable relief is "of particular importance" to them (TAC ¶ 6). Here, Plaintiffs have not alleged that they lack an adequate remedy at law. (Mot. at 12.) In other words, even if Plaintiffs had been deceived by Nestlé's labeling on the BOOST drinks, they do not allege that they could not be made whole through money damages compensating them for the alleged premium price they paid for the BOOST drinks. The Court should dismiss Plaintiffs' request for injunctive relief for this reason alone.

Second, Plaintiffs have not alleged any "facts showing they would be misled by Nestlé's labeling and advertising in the future" to suggest they are at risk of suffering any future harm. *Prescott*, 2022 WL 1062050, at *6; *see also Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017) (to show "threat of future harm," plaintiffs must plausibly allege they "might purchase the product in the future" or that they "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"). Because Plaintiffs have not alleged that they want to or may purchase the BOOST drinks again in the future, their conclusory allegation that they "are likely to continue to be damaged by [Nestlé's] deceptive trade practices" is implausible. (TAC ¶ 100; Opp. at 13.) Accordingly, the Court should dismiss Plaintiffs' request for injunctive relief along with their request for restitution. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 145 (E.D.N.Y. 2018) (dismissing "request for injunctive relief" where the "plaintiff made no allegations of future harm"); *Prescott*, 2022 WL 1062050, at *6 (same).

E. **Plaintiffs' Third Amended Complaint Should Be Dismissed with Prejudice.**

Courts should not grant leave to amend where a plaintiff has "fail[ed] to cure deficiencies by amendments previously allowed" or where amendment would be futile. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010). Plaintiffs have already had multiple chances to plead their claims and yet they continue to assert that "a reasonable consumer would believe the [BOOST drinks] can prevent or treat diabetes" (Opp. at 4), even though this Court already rejected this

theory as a matter of law the last time around (*see* Dkt. 27 at 13 ("The product labels simply do not . . . represent that Boost Glucose Control will on its own treat diabetes . . . .").) Because Plaintiffs have not cured the deficiencies this Court identified and instead "strongly contest" this Court's decision (Opp. at 7), the Court should dismiss their claims with prejudice, *see Kennard v. Kellogg Sales Co.*, 2022 WL 4241659, at *8 (N.D. Cal. Sept. 14, 2022) (dismissal with prejudice appropriate where, despite being "given ample opportunity to allege additional facts in support," plaintiffs continue to assert a theory of deception that the court has already rejected "as implausible and otherwise not actionable"); *Prescott*, 2022 WL 1062050, at *6 (same).

### III.   CONCLUSION

Nestlé respectfully requests that the Court dismiss the third amended complaint in its entirety, with prejudice.

DATED:  October 10, 2022

By: /s/ Timothy Loose
CHRISTOPHER CHORBA, SBN 216692
PERLETTE MICHÈLE JURA, SBN 242332
TIMOTHY W. LOOSE, SBN 241037
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7746
Facsimile:   213.229.6746
CChorba@gibsondunn.com
PJura@gibsondunn.com
TLoose@gibsondunn.com

*Counsel for Defendant Nestlé Healthcare Nutrition, Inc.*