UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRUCE HORTI, et al.,

    Plaintiffs,

v.

NESTLE HEALTHCARE NUTRITION, INC.,

    Defendant.

Case No. 21-cv-09812-PJH

**ORDER OF DISMISSAL**

Re: Dkt. No. 32

Defendant's motion to dismiss the third amended complaint came on for hearing before this court on November 3, 2022. Plaintiffs appeared through their counsel, J. Hunter Bryson and Trenton R. Kashima. Defendant appeared through its counsel, Timothy W. Loose. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

This is a putative consumer class action regarding advertising of nutritional drinks. Plaintiffs are two California residents and one New York resident. Third Amended Complaint (Dkt. 29, "TAC") ¶¶ 7–9. Defendant Nestle HealthCare Nutrition, Inc. ("Nestle") is a Delaware Corporation with a headquarters in Bridgewater, New Jersey. TAC ¶ 10.

Defendant sells the Boost Glucose Control and Boost Glucose Control High Protein products in packaging that prominently display and advertise that the products

1  "help manage blood sugar," and are "designed for people with diabetes."[1]  TAC ¶¶ 1–3,
2  35–39.  Plaintiffs allege these claims misled them and other consumers because the
3  statements imply that the products control glucose—plaintiffs understood the statements
4  to mean that the products would have some affirmatively therapeutic impact on their
5  blood glucose levels or otherwise mitigate, treat, or prevent pre-diabetes or diabetes.
6  TAC ¶¶ 42–67.  Plaintiffs aver, however, that any representation that the products control
7  or manage glucose levels is false.  TAC ¶¶ 50–59.  Defendant's own clinical trial
8  concluded that the products were only associated with a lesser rise in glucose levels as
9  compared to another, unidentified nutritional drink, and this is only because the Boost
10 Glucose Control drinks contain less sugar.  TAC ¶¶ 50–56.  Plaintiffs allege that this is
11 neither what they understood based on defendant's representations, nor is it what a
12 reasonable consumer would understand from the representations.  TAC ¶¶ 57–59.
13 Plaintiffs allege that they specifically purchased the Boost products based on the
14 products' diabetes-related representations, including the representations that the
15 products control and manage glucose levels.  TAC ¶¶ 76–77.

16      Plaintiffs explain that their understanding of the products' impact is supported by
17 the context in which they're marketed.  Plaintiffs allege that defendant places the
18 products next to or with blood glucose monitoring systems both in stores and online.
19 TAC ¶¶ 45–48.  They say such placement only increases the likelihood that consumers
20 would understand that defendant's products control or manage blood glucose levels.  Id.

21      Plaintiffs add that the marketing of diabetes-related products is receiving new
22 attention.  In 2021, the Federal Trade Commission ("FTC") and Food & Drug
23 Administration ("FDA") sent several cease-and-desist letters to companies suspected of
24 advertising unproven treatments or cures for diabetes.  TAC ¶ 61 (citing
25 https://www.ftc.gov/news-events/news/press-releases/2021/09/ftc-sends-cease-desist-

---

[1] In the earlier complaints, plaintiffs also challenged a third product, Boost Glucose Control Max.  The court held in the order dismissing the SAC, however, that plaintiffs' claims based on that product label were preempted by the Food, Drug, and Cosmetic Act ("FDCA") because the label did not make a health claim.  Dkt. 27 at 7–10.

demands-10-companies-suspected-making-diabetes-treatment-claims-without).  For example, the FTC and FDA noted that a product named, in part, "DIABETES SUPPORT" combined with the statements "Diabetes is caused when the body either resists insulin or does not produce enough; either of which can lead to unbalanced blood glucose levels. Our diabetes support formula assists in keeping blood sugar at an optimum level. . . Diabetes Support helps to balance blood glucose levels" and "May help balance Blood Sugar Levels" were sufficient to make a disease claim.  TAC ¶ 61 (citing https://www.ftc.gov/system/files/warning-letters/warning-letter-ar-rahmah_pharm_llc.pdf).

Plaintiffs allege that Nestle markets the Boost products as specifically "designed for people with diabetes" in order to charge a price premium for their products.  TAC ¶¶ 68–74 (noting that defendant charges more for their Boost Contract products than other competing nutritional drinks).  Though plaintiffs do not contend they purchased from this source, on Nestle's own site, a six-pack of the Nestle Boost Original costs $7.95, while the Boost Glucose Control six-pack sells for $9.49, a premium of 19.3 percent. TAC ¶ 73.  Plaintiffs provide a list comparing the price per fluid ounce for the Boost products and five other nutritional drinks on the market to demonstrate that the Boost Glucose Control drinks are more expensive.  TAC ¶ 74.  Plaintiffs contend they relied on defendant's glucose- and diabetes-related misrepresentations and were injured by paying more for the products.

Procedural History

Plaintiffs filed the original complaint in this matter on December 20, 2021, and they filed the first amended complaint on the same day.  Dkt. 1, Dkt. 2.  The parties then sought leave of court to permit plaintiffs to file a second amended complaint, and leave was granted.  Dkt. 9, Dkt. 10.  Defendant moved to dismiss that second amended complaint.  Dkt. 15.  Following briefing and a hearing, the court granted dismissal with leave to amend.  Dkt. 27.

Plaintiffs filed the now-operative TAC at the beginning of August, bringing claims on behalf of California and New York subclasses of "[a]ll persons" in those states "who

purchased the [drinks] for personal use and not for resale." TAC ¶ 79. Plaintiffs assert the following claims against Nestle:

- Count I: violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (UCL);
- Count II: violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 (FAL);
- Count III: violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (CLRA);
- Counts IV and V: violations of New York General Business Law §§ 349 and 350 (together, GBL); and
- Count VI: unjust enrichment.

TAC ¶¶ 89–166.

In the instant motion, defendant charges that the TAC doesn't change enough from the earlier pleading. Defendant asks the court to dismiss the case for (1) failure to state a claim and (2) lack of standing.

## DISCUSSION

### A. Legal Standards

#### 1. Failure to State a Claim – Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be

4

accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  Id. at 679.  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Because plaintiffs' claims sound in fraud, their complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of

a the plaintiffs' claims. See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. Sparling, 411 F.3d at 1013. "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

### 2.     Lack of Article III Standing – Rule 12(b)(1)

The court has an ongoing obligation to ensure that it has subject matter jurisdiction such that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal courts are limited by the Constitution and Congress to only adjudicate cases involving diversity of citizenship or a federal question, or those to which the United States is a party. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 376–77 (2012); see also Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992) ("Federal courts have no power to consider claims for which they lack subject matter jurisdiction."). Rule 12(b)(1) of the Federal Rules of Civil Procedure also allows a defendant to raise the defense of lack of subject matter jurisdiction by motion. The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994).

A challenge to subject matter jurisdiction may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. Id. at 1039; Warth v. Seldin, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations," and may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. Safe Air for Everyone, 373 F.3d at 1039. Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the

allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989); see also Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

**B.    Analysis**

    **1.    Whether a Reasonable Consumer Would be Deceived by the Boost Product Label**

Plaintiffs' first three causes of action are brought under California statutes: the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA"). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits "any unfair, deceptive, untrue, or misleading advertising." Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 17500) (internal quotation marks omitted). Plaintiffs' fourth cause of action is brought under a New York statute, General Business Law § 349, which similarly prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

"Under the consumer protection laws of California [and] New York, . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." Moore v. Trader Joe's Co., 4 F.4th 874, 881 (9th Cir. 2021); accord Consumer Advocates v. Echostar Satellite Corp., 113 Cal.App.4th 1351, 1360 (2003). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." Williams, 552 F.3d at 938. "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse

7

the public." Id. (internal quotation marks omitted) (quoting Kasky v. Nike, Inc., 27 Cal.4th 939, 951 (2002)).  The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Lavie v. Procter & Gamble Co., 105 Cal.App.4th 496, 508 (2003).  Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id.; see also Moore, 4 F.4th at 881.

Courts considering the New York analogs to California's deceptive advertising claims (New York G.B.L. §§ 349, 350, plaintiffs' fourth and fifth claims here) apply the same objective assessment. Garadi v. Mars Wrigley Confectionery US, LLC, No. 119CV03209RJDST, 2021 WL 2843137, at *2 (E.D.N.Y. July 6, 2021) ("New York and California have adopted an objective definition of deception under which the alleged act must be 'likely to mislead [or deceive] a reasonable consumer acting reasonably under the circumstances.'" (citation omitted)); see also Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018).

Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." Ham v. Hain Celestial Grp., Inc., 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); see Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015).  "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." Ham, 70 F. Supp. 3d at 1193.

Here, the court again finds that a reasonable consumer would not find the Boost Glucose Control product label to be misleading.  Images of the challenged product labels reveal the full context of the statements, "glucose control," "helps manage blood sugar," and "designed for people with diabetes." TAC ¶ 36.  The labels on Boost Glucose Control describe them as "balanced nutritional drinks" and clearly disclose the number of carbohydrates and grams of sugar each drink contains in large print on the front of the label.  Cf. Williams, 552 F.3d at 939 ("reasonable consumers should [not] be expected to

8

1  look beyond misleading representations on the front of the box to discover the truth from
2  the ingredient list in small print on the side of the box"). These clear designations of the
3  nutritional contents on the front of the label, along with the description as nutritional
4  drinks, demonstrate that the products are a food that will necessarily impact glucose
5  levels, not a health supplement or a drug that would treat the chronic disease. Plaintiffs
6  thus fail to show that members of the public are likely to be deceived by defendant's
7  product labels. The court finds this is particularly true for the targeted consumer group,
8  persons with diabetes or prediabetes, who are aware of the relation between consuming
9  sugar and blood glucose levels.
10       The court previously held that the pleading fell short because the Boost product
11 labels would not lead reasonable consumers to believe that the over-the-counter drink
12 would treat or cure diabetes, a chronic disease for which there is no known cure. Dkt. 27.
13 To address this deficiency, plaintiffs added allegations in the TAC about (1) the context in
14 which the products are marketed and sold—they are included among diabetes medicines
15 and supplies on retail store shelves, not among bread and cereal (TAC ¶¶ 46–48); (2) a
16 2021 effort by the FTC and FDA to issue cease-and-desist letters to companies
17 advertising unproven diabetes treatments (TAC ¶ 61); and (3) the individual plaintiffs'
18 conditions and their beliefs about the potential impact of the Boost drinks based on the
19 labels (TAC ¶¶ 76–77). These new allegations do not move the needle, whether taken
20 together or separately.
21       First, in the court's order of dismissal, it stated, "No reasonable consumer of the
22 targeted consumer group would expect a novel diabetes treatment to simply appear on
23 grocery shelves out of the blue." Dkt. 27 at 14. Plaintiffs' new allegations about the
24 location of the products on store shelves and websites appear directed at this point.
25 They allege in part, "Although the Products are sold in stores that also sell groceries, the
26 Products are not sold in the grocery aisles, without [sic] other 'low sugar' drinks. They are
27 sold in the health and nutritional supplement sections, which adjoin aisles selling over-
28 the-counter medications, and other FDA-approved treatments, and diabetes diagnostic

9

tests." TAC ¶ 48. Plaintiffs state in conclusory fashion that Nestle chooses its placement of the products (TAC ¶ 45), but they provide no additional support for the contention. They accordingly fail to overcome reasoned authority that third-party retailers' placement of products cannot be used to justify a claim of deception unless a plaintiff can plausibly "allege that defendant controls third parties that stock grocery stores and other locations." Cheslow v. Ghirardelli Chocolate Co., 445 F. Supp. 3d 8, 21 (N.D. Cal. 2020); see also Parent v. Millercoors LLC, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (dismissing as implausible a claim that the defendant controlled product placement in third-party stores). The context in which products are marketed and sold is indeed relevant to the assessment of whether product labels are deceptive, but plaintiffs fail to plausibly allege that Nestle held control over placement of the products. The placement of the products thus does not sway the assessment.

Second, plaintiffs point to FDA and FTC cease-and-desist letters regarding sham diabetes treatments to demonstrate the breadth of misleading marketing in this field. TAC ¶ 61. Plaintiffs allege the federal agencies took issue with "Diabalance Diabetes Supplement" and another product described as a "diabetes support formula," which claim to "keep[] blood sugar at an optimum level" as a part of a "diabetic supplies kit." TAC ¶ 61. The Boost products have not been the subject of such a letter, however. Plaintiffs' reference to these letters has the contrary effect than the one they intend—the lack of a similar letter to Nestle weakens an inference that the representations on the Boost labels advertise an unproven treatment. The letters from the federal agencies to other companies for their misleading advertisements do not support a conclusion that reasonable consumers would find these Boost labels misleading.

Third, plaintiffs aver they "sufficiently allege *they believed* the Products would treat their prediabetes and diabetes." Dkt. 34 at 9 (emphasis added); see also TAC ¶¶ 76–77. That is not the standard, however. Rather, "the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Ebner, 838 F.3d

at 965 (internal quotation marks and citation omitted). That these individual plaintiffs were duped by the alleged misrepresentations on the Boost labels does not lead to the conclusion that a significant portion of persons with prediabetes or diabetes would similarly believe that a nutritional drink would control a chronic disease.

In sum, plaintiffs previously failed to establish that a reasonable consumer would be misled by the Boost labels, and the TAC's additional allegations do not lead to a different outcome. The court finds that plaintiffs still fail to establish that the Boost labels contain a misrepresentation that would mislead a reasonable consumer of the target group.

### 2. Whether Plaintiffs Have Adequately Alleged Standing Based on a Price-Premium Theory

The Ninth Circuit has "consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." McGee v. S-L Snacks Nat'l, 982 F.3d 700, 706 (9th Cir. 2020). Plaintiffs may establish a cognizable injury where they did not receive the full value of a purchase by alleging that they paid a "price premium" due to the defendant's deceptive conduct. See Izquierdo v. Mondelez Int'l Inc., 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016). "The bare recitation of the word 'premium' does not adequately allege a cognizable injury." Naimi v. Starbucks Corp., 798 F. App'x 67, 70 (9th Cir. 2019). In Naimi, the Ninth Circuit held that although the plaintiffs alleged that they paid a price premium for canned espresso, they did not allege an injury in fact because they "did not allege how much they paid for the beverage, how much they would have paid for it absent the alleged deception, . . . or any other details regarding the price premium." Id. at 70.

In the court's order dismissing the SAC, it determined that plaintiffs failed to allege a cognizable injury to support standing. Dkt. 27 at 14–15. Defendant now argues that plaintiffs still lack Article III standing because, while they have added some allegations about a "price premium," they still haven't described how much they paid for the Boost

11

drinks or how much they would have paid absent the alleged deception.

Here, plaintiffs allege generally that Nestle sells Boost Glucose Control drinks at a 19.3% premium over Boost Original drinks, and that the Boost Glucose Control drinks are more expensive per ounce than other nutritional drinks.  TAC ¶¶ 73–75.  The allegations that these disparities exist on defendant's own website demonstrates that there exists some semblance of a price premium beyond plaintiffs' bare recitation of the term.  TAC ¶ 73.  However, plaintiffs still do not allege facts that relate to their particular purchases.  Regarding plaintiff Bruce Horti, the TAC only suggests, "the [Boost] Products were more expensive than other choices he viewed," without describing cheaper products he purchased previously or since.  TAC ¶ 76.  Plaintiff Sandra George previously purchased low-sugar and sugar-free protein drinks before making the switch to Boost Glucose Control drinks, but the TAC does not suggest that there existed any difference in price between the products she purchased.  TAC ¶ 77.  Lastly, the TAC more concretely describes the October 12, 2021, purchase of the products by plaintiff Jeanette Craig, but here too, the allegation remains general: "Although the [Boost] Products were more expensive than other choices she viewed, Ms. Craig chose to pay the premium price based upon the Products' diabetes-related representations."  TAC ¶ 77.  Plaintiffs argue that this pleading is sufficient when compared to other instances of price premium injury; however, the allegations in those cases were more specific.  See, e.g., Kirchenberg v. Ainsworth, Pet Nutrition, Inc., No. 220CV00690KJMDMC, 2022 WL 172315, at *3 (E.D. Cal. Jan. 19, 2022) (where the court found sufficient alleged injury to support standing where plaintiff alleged "she 'purchased the Just 6 products' on three occasions from local retailers and online and paid '$25.50' for one bag and '$31.48' another time for the same product").  These plaintiffs do not state how much they paid for the Boost drinks.  They do not state how much they would have paid absent the allegedly deceptive labels.  Plaintiffs here simply do not provide enough detail beyond the barest of descriptions of their injury to support standing.  The court also dismisses the TAC on this basis.

### 3. Whether Leave to Amend is Appropriate

Where a dismissal is warranted, a court "shall freely" give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). If an amended complaint would be futile, a court may properly deny leave. See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892–93 (9th Cir. 2010); Foman v. Davis, 371 U.S. 178, 182 (1962).

Nestle requests that the court dismiss the TAC without leave to amend. Given that plaintiffs were already afforded an opportunity to amend their pleading, the court finds that further amendment would be futile. The court denies leave to file a fourth amended complaint.

## CONCLUSION

For the reasons stated above, the court GRANTS defendant's motion. The TAC is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: November 7, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge