Christopher Chorba, SBN 216692
  CChorba@gibsondunn.com
Perlette M. Jura, SBN 242332
  PJura@gibsondunn.com
Timothy W. Loose, SBN 241037
  TLoose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7746

Al Kelly (*pro hac vice*)
  AKelly@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1801 California Street Suite 4200
Denver, Colorado 80202
(303) 298-5700

*Attorneys for Defendant Nestlé Healthcare Nutrition, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: NESTLE BOOST NUTRITIONAL DRINK LITIGATION | Case No. 3:21-cv-09812-JSC<br><br>**DEFENDANT NESTLÉ HEALTHCARE NUTRITION, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO THE NAMED PLAINTIFFS**<br><br>Date:     April 10, 2025<br>Time:     10:00 a.m.<br>Location: Courtroom 8 – 19th Floor<br>Judge:    Hon. Jacqueline Scott Corley<br><br>Date Action Filed: December 20, 2021 |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiffs were not deceived or injured by the Boost Glucose Control labels. ................... 2

        1. Plaintiff Sandra George. ........................................................................................... 3

        2. Plaintiff Bruce Horti. ................................................................................................ 4

        3. Plaintiff Steven Owen. ............................................................................................. 6

    B. Plaintiffs' "misbranding" theory cannot survive summary judgment................................ 7

        1. Plaintiffs cannot sustain a lawsuit based solely on a regulatory violation. .................. 7

        2. The Boost Glucose Control labels do not make "health claims" under the FDCA. ..... 8

    C. Plaintiffs' evidentiary objections are meritless. ............................................................... 10

III. CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baghdasarian v. Amazon.com Inc.*,
458 F. App'x 622 (9th Cir. 2011) ................................................................................................2

*Bates v. Rezentes*,
731 F. Supp. 3d 1119 (N.D. Cal. 2024) ....................................................................................10

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................................................................................11

*Doe v. SuccessfulMatch.com*,
70 F. Supp. 3d 1066 (N.D. Cal. 2014) ...................................................................................3, 4

*Downey v. Pub. Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) .................................................................................................4, 8

*Faulk v. Sears Roebuck & Co.*,
2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ............................................................................3

*Iglesia Ni Cristo v. Cayabyab*,
2020 WL 1531349 (N.D. Cal. Mar. 31, 2020) ..........................................................................11

*Khasin v. Hershey Co.*,
2014 WL 1779805 (N.D. Cal. May 5, 2014) ..............................................................................4

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) .............................................................................................8

*Major v. Ocean Spray Cranberries, Inc.*,
2015 WL 859491 (N.D. Cal. Feb. 26, 2015) ..............................................................................3

*Major v. Ocean Spray Cranberries, Inc.*,
690 F. App'x 564 (9th Cir. 2017) ..........................................................................................2, 5

*McGucken v. Triton Elec. Vehicle LLC*,
2022 WL 2101725 (C.D. Cal. Mar. 21, 2022) ..........................................................................11

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ......................................................................................................5, 6

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,
992 F.3d 893 (9th Cir. 2021) ......................................................................................................1

*Red v. Kraft Foods, Inc.*,
2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ...........................................................................3

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................................7

**TABLE OF AUTHORITIES**

Page(s)

*Smargisso v. Air & Liquid Sys. Corp.*,
  2024 WL 4297680 (N.D. Cal. Sept. 26, 2024) .............................................................................10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................................................................................7

*UL LLC v. Space Chariot Inc.*,
  250 F. Supp. 3d 596 (C.D. Cal. 2017) ..........................................................................................11

*Weiss v. Trader Joe's Co.*,
  838 F. App'x 302 (9th Cir. 2021) ...............................................................................................5, 6

*Whitaker v. Thompson*,
  353 F.3d 947 (D.C. Cir. 2004) .......................................................................................................8

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
  2021 WL 5053087 (N.D. Cal. Nov. 1, 2021) .................................................................................7

**Other Authorities**

*Qualified Health Claims: Letter of Enforcement Discretion - Chromium Picolinate and Insulin
  Resistance*, available at https://tinyurl.com/3jssa74x (last accessed Mar. 12, 2025) ........................9

# I. INTRODUCTION

Nestlé Healthcare Nutrition, Inc. ("Nestlé") moved for summary judgment on the basis that Plaintiffs Sandra George, Bruce Horti, and Steven Owen's deposition testimony showed they were not duped into buying Boost Glucose Control nutritional drinks. In addition to Plaintiffs' own sworn admissions, Nestlé offered unrebutted scientific studies showing that Boost Glucose Control is a better choice for people with diabetes because it produces a significantly lower glucose response when compared to standard nutritional drinks. Mot. 9–20. Rather than offer evidence to refute any of these facts, Plaintiffs ask the Court to focus instead on the allegations of their complaint and conclude that they have stated a plausible claim for relief. *E.g.*, Opp. 2, 6. That may have worked earlier in the case. But it does not work now. Plaintiffs must "go beyond the pleadings" to show that their case can survive summary judgment. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). Plaintiffs have not, and cannot, point to actual evidence showing that any one of them were deceived or harmed from buying Boost Glucose Control, and they admit that the summary-judgment motion should be granted on their claims for injunctive relief. *See* Opp. 24 n.11.

Plaintiffs' opposition is most notable for the evidence it does *not* address. The opposition never explains how Sandra George could have possibly been deceived when she admits she knew how Boost affected her blood sugar and still continued to buy the drink for years after filing this lawsuit. *Compare* Mot. 14–16 *with* Opp. 14–16. Likewise, although the opposition repeats Bruce Horti's testimony that he expected Boost to have some "benefit," Opp. 10–14, it never addresses the fact that Mr. Horti testified the only "benefits" he expected were "less of a spike" in his blood sugar and the use of an ingredient like chromium—which the Boost drinks indisputably delivered on both counts, Mot. 10, 16–18. And although the opposition claims Mr. Owen was deceived because he thought the drinks had zero sugar after he "looked at the [Boost] label," Opp. 17, it does not address his unequivocal testimony that he did not look at "anything else on the label other than just the name," or his subsequent admission that if he had looked at the bold-font, front-label disclosure that the drinks contain sugar, he would have known that the drinks would have some impact on his blood-sugar levels, Mot. 12, 18–20.

Plaintiffs' only attempt to find evidence beyond the allegations of their complaint is pointing to marketing materials that none of the Plaintiffs ever saw and internal market research at Nestlé relating

to what *other* consumers *might* have thought when they saw the Boost labels. *See* Opp. 4–8. But this motion is not about what other consumers or Nestlé might think. It is about what the named Plaintiffs *themselves* thought of the Boost labels, and whether *they* were deceived. Because Plaintiffs did not think the things that the complaint alleges a "reasonable consumer" would think, they were not deceived when making their purchases, and summary judgment is warranted.

## II. ARGUMENT

### A. Plaintiffs were not deceived or injured by the Boost Glucose Control labels.

To prevail on any of their claims, Plaintiffs must show not only that a "reasonable consumer" would be deceived by the Boost labels, but also that they were *personally* deceived and harmed by those labels. *E.g.*, *Baghdasarian v. Amazon.com Inc.*, 458 F. App'x 622, 623 (9th Cir. 2011) (affirming summary judgment where the plaintiff did not lose money "as a result of" the alleged deception); *Major v. Ocean Spray Cranberries, Inc.*, 690 F. App'x 564 (9th Cir. 2017) (same).

As Nestlé explained in its motion, Plaintiffs' testimony shows that, regardless of what a hypothetical "reasonable consumer" might think, *the Plaintiffs themselves* were not personally deceived or harmed by buying Boost because, among other things, they all (1) expressly disavowed their lawyers' allegation that Plaintiffs thought Boost would make their blood sugar "better"; (2) admitted to knowing that any drink containing sugar will necessarily cause their blood sugar to rise; (3) admitted that the Boost Glucose Control front label disclosed in large font that the drinks contain sugar; and (4) agreed that the benefit Boost indisputably *does* provide—a lower and more gradual rise in blood sugar when compared to standard nutritional drinks—benefitted them, and is generally helpful for all people living with diabetes. Mot. 9–20.

Plaintiffs try to distract from the evidence about their own views and own understanding by focusing instead on "whether a reasonable consumer would be deceived by the product label." Opp. 17; *see also id.* at 2, 6, 11–14. But that is not the issue raised in Nestlé's motion. Nestlé seeks summary judgment based on named Plaintiffs' *own individual* experiences. To defeat this motion, Plaintiffs must show that *they* were deceived and *they* were harmed. Pointing to what other hypothetical reasonable consumers might have thought does nothing to rebut Plaintiffs' testimony demonstrating that they were not personally deceived by the Boost labels.

### 1. Plaintiff Sandra George.

When Ms. George bought Boost, she said "all I thought" was that drinking Boost "wasn't going to make [my blood sugar] spike." Dkt. 84-6 at 109:3–4. Ms. George monitored her blood sugar after drinking Boost and found that the drinks lived up to that expectation: out of the hundreds of times she drank Boost, her blood sugar never rose above her target healthy range. *Id.* at 38:19–23. Evidently satisfied with how the drink was affecting her blood sugar, Ms. George continued to buy and consume hundreds of bottles of Boost for more than two years after she was named as a plaintiff in this lawsuit. *Id.* at 45:3–7; 46:19–47:6; 59:6–60:15; 143:4–25 (testifying that she drank Boost Glucose Control "twice a day, every day" for multiple years).

There is no way for Ms. George to establish a viable claim for deception given this testimony. The impact that the Boost drinks had on her blood sugar "comported with [her] own understanding of the message" on the label. *Major v. Ocean Spray Cranberries, Inc.*, 2015 WL 859491, at *5 (N.D. Cal. Feb. 26, 2015) (granting summary judgment). And she cannot claim to have been deceived given that she "continued to purchase" Boost for years "even after [she] became aware of" the supposedly misleading nature of the labels. *Faulk v. Sears Roebuck & Co.*, 2013 WL 1703378, at *9 (N.D. Cal. Apr. 19, 2013); *accord Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("If Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under either the UCL or the CLRA."); *Red v. Kraft Foods, Inc.*, 2011 WL 4599833, at *12 (C.D. Cal. Sept. 29, 2011) (same).

Plaintiffs' opposition says nothing about the fact that Ms. George bought hundreds of bottles Boost for years after filing a complaint in which her lawyers claimed she was deceived and "would not have purchased the Products" absent the alleged deception. Dkt. 1 ¶ 160. Their only response is that Ms. George's testimony shows she "relied on" the labels. Opp. 14–16. But a plaintiff suffers no harm by relying on labels if *she was not deceived* by those labels. And here, Ms. George's testimony and continued purchases show she knew exactly what she was getting when she bought Boost: a nutritional drink that contained enough nutrition and calories to serve as a meal replacement, which would cause a more modest and gradual rise in blood sugar when compared to standard nutritional drinks. Plaintiffs

cannot cobble together cherry-picked snippets from the deposition transcript to claim Ms. George was deceived when both her actions and words demonstrate just the opposite.

### 2.     Plaintiff Bruce Horti.

Mr. Horti has no claim for three main reasons, and none of Plaintiffs' attempts to confuse the issues can overcome his clear testimony showing a lack of deception or injury.

*First*, Mr. Horti testified in no uncertain terms that he "d[id]n't recall looking at the label" at the time he bought Boost, and could at most "speculat[e]" about what the labels look like. Dkt. 84-7 at 116:9–117:6. Well-established case law reinforces the common-sense proposition that a plaintiff cannot claim to have been deceived by labels where he "testified that he could not recall looking at [the] labels." *Khasin v. Hershey Co.*, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014) (granting summary judgment); *see also, e.g.*, *Doe*, 70 F. Supp. 3d at 1082; Mot. 16–17.

Plaintiffs try to walk back Mr. Horti's testimony by pointing to exactly the kind of "speculation" Mr. Horti warned about: a statement later in the deposition, after he had been shown images of the current Boost labels shown in the complaint, that he could "remember the label at various times." Opp. 10; Dkt. 84-7 at 248:17–249:5. But Mr. Horti never could articulate what label or time period he remembered, and this off-hand comment made after looking at a photo of a current label from the complaint cannot save Mr. Horti's claims. To establish that he relied on the Boost labels, Mr. Horti must have looked at those particular labels, and relied on them, when he bought Boost—not at some later time. *See Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020). Because Mr. Horti's clear testimony is that he cannot "recall looking at the label" when he bought Boost, he has no valid claim. Dkt. 84-7 at 116:9–117:6.

*Second*, Mr. Horti has no claim because the only benefit he expected when he bought Boost was that it would cause "less of a spike" in his blood sugar and would feature a "special ingredient"—namely, chromium. Dkt. 84-7 at 28:13–17, 132:1–14, 132:23–133:5, 157:14–17. Multiple clinical studies, which are not rebutted by Plaintiffs' opposition, show that Boost Glucose Control does cause "less of a spike" in blood sugar. Mot. 3–4. And the drinks undeniably contain substantial amounts of chromium. *Id.* at 6. In other words, Mr. Horti's expectations were satisfied and his "own testimony

established that [he] understood" what the drinks would do. *Major*, 690 F. App'x at 565. He thus cannot claim to have been deceived.

In response, Plaintiffs say Mr. Horti "unequivocally testified" that Boost wasn't actually "designed for people with diabetes" or didn't otherwise have the effects he wanted. Opp. 12. That drastically oversells what Mr. Horti actually said. At most, he testified that he was "not so sure" about some of the statements, Dkt. 84-7 at 205:9–10, and admitted that this was just "a suspicion," *id.* at 203:13–204:4. Likewise, although it's true that Mr. Horti said he thought the drinks would "control" his glucose, Opp. 10, he clarified that all he meant by "control" was that he expected a drink with "reduc[ed] sugar" that would "reduce the amount of insulin required"—a very different understanding from the one his counsel articulated in the complaint:

> Q: And I know you're not a doctor, but what do you . . . believe controls your glucose?
>
> A: What do I do [sic]? Well, again, reducing sugar would be part of it. And again, hopefully there's other things in there that help, too, that . . . .
>
> Q: Okay.
>
> A You know, trying to reduce the amount of insulin required be the overall goal.

Dkt. 84-7 at 209:5–211:12. A "reduc[ed] sugar" drink that would "reduce the amount of insulin required" was exactly what Mr. Horti got when he bought and drank Boost. *See* Mot. 3–4.

*Third*, Mr. Horti does not have a valid claim because he ignored context on the label, including the amount of sugar in each drink, the ingredients list, and the asterisk and back-label statement that the drinks produce a "lower blood sugar response vs. a standard nutritional drink in people with type 2 diabetes." Mot 17–18; Dkt. 84-7 at 28:5–28:21, 52:7–13, 53:7–10, 54:3–13. Because a plaintiff cannot base a consumer-deception claim on ignoring "all the information available to consumers and the context in which that information is provided and used," Mr. Horti's decision to ignore relevant context means he has no valid claim. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

Plaintiffs respond by claiming that it is enough that Mr. Horti was not "oblivious to the name of the product." Opp. 11. But a product name must be assessed in "the full context," rather than "cherry-pick[ing] discrete statements to prove deception." *Weiss v. Trader Joe's Co.*, 838 F. App'x

302, 303 (9th Cir. 2021). And contrary to what Plaintiffs argue, the back label statements plainly are relevant because they make clear that the drinks will not always make blood sugar "better," but instead will cause a "blood sugar response"—just one that is "lower" than a "standard nutritional drink." That disclosure is directly contrary to Plaintiffs' allegations in the complaint and instead aligns with Mr. Horti's expectation that the drinks would cause "less of a spike" in his blood sugar.

### 3. Plaintiff Steven Owen.

Mr. Owen clearly testified that, when he bought Boost, he did not look at the phrase "helps manage blood sugar," the asterisk on the front label, any of the ingredients, the bold-font and front-label disclosure that the drinks have sugar, or any other information on the product label or the Amazon page on which he bought the drinks. The *only* thing he looked at the only time he bought Boost was the name of the product. Dkt. 84-8 at 67:13–22 ("Q: Did you look at anything else on the label other than just the name? A: Just the name."); *see also id.* at 94:15–21, 97:15–20, 110:7–25.

Mr. Owen conceded that this blinkered review was the cause of his confusion about Boost. Mr. Owen understands that "[s]tuff with sugar in it raises" his blood sugar. Dkt. 84-8 at 62:8–17. And he understands that there is no product that could possibly have "sugar in it that won't make your blood sugar go up at all." *Id.* at 95:4–6; 115:21–23. He agreed that the front labels of Boost Glucose Control show that each bottle contains four grams of sugar. *Id.* at 94:12–13. And after seeing the label, he agreed that he "no longer think[s] it will keep your blood sugar levels steady." *Id.* at 100:25–101:3. The only reason he ever thought otherwise was because he did not "look at this front label" disclosure showing the amount of sugar before buying Boost, nor at the "ingredient list," "nutrition facts," or any other information besides the product name. *Id.* at 94:15–95:15; 67:16–22; 84:11–25; 97:15–20. Mr. Owen cannot base his claim on ignoring prominent front-label information that even he admits was relevant to how he would have determined what Boost does to blood sugar. *See Moore*, 4 F.4th at 882; *Weiss*, 838 F. App'x at 303.

Plaintiffs try to dismiss all this by saying that when Mr. Owen made his only purchase, he "looked at the label." Opp. 17. That is not in dispute. But it is not enough to say "I looked at the label." That Mr. Owen viewed some part of the label the one time he bought Boost does not mean that he can base a claim on willfully ignoring key contextual clues relating to how the drinks affect blood

sugar, especially when the relevant information was printed directly on the front of the package in bold and prominent font.

Faced with these insurmountable facts, Plaintiffs again pivot to "whether a reasonable consumer" would be deceived by the Boost labels. Opp 17. But again, that question is separate from the question presented in this motion: whether Mr. Owen has a deception claim, individually. Plaintiffs' analogy to *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012), doesn't change the analysis, as that decision dealt with a dispute over whether the plaintiffs' alleged purchases were sufficiently documented, since they didn't have receipts. Whether Mr. Owen has documentation showing he bought Boost is not at issue in this motion. And *Ries* does nothing to suggest that a plaintiff like Mr. Owen can bring claims for deception when his clear and uncontradicted testimony establishes that he ignored front-label information that even he admits undermines his entire claim.

**B.     Plaintiffs' "misbranding" theory cannot survive summary judgment.**

**1.     Plaintiffs cannot sustain a lawsuit based solely on a regulatory violation.**

Plaintiffs' "FDCA violation theory" is, by its own terms, premised entirely on an alleged regulatory or statutory violation. Opp. 22. But as demonstrated above, none of the named Plaintiffs have a valid claim for deception or injury stemming from their purchases of Boost. Accordingly, their lengthy (and inaccurate) discussion of FDA regulations and how they apply to the Boost labels is beside the point; a "lawsuit may not proceed" where the "plaintiff has not suffered any physical, monetary, or cognizable intangible harm," and "merely seeking to ensure a defendant's 'compliance with regulatory law'" is not a cognizable harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427–28 (2021); *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 2021 WL 5053087, at *4 (N.D. Cal. Nov. 1, 2021), *aff'd*, 62 F.4th 517 (9th Cir. 2023) (an alleged injury "must consist of more than a statutory violation"). Because Plaintiffs have no valid claims for deception or injury, their "misbranding" theory does not provide a basis for this case to continue.

In arguing otherwise, Plaintiffs say that a statutory violation results in "an automatic economic injury." Opp. 23. But the Supreme Court has flatly "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at

426. Plaintiffs' argument also contravenes state law. Anyone bringing a claim "aimed solely at recovering restitution under the [California] unfair competition law" must demonstrate both deception and resulting harm—not a mere statutory violation, standing alone. *Downey*, 44 Cal. App. 5th at 1115. The same rule applies under New Jersey law. *See Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (a plaintiff must prove a "causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss"). Plaintiffs point to no decisions that would override these fundamental rules and create "automatic" injury for any statutory violation in the labeling context. And because an illusory automatic injury is all Plaintiffs can point to here, their "mislabeling" theory cannot proceed.

### 2. The Boost Glucose Control labels do not make "health claims" under the FDCA.

The Court need not proceed past the threshold standing issue, but if it does, Plaintiffs have no claim under their mislabeling theory because the Boost Glucose Control labels do not violate FDA regulations. Notwithstanding their invocation of FDA enforcement actions with regard to other companies' products, *e.g.* Opp. 21–22; Dkt. 59 ¶ 62, Plaintiffs do not and cannot dispute that the FDA has *never* raised any issues related to supposed health claims on the Boost Glucose Control labels, notwithstanding the fact that the drinks have been sold nationwide for well over a decade, Dkt. 84-1 at 216:8–11. Plaintiffs' attempt to find violations of FDA regulations that have evidently eluded the FDA itself falls flat because it misreads the FDA's "health claims" regulation and relies on a theory that each of the three named Plaintiffs expressly disavowed in their deposition.

As both the FDA and courts have clarified, "health claims" do not cover statements about "treatment of a person's existing disease," but instead only "claims of prevention." *Whitaker v. Thompson*, 353 F.3d 947, 951 (D.C. Cir. 2004); *see also* Mot. 21 (citing FDA guidance). In fact, Plaintiffs themselves cite multiple sources confirming that health claims are those that claim to "reduce the risk of *developing* a disease or health-related condition." Opp. 19 (emphasis added). None of the statements on the Boost Glucose Control labels suggest that the drinks will reduce the risk of developing diabetes. To the contrary, the labels make clear that the drinks are designed for people who *already have* diabetes. The labels thus do not make any health claims.

Perhaps recognizing this issue, Plaintiffs pivot and claim that, rather than reducing the risk of developing diabetes, the Boost labels imply they are "beneficial" for "*treating* diabetes." Opp. 19 (emphasis added). But even putting aside the fact that this has nothing to do with reducing the risk of *developing* diabetes, this claim is directly contrary the actual testimony of the three named Plaintiffs. Each of the named Plaintiffs made clear they did not think Boost could be used to "treat" or "prevent" diabetes. Mot. 9–13. Ms. George didn't think Boost would treat diabetes, and instead just "thought it wasn't going to make [blood-sugar levels] spike." Dkt. 84-6 at 108:13–109:10, 125:21–126:19. Mr. Horti likewise thought nothing more than that Boost would cause "less of a spike" in his blood sugar. Dkt 84-7 at 132:1–14, 132:23–133:5. And when Mr. Owen was asked if he thought the drinks "would treat diabetes," "would prevent diabetes," or "would mitigate diabetes," each time he responded with an unequivocal "No." Dkt. 84-8 at 144:23–145:11. Plaintiffs cannot pursue a theory of regulatory violations that they have rejected in sworn testimony.

Plaintiffs' analogies to a twenty-year-old FDA determination related to different claims about chromium picolinate do not change this analysis. Opp. 21–22. The claims at issue there—which "characterize[ed] the relationship between the consumption of chromium picolinate and a reduced risk of" eight different health conditions, ranging from "cardiovascular disease" to "type 2 diabetes" to "kidney disease"—are totally different from anything said on the Boost Glucose Control labels, which do not promise any such results. *See Qualified Health Claims: Letter of Enforcement Discretion - Chromium Picolinate and Insulin Resistance*, available at https://tinyurl.com/3jssa74x (last accessed Mar. 13, 2025). Moreover, unlike the statements on Boost labels, the "health claims" the FDA previously rejected were expressly about "reduced risk" of developing health conditions, which is never mentioned or implied on the Boost labels. And Plaintiffs' claim that Nestlé's mention of chromium in its motion for summary judgment "is evidence of the misleading and unlawful nature of [its] business practices" is wholly disingenuous. Opp. 22. Nestlé mentioned the presence of chromium in its brief only because Plaintiff Horti testified that he though chromium provided benefits for diabetics and he hoped that Boost contained chromium—which it does. *See* Mot. 11, 17. The only place chromium is mentioned on the packaging is in the federally-mandated nutrition facts panel, where its amount and percentage of the recommended daily value is given. That Plaintiffs are continuing to invent new

1   theories of allegedly "misleading" business practices that contradict their own testimony shows they
2   are grasping at straws.

3         In sum: Plaintiffs have no basis to step in as enforcers of FDA regulations because they have
4   not suffered any injury and do not have a valid grounds for a claim. And even beyond this threshold
5   standing issue, they have not discovered a glaring regulatory violation that has escaped the FDA's
6   attention for decades, and have presented no viable explanation for how the Boost labels violate FDA
7   regulations. Plaintiffs' "misbranding" theory thus provides no basis for this case to continue.

**C.     Plaintiffs' evidentiary objections are meritless.**

At summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Bates v. Rezentes*, 731 F. Supp. 3d 1119, 1127–28 (N.D. Cal. 2024). Instead, a party need only "set out facts that it will be able to prove through admissible evidence" at trial. *Smargisso v. Air & Liquid Sys. Corp.*, 2024 WL 4297680, at *1 (N.D. Cal. Sept. 26, 2024).

Plaintiffs object to two categories of evidence submitted alongside Nestlé's motion: (1) documents related to clinical trials studying the effects of Boost Glucose Control on blood sugar and (2) a printout of an archived version of the Amazon page through which Plaintiff Owen purchased Boost Glucose Control in 2022, obtained through the Wayback Machine. Neither objection has merit.

*First*, Plaintiffs' objections to the clinical-trial documents make no sense because Plaintiffs themselves submit much the same evidence alongside their opposition, including an identical copy of a document to which they now object. *Compare* Dkt. 84-11 *with* Kashima Decl., Ex. D at 64. Moreover, the sole proposition for which Nestlé cited these studies—that Boost Glucose Control is clinically proven to lead to a lesser and more gradual rise in blood sugar than a standard nutritional drink, Mot. 3–4—is not something Plaintiffs dispute. *See* Compl. ¶ 5; Opp. 5, 13.[1] Should Nestlé need to establish that fact at trial, it will be able to do so through the same evidence Plaintiffs have offered in opposition: testimony from a Nestlé company representative who was involved in the clinical trials.

---

[1] Although Plaintiffs don't dispute this fact, they appear to misunderstand the findings of those studies, claiming the studies show that Boost Glucose Control's effects are all related to it being "low calorie." Opp. 2. But the study they cite in opposition clarifies that it was "isocaloric," meaning all participants were given the same number of calories. Kashima Decl., Ex. D at 64; Dkt. 84-11. In other words, the studies show that, even when controlling for the number of calories consumed, Boost Glucose Control causes a lower and more gradual rise in blood sugar than a standard nutritional drink.

1  *See* Kashima Decl., Ex. D. Nothing more is required under the rules of evidence at this stage. *Smargisso*, 2024 WL 4297680, at *1.

*Second*, the kinds of hearsay and authentication challenges Plaintiffs raise to the printout from the Wayback Machine are regularly overruled by courts at the summary-judgment stage. *See, e.g.*, *McGucken v. Triton Elec. Vehicle LLC*, 2022 WL 2101725, at *3 (C.D. Cal. Mar. 21, 2022) (rejecting evidentiary objections to a "screenshot of the Wayback Machine's results"). That is because a "screenshot of online content may be authenticated by testimony of the person who took the screenshot, so long as the screenshot also contains circumstantial indicia of authenticity." *Iglesia Ni Cristo v. Cayabyab*, 2020 WL 1531349, at *4 (N.D. Cal. Mar. 31, 2020). Plaintiffs have not pointed to anything that would throw into question the authenticity of the screenshot from the Wayback Machine. In fact, courts regularly take "judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," including at the summary-judgment stage. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021); *see also, e.g.*, *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017) (collecting cases). Accordingly, even if the Court were to find any merit in Plaintiffs' objections, it could simply take judicial notice of the Wayback Machine page.

The Court should overrule Plaintiffs' evidentiary objections.

## III. CONCLUSION

Defendant Nestlé Healthcare Nutrition, Inc. respectfully requests that the Court grant summary judgment in its favor on all of Plaintiffs' claims.

DATED: March 13, 2025

By: */s/ Timothy W. Loose*
Christopher Chorba, SBN 216692
CChorba@gibsondunn.com
Perlette M. Jura, SBN 242332
PJura@gibsondunn.com
Timothy W. Loose, SBN 241037
TLoose@gibsondunn.com
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7746

Al Kelly (*pro hac vice*)
AKelly@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1801 California Street Suite 4200
Denver, Colorado 80202
(303) 298-5700

*Attorneys for Defendant Nestlé Healthcare Nutrition, Inc.*