UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NESTLE BOOST NUTRITIONAL DRINK LITIGATION | Case No. 21-cv-09812-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE NAMED PLAINTIFFS**<br><br>Re: Dkt. Nos. 83, 88 |

Plaintiffs filed a putative class action on behalf of consumers who purchased two of defendant Nestlé HealthCare Nutrition, Inc.'s products—Boost Glucose Control and Boost Glucose Control High Protein—alleging the "representations that the Products control glucose and are designed for diabetics are deceptive." (Dkt. No. 59 ¶ 5.) Pending before the Court is Defendant's motion for summary judgment as to the three named plaintiffs. Having carefully considered the parties' submissions, and with the benefit of oral argument on April 17, 2025, the Court GRANTS in part and DENIES in part Defendant's motion. While Sandra George lacks statutory standing to challenge the alleged misrepresentations because undisputed evidence establishes she did not rely on them, there are genuine disputes of fact as to Bruce Horti and Steven Owen.

**BACKGROUND**

Defendant markets and distributes Boost Glucose Control and Boost Glucose Control High Protein.[1] Plaintiffs challenge three statements that have appeared on Defendant's labels during the

---

[1] As the parties do not distinguish between Boost Glucose Control and Boost Glucose Control High Protein, the Court uses "Boost Glucose Control" to refer to both products.

relevant period[2]: (1) "designed for people with diabetes"; (2) the name of the product ("Boost Glucose Control"); and (3) "helps manage blood sugar" followed by an asterisk referring to language on the back of the label stating "Clinically shown to produce a lower blood sugar response vs. a standard nutritional drink in people with type 2 diabetes. Incorporate into a balanced diet as part of a medically supervised diabetes management plan. **Not a substitute for medication**." (Dkt. Nos. 84-2 (bold in original); 84-3.)[3]  Examples of the front and back label statements are pictured below:






(Dkt. No. 84-2; Dkt. No. 84-3.)

---

[2] While the labels changed slightly over time, the parties—citing Docket No. 79—agree such variation does not affect Plaintiffs' claims for purposes of this motion. (Dkt. No. 83 at 4 n.2; Dkt. No. 88-3 at 9.) Docket No. 79 is a stipulation "[s]olely for purposes of briefing related to Plaintiffs . . . motion for class certification." Because both parties refer to the stipulation in arguing the present summary judgment motion, the Court understands the stipulation to apply to the summary judgment motion, too.

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

Plaintiffs sued in December 2021, alleging "[t]he Products are mislabeled, and trick[] reasonable consumers into believing that [they] can prevent and treat diabetes." (Dkt. No. 1 ¶ 4.) The court to whom the case was previously assigned twice granted Defendant's motion to dismiss—the second time with prejudice. (Dkt. Nos. 27, 39.)

The Ninth Circuit reversed. (Dkt. No. 47.) First, the court held Plaintiffs pleaded an injury sufficient to support standing because "Plaintiffs allege[d] that they purchased a product they otherwise would not have bought but for defendant's alleged misrepresentations" so "[t]he purchase price itself [was] a 'tangible economic injury.'" (*Id.* at 2.) Second, the court held a "reasonable consumer could understand [the challenged] representations to indicate that the product will have a positive effect on diabetes and blood sugar levels" so Plaintiffs sufficiently alleged the label representations were likely to mislead a reasonable consumer. (*Id.* at 2-3.)

In February 2024, Plaintiffs filed the operative consolidated complaint. (Dkt. No. 59.) Bruce Horti, Sandra George, and Steven Owen (the "Named Plaintiffs") are citizens of California and New Jersey who purchased Boost Glucose Control. The complaint alleges "Defendant's representations are reasonably understood by consumers, and were understood by Plaintiffs, to mean that the Products would have some affirmatively therapeutic impact on their blood glucose levels, or otherwise mitigate, treat, or prevent prediabetes or diabetes." (*Id.* ¶ 5.) Specifically, Plaintiffs allege the name "Boost Glucose Control" and the representation it "helps manage blood sugar" "convey to a reasonable consumer that the Products affirmatively do something to control blood sugar: that whatever one's blood glucose is at the time they take the Products, drinking the Products will make it better." (*Id.* ¶ 50.) Plaintiffs further allege the statement "designed for people with diabetes" "reasonably conveyed to Plaintiffs that the Products were scientifically formulated to have some mechanism of action that provides a therapeutic benefit regarding diabetes/prediabetes." (*Id.* ¶ 51.) Taken together, Plaintiffs allege, the label statements "convey a clear and unmistakable message: if you are concerned about diabetes, this product will benefit you by acting on the underlying biological deficiency that defines diabetes by controlling your blood glucose levels." (*Id.* ¶ 52.)

Ms. George and Mr. Horti, on behalf of a proposed California subclass, allege violations of

California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and California's Consumer Legal Remedies Act ("CLRA"). Mr. Owen, on behalf of a proposed nationwide class or in the alternative, a proposed New Jersey subclass, alleges a violation of the New Jersey Consumer Fraud Act. Plaintiffs also allege unjust enrichment and breach of express and implied warranties.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden then moves to the opposing party, who must present significant probative evidence tending to support its claim." *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (cleaned up).

In ruling on a motion for summary judgment, the Court must "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.*

I. **EVIDENTIARY OBJECTIONS**

At the outset, the Court addresses Plaintiffs' evidentiary objections. First, Plaintiffs object to Exhibit 9,[4] a "printout from the Internet Archive's Wayback Machine," on the ground the declarant has no personal knowledge of the webpage at issue. (Dkt. No. 88-3 at 14.) As the Court does not rely on Exhibit 9 in reaching its conclusion, the Court declines to consider the objection.

Plaintiffs also object to Exhibits 9-15, "documents regarding clinical trials," on the ground the declarant—an attorney at the law firm representing Defendant—has "no personal knowledge

---

[4] Plaintiffs object to "Exhibit 19." (Dkt. No. 88-3 at 14.) As there is no Exhibit 19 to the Loose Declaration, the Court assumes Plaintiffs are referring to Exhibit 9 at Docket No. 84-9.

4

of these trials" and further, the studies represent "improper expert opinion" when offered by the declarant. (*Id.*) Plaintiffs' objections are overruled. At the summary judgment stage, the evidence "does not yet need to be in a form that would be admissible at trial." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). So, the Court "do[es] not focus on the admissibility of the evidence's form" but instead "the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Through the studies, Defendant "set out facts that it will be able to prove through admissible evidence" such as testimony from a Nestlé company representative involved in the clinical trials or testimony from an expert witness. *See Norse*, 629 F.3d at 973.

## II.     NAMED PLAINTIFFS' INJURY

Defendant moves for summary judgment on the ground "Plaintiffs cannot establish either deception or a resulting injury based on the Boost labeling because their own sworn testimony makes clear that, contrary to the allegations in their complaint, they were neither deceived nor harmed by those labels." (Dkt. No. 83 at 21.)

The UCL, FAL, and CLRA each require a plaintiff to establish statutory standing.[5] *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). To do so, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). "To prove the second element of causation, the plaintiff must show that she actually relied on the allegedly deceptive or misleading statements and that it was an immediate cause of her injury." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125,

---

[5] Courts have "considered the standing requirements under [the CLRA, UCL, and FAL] together." *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) ("[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing."). As no party argues standing should be analyzed separately for each statute, the Court analyzes the California claims together. Moreover, while Mr. Owen alleges violations of New Jersey law, the parties agreed at oral argument that the Court should apply California law to all three named plaintiffs' claims for purposes of this motion.

5

1137 (2020) (quoting *Kwikset*, 51 Cal. 4th at 326-27) (cleaned up). "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement" by establishing "that he or she would not have bought the product but for the misrepresentation." *Kwikset*, 51 Cal. 4th at 330.

### A.     Sandra George

Defendant argues Ms. George cannot establish a viable claim for deception because (1) she continued to purchase Boost Glucose Control for years after filing suit, and (2) the product's impact on her blood sugar levels comported with her understanding of the label statements.

Defendant's first argument is dispositive. It is undisputed Ms. George continued buying Boost Glucose Control after the lawsuit was filed. (Dkt. No. 84-6 at 31.) Ms. George filed suit in December 2021. (Dkt. No. 1.) She bought and consumed Boost Glucose Control through approximately February 2024. (Dkt. No. 84-6 at 31.) At that point, having retired, "price ha[d] become more important" so Ms. George sought out "something that's lower in price." (*Id.* at 33.) As other courts have found, a plaintiff continuing to purchase the challenged product after learning of the alleged deception fatally undermines their claim they were deceived by the product. *See, e.g.*, *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) (on a motion to dismiss, observing if "Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under either the UCL or the CLRA"); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2011 WL 4599833, at \*12 (C.D. Cal. Sept. 29, 2011) (on a motion for class certification, noting if the named plaintiffs "continued to purchase" the challenged products after "th[e] lawsuit was filed" and "they had knowledge that the representations on the packages were false or misleading," then the named plaintiffs "have almost certainly destroyed the ability of the class to ever establish reliance and/or materiality of the alleged misrepresentations"). Here, too, that Ms. George bought Boost Glucose Control after learning about the allegedly deceptive statements demonstrates as a matter of law she did not rely on the challenged statements or else did not find them material and therefore suffered

no injury. Plaintiffs' opposition ignores this dispositive issue.[6] So, the Court GRANTS summary judgment in favor of Defendant as to Ms. George.

### B.     Bruce Horti

Defendant raises three arguments as to Mr. Horti. First, Defendant argues Plaintiffs failed to establish Mr. Horti looked at the labels, so Plaintiffs are precluded from arguing he was deceived by the labels. In support of this argument, Defendant cites the following deposition testimony:

> Q: Can you ever recall at any time ever looking at the label on BOOST Glucose Control.
> A: Again, I'd be sort of speculating. I don't know, particularly on BOOST Glucose Control, if I looked at the label. I'm not sure.
> Q. Is it your typical practice to look at a label on a food before you buy it or not?
> A. Not always.

(Dkt. No. 84-7 at 19-20.) As an initial matter, it is not clear as a matter of law what is meant by "label" in this exchange, as drawing all reasonable inferences in Plaintiffs' favor, "label" could also refer to a nutrition label.

Moreover, Plaintiffs identify evidence creating a genuine dispute of fact as to whether Mr. Horti saw two of the challenged representations on the Boost Glucose Control label. First, a reasonable trier of fact could find Mr. Horti saw the name of the product, Boost Glucose Control, when he purchased it: Mr. Horti testified the product "said glucose control" so he "thought, well, it's supposed to control my glucose, it's supposed to be better for me." (Dkt. No. 89-7 at 15; *see also id.* at 16 ("I thought BOOST was a good name and I thought that being *glucose control* would be good for me.") (emphasis added); *id.* at 28 (stating he thought the product would "control [his] glucose.").) Second, a reasonable trier of fact could find Mr. Horti saw "designed for people with diabetes" on the label when he purchased the product. When asked "What did you think was in there that was better for you?" Mr. Horti testified "Yeah, I didn't really recall reading the

---

[6] At oral argument, Plaintiffs asserted the opposition addresses the fact Ms. George continued to purchase Boost Glucose Control. Plaintiffs directed the Court to page 11 of its opposition brief, but that page discusses Mr. Horti's claim.

7

instructions or the directions . . . . Just assumed it would – *says it's for diabetics*, probably [sic] better for me." (Dkt. No. 89-7 at 14 (emphasis added); *id.* at 15 ("You know, it says it's for diabetics. It specifically said at the top it's better for diabetics.").) But, as Plaintiffs present no evidence Mr. Horti saw or relied on the other statement Plaintiffs challenge—"helps manage blood sugar"—Mr. Horti cannot challenge this representation. *See Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1212 (N.D. Cal. 2017) (concluding the plaintiff "abandoned his challenge" to the label statements he said during his deposition he was not challenging).

   Defendant also moves for summary judgment on the ground Mr. Horti "was not deceived, as he understood exactly what the Boost drinks would do to his blood sugar before he drank them." (Dkt. No. 83 at 24.) Mr. Horti testified he "expect[ed] [Boost Glucose Control] to have benefits for somebody with diabetes" meaning "less of a spike in [his] insulin." (Dkt. No. 84-7 at 22.) Defendant presented undisputed evidence that Boost Glucose Control produces a lower and more gradual rise in blood sugar levels when compared to Boost Original. (Dkt. No. 84-14 at 5-7.) Mr. Horti also testified he expected the product to have an ingredient such as chromium that is "supposed to have a benefit for diabetics." (*Id.* at 9.) While Plaintiffs dispute the benefit of chromium, (Dkt. No. 88-3 at 26-27), they do not dispute the presence of chromium in Boost Glucose Control. (Dkt. No. 84-1 at 8 ("Boost Glucose Control has . . . vitamins and minerals, including chromium, which is important for blood glucose metabolism.").)

   So, the burden shifts to Plaintiffs to identify evidence creating a genuine dispute as to whether Mr. Horti was deceived. Plaintiffs have met their burden. At his deposition, Mr. Horti testified he expected benefits beyond "just . . . the sugar level":

> Q: So . . . what do you want from the product?
> A: Well, again, for it to control my glucose.
> . . .
> Q: You said you wanted the product to control your glucose?
> A: Uh-huh.
> Q: And I'm asking how you wanted it to do that?
> A: Well, again, that's sort of based on, you know, a symptom that would be discernible, you know. And I think you mentioned earlier something about if it would just eliminate diabetes altogether, that might be a miracle product . . . so I don't expect it to do that. But you'd expect it to have some impact. But that might be based on other than just the sugar. I don't know what else would be in there, but it might be based on more than just what's the sugar level.

8

(Dkt. No. 89-7 at 28-29.) In addition, when asked "What do you think BOOST Glucose Control does?" Mr. Horti responded, "Supposed to help, you know, improve my blood sugar and then possibly do other things for me." (Dkt. No. 84-7 at 25.) From this evidence, a reasonable trier of fact could find Mr. Horti interpreted "Boost Glucose Control" and "designed for people with diabetes" to mean the product would be more than a low-sugar drink that produces a lower rise in blood sugar levels than Boost Original. A reasonable trier of fact could find Mr. Horti understood these challenged representations to mean the product would "control [his] glucose" and "improve [his] blood sugar." (*Id.*) Or, as alleged in the complaint, that Boost Glucose Control would "have some affirmatively therapeutic impact on [his] blood glucose levels." (Dkt. No. 59 ¶ 5.) To the extent Mr. Horti's deposition testimony contains inconsistent statements about the benefits he expected from Boost Glucose Control, the Court draws all inferences in Plaintiffs' favor.

Third, Defendant argues Mr. Horti cannot state a claim for deception because he "ignored key context" on the label. (Dkt. No. 83 at 25.) Specifically, Defendant contends Mr. Horti ignored "the clearly disclosed amount of sugar on the front of the label and the diamond-shaped asterisk next to the phrase 'helps manage blood sugar,' which corresponded to a back-label statement that the drinks are 'clinically shown to produce a lower blood sugar response vs. a standard nutritional drink in people with type 2 diabetes. Not a substitute for medication.'" (Dkt. No. 83 at 25.) Essentially, Defendant argues there was no misrepresentation as a matter of law because the challenged representations—when viewed in conjunction with other statements on the label—cannot be interpreted to mean the product affirmatively improves and/or controls blood sugar. *See* Judicial Council Of California Civil Jury Instruction 4700 (citing Cal. Civ. Code § 1770(a)(5)) (for a CLRA claim, the plaintiff must prove the defendant represented the product "had characteristics, uses, or benefits that it did not have").

The summary judgment record does not support Defendant's argument. As the Ninth Circuit found at the motion to dismiss stage, a reasonable consumer could understand the labels' representations "to indicate that the product will have a positive effect on diabetes and blood sugar levels." *Horti v. Nestle Healthcare Nutrition, Inc.*, No. 22-16832, 2023 WL 8613601, at *1 (9th Cir. Dec. 13, 2023). In opposition to Defendant's motion for summary judgment, Plaintiffs

9

1   presented evidence Mr. Horti did interpret "Boost Glucose Control" and "designed for people with
2   diabetes" to mean the product would have a positive effect on his blood sugar levels.  And
3   drawing all inferences in Plaintiffs' favor, a reasonable trier of fact could find the label is
4   misleading even though it discloses the four grams of sugar because a product could contain sugar
5   *and* have a therapeutic effect on glucose levels.  So, there is a dispute of fact as to whether the
6   challenged representations—when viewed alongside the other statements on the label—are
7   misleading.  Put another way, having found a genuine dispute of fact as to whether Mr. Horti was
8   personally deceived, the Court will not rule as a matter of law that Mr. Horti could not have been
9   deceived because the label was not misleading.  Especially when Defendant did not move for
10  summary judgment on this ground.  (Dkt. No. 92 at 6 ("But this motion is not about what other
11  consumers or Nestlé might think.  It is about what the named Plaintiffs themselves thought of the
12  Boost labels, and whether they were deceived."); id. ("Nestlé seeks summary judgment based on
13  named Plaintiffs' own individual experiences.").)
14      So, the Court DENIES Defendant's motion for summary judgment as to Mr. Horti.
15  However, because there is no evidence Mr. Horti saw "helps manage blood sugar" on the label
16  when he bought it, Mr. Horti is limited to challenging the "Boost Glucose Control" and "designed
17  for people with diabetes" representations.

**C.    Steven Owen**

19      Defendant contends Mr. Owen "cannot maintain a claim of deception" because he
20  "ignor[ed] prominent, front-label information."  (Dkt. No. 83 at 25.)  Defendant highlights Mr.
21  Owen's testimony that he looked at "[j]ust the name" on the label:

> Q. Did you take time to look into the product before you bought it?
> A. No.
> Q. Did you look at any other similar products?
> A. No.
> Q. Did you look at the nutrient facts?
> A. No.
> Q. Did you look at anything else on the label other than just the name?
> A. Just the name.

(Dkt. No. 84-8 at 15.)  Mr. Owen later reiterated this sentiment.  (Dkt. No. 84-8 at 25 "Q: Did you
look at this ingredient list either before or after buying the BOOST drinks? A: No. Q: Did you

look at the nutrition facts before or after buying the BOOST drinks? A: No.").)

Plaintiffs do not create a genuine dispute of fact as to whether Mr. Owen saw anything other than the name of the product when he purchased it. Plaintiffs point to the following testimony:

> Q: Do you recall looking at the labels of BOOST Glucose Control?
> A: Just the ones I bought.
> Q: Did you look at the actual bottles that you purchased or just pictures of the labels?
> A: Just pictures and what it said.

(Dkt. No. 89-8 at 13.) That Mr. Owen "look[ed] at the labels" is consistent with his testimony that he did not "look at anything else on the label other than just the name." (Dkt. No. 84-8 at 15.) Plaintiffs also refer to the following testimony:

> Q: So what statements on the BOOST labels do you think are misleading?
> A: It says controls sugar.

(Dkt. No. 89-8 at 20.) But this testimony does not establish Mr. Owen saw the phrases "helps manage blood sugar" and/or "designed for people with diabetes" before purchasing the product. And given Mr. Owen's unambiguous testimony he viewed "[j]ust the name" of the product before purchasing it, it would be unreasonable to infer Mr. Owen saw either statement based on the above testimony Plaintiffs identified. So, Mr. Owen's claim is limited to the name of the product.

Next, Defendant argues Mr. Owen has no false advertising claim because he "view[ed] three words (Boost Glucose Control) in isolation and blind[ed] himself to all context." (Dkt. No. 83 at 26.) Specifically, Defendant contends Mr. Owen ignored the following statements:

- The phrase "helps manage blood sugar ♦" on the front label, along with the corresponding back-label statement that " ♦ BOOST GLUCOSE CONTROL Balanced Nutritional Drink is clinically shown to produce a lower blood sugar response vs. a standard nutritional drink in people with type 2 diabetes. Not a substitute for medication";
- The front-label, bold-font statements indicating that each drink contains four grams of sugar;
- The back-label nutrition facts panel, which reiterated the front-of-package statement and showed exactly how much sugar and how many calories are in each drink; and
- The product information on the Amazon page where he bought the drinks, which reiterated that the products contain sugar and are "not a substitute for medication."

11

(Dkt. No. 83 at 25 (citing Dkt. No. 84-9).) But, as discussed with respect to Mr. Horti's claim, Defendant did not move for summary judgment on the ground its label is not misleading as a matter of law given the other statements on it. Defendant's motion is based on "what the named Plaintiffs themselves thought of the Boost labels, and whether they were deceived." (Dkt. No. 92 at 6.) And there is evidence that Mr. Owen himself was deceived by the "Boost Glucose Control" representation. Mr. Owen testified he understood the product would "control blood glucose levels" by "keeping them the same." (Dkt. No. 89-8 at 24.) Mr. Owen also testified he thinks Defendant owes him a refund because Defendant "misrepresented the drink" by saying "it would control sugar and it didn't." (Dkt. No. 89-8 at 10, 12.) From this testimony, a reasonable trier of fact could find Mr. Owen was deceived by the label.

The Court is also unpersuaded by Defendant's argument that "Mr. Owen cannot establish deception or injury because his theory is not consistent with his lawyer's theory in this case." (Dkt. No. 83 at 26.) The theory alleged in the complaint—that consumers understood the Product to "affirmatively do something to control blood sugar" —is consistent with Mr. Owen's belief that Boost Glucose Control "would control sugar and it didn't." (Dkt. No. 59 ¶ 50; Dkt. No. 89-8 at 12.)

So, the Court DENIES Defendant's summary judgment motion as to Mr. Owen. But because it is undisputed Mr. Owen looked at just the name of the product before purchasing it, Mr. Owen is limited to challenging the "Boost Glucose Control" representation.[7]

### III. INJUNCTIVE RELIEF

Defendant contends "Plaintiffs' claims for injunctive relief fall flat because all three Plaintiffs admit they have no plans to buy Boost again in the future." (Dkt. No. 83 at 29.) "Plaintiffs concede judgment on the Injunctive Relief claims." (Dkt. No. 88-3 at 29 n.1.) So, the Court GRANTS Defendant's summary judgment motion as to Plaintiffs' request for injunctive relief.

---

[7] At oral argument, the parties agreed if the Court finds there are genuine disputes of fact as to whether Mr. Horti and Mr. Owen were injured, the Court need not address Defendant's alternative argument regarding Plaintiffs' "health claim" mislabeling theory of injury.

## IV. SEALING MOTION

Plaintiffs filed an administrative sealing motion. (Dkt. No. 88.) Defendant, as the designating party, filed a statement in support of sealing Docket Nos. 88-4 and 88-5 and portions of the opposition brief. Defendant contends "[t]he deposition transcripts of the two Nestlé's corporate designees contain confidential company information about (1) market research and advertising strategies and (2) scientific studies and claims substantiation." (Dkt. No. 91 at 3.) Defendant contends "[b]oth categories of information, if released, would cause competitive harm to Nestlé." (*Id.*)

Because Defendant has articulated "compelling reasons" sufficient to outweigh the public's interest in disclosure, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), the Court GRANTS the motion to seal Exhibits B and D to the Declaration of Trenton Kashima and the corresponding information in Plaintiffs' opposition. The documents convey marketing and advertising strategies, internal testing procedures, and Defendant's substantiation processes. As other courts have recognized, disclosure of such information risks competitive harm. *See, e.g.*, *Bauer Bros. LLC v. Nike, Inc.*, No. 09CV500-WQH-BGS, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of . . . confidential business materials, including marketing strategies . . . , could result in improper use by business competitors."); *Lawson v. Grubhub, Inc.*, No. 15-CV-05128-JSC, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) (quoting *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978)) (stating "sources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal"); *Monster, Inc. v. Dolby Lab'ys Licensing Corp.*, No. 12-CV-2488 YGR, 2013 WL 163774, at *2 (N.D. Cal. Jan. 15, 2013) (finding compelling reasons to seal a party's "testing requirements and internal testing procedures for prototypes").

## CONCLUSION

For the reasons above, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment. The Court GRANTS Defendant's motion for summary judgment as to Ms. George's claims and Plaintiffs' claims for injunctive relief. The Court DENIES Defendant's motion for summary judgment as to Mr. Horti and Mr. Owen, although they are

1 limited in the representations they can challenge.

2 The Court sets a further Case Management Conference for Tuesday, May 27 at 2:00 p.m. 3 via Zoom video. An updated statement is due by May 20, 2025. The statement should address the 4 parties' proposed schedule for class certification briefing.

5 This Order disposes of Docket Nos. 83 and 88.

6 **IT IS SO ORDERED.**

7 Dated: April 18, 2025

JACQUELINE SCOTT CORLEY
United States District Judge